1
2
3
4
5
6
7
8

The Honorable

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

BRIAN L. GRANT, BRIAN L. GRANT LIVING TRUST, and MCN HOLDINGS LLC, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

vs.

BROADMARK REALTY CAPITAL INC., READY CAPITAL CORPORATION, JEFFREY B. PYATT, JONATHAN R. HERMES, KEVIN M. LUEBBERS, DANIEL J. HIRSCH, PINKIE D. MAYFIELD, STEPHEN G. HAGGERTY, DAVID A. KARP, NORMA J. LAWRENCE, THOMAS E. CAPASSE, ANDREW AHLBORN, JACK J. ROSS, FRANK P. FILIPPS, MEREDITH MARSHALL, DOMINIQUE MIELLE, GILBERT E. NATHAN, ANDREA PETRO, J. MITCHELL REESE, TODD M. SINAI, and WATERFALL ASSET MANAGEMENT, LLC,

Defendants

No. 2:25-cv-1013

CLASS ACTION

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**DEMAND FOR JURY TRIAL**

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## TABLE OF CONTENTS

I.    NATURE OF THE ACTION ............................................................................ 1

II.   JURISDICTION AND VENUE ...................................................................... 1

III.  PARTIES ...................................................................................................... 2

IV.   SUBSTANTIVE ALLEGATIONS ................................................................ 4

      Background to the Merger ............................................................................ 5

V.    MATERIALLY FALSE AND MISLEADING STATEMENTS AND
      OMISSIONS IN THE PROXY .................................................................... 10

VI.   EVENTS FOLLOWING THE ISSUANCE OF THE PROXY ..................... 15

VII.  CLASS ACTION ALLEGATIONS .............................................................. 21

      COUNT ONE — FOR VIOLATIONS OF §14(A) OF THE EXCHANGE
            ACT  AND RULE 14A-9 PROMULGATED THEREUNDER ...................... 22

      COUNT TWO — FOR VIOLATION OF §20(A) OF THE EXCHANGE
            ACT ...................................................................................................... 24

VIII. PRAYER FOR RELIEF ............................................................................... 26

IX.   JURY DEMAND ........................................................................................ 26

COMPLAINT
(2:25-cv-01013) - i

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Plaintiffs Brian L. Grant, Brian L. Grant Living Trust, and MCN Holdings LLC ("plaintiffs"), individually and on behalf of all others similarly situated, by plaintiffs' undersigned attorneys, for plaintiffs' complaint against defendants, allege the following based upon personal knowledge as to plaintiffs and plaintiffs' own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiffs' attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Broadmark Realty Capital Inc. ("Broadmark") and Ready Capital Corporation ("Ready Capital"), Broadmark and Ready Capital press releases, earning calls, analyst reports, and media reports about Broadmark and Ready Capital. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    This is a securities class action on behalf of all holders of Broadmark common stock as of the record date of the May 2023 merger of Broadmark and Ready Capital (the "Merger"). This action asserts claims under §14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78n(a), SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated thereunder, and §20(a) of the Exchange Act, 15 U.S.C. §78t(a), against Broadmark and certain of its former officers and directors and Ready Capital and certain of its current and former executive officers and directors, as well as Ready Capital's affiliated investment manager.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, for violations of §§14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder, and 28 U.S.C. §1331.

3.    This Court has jurisdiction over each defendant and venue in this case is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) and (c). Acts giving rise to the violations of law complained of herein, including the dissemination of false and misleading information to the investing public, occurred in this District. Broadmark was based in this District at the time of the Merger, plaintiffs reside in this District (as do many other

COMPLAINT
(2:25-cv-01013) - 1

members of the Class (defined below)), multiple defendants reside in this District, the acts and transactions that form the subject of this complaint occurred in substantial part in this District, and Ready Capital maintains substantial business operations in this District, including through its subsidiary, which now houses Broadmark.

### III.    PARTIES

4.    Plaintiff Brian L. Grant ("Grant") held Broadmark common stock on the record date of the Merger and was entitled to vote on the Merger, as evidenced by the certification attached hereto and incorporated herein, and suffered damages. Plaintiff Grant also serves as the trustee of the Brian L. Grant Living Trust and the managing member of MCN Holdings LLC.

5.    Plaintiff Brian L. Grant Living Trust held Broadmark common stock on the record date of the Merger and was entitled to vote on the Merger, as evidenced by the certification attached hereto and incorporated herein, and suffered damages.

6.    Plaintiff MCN Holdings LLC held Broadmark common stock on the record date of the Merger and was entitled to vote on the Merger, as evidenced by the certification attached hereto and incorporated herein, and suffered damages.

7.    Defendant Broadmark is real estate investment trust ("REIT") that was based in Seattle, Washington at the time of the Merger. Prior to the Merger, Broadmark common stock was traded on the New York Stock Exchange ("NYSE") under the ticker symbol "BRMK." In connection with the Merger, Broadmark merged with and into RCC Merger Sub, LLC, a wholly owned subsidiary of Ready Capital.

8.    Defendant Ready Capital is a REIT that originates, acquires, finances, and services commercial real estate loans. Ready Capital common stock trades on the NYSE under the ticker symbol "RC."

9.    Defendant Jeffrey B. Pyatt ("Pyatt") served as Broadmark's Interim Chief Executive Officer ("CEO") and Chairman of the Broadmark Board of Directors (the "Broadmark Board") at the time of the Merger.

COMPLAINT
(2:25-cv-01013) - 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

10.    Defendant Jonathan R. Hermes ("Hermes") served as Broadmark's Chief Financial Officer ("CFO") and a director of Broadmark at the time of the Merger.

11.    Defendant Kevin M. Luebbers ("Luebbers") served as Interim President and a director of Broadmark at the time of the Merger and became a director of Ready Capital's Board of Directors (the "Ready Capital Board") in connection with the Merger.

12.    Defendant Daniel J. Hirsch ("Hirsch") served as a director of Broadmark at the time of the Merger and became a director of the Ready Capital Board in connection with the Merger.

13.    Defendant Pinkie D. Mayfield ("Mayfield") served as a director of Broadmark at the time of the Merger and became a director of the Ready Capital Board in connection with the Merger.

14.    Defendant Stephen G. Haggerty ("Haggerty") served as a director of Broadmark at the time of the Merger.

15.    Defendant David A. Karp ("Karp") served as a director of Broadmark at the time of the Merger.

16.    Defendant Norma J. Lawrence ("Lawrence") served as a director of Broadmark at the time of the Merger.

17.    Defendant Thomas E. Capasse ("Capasse") served as CEO and Chief Investment Officer of Ready Capital and as Chairman of the Ready Capital Board at the time of the Merger.

18.    Defendant Andrew Ahlborn ("Ahlborn") served as CFO of Ready Capital at the time of the Merger.

19.    Defendant Jack J. Ross ("Ross") served as President and a director of the Ready Capital Board at the time of the Merger.

20.    Defendant Frank P. Filipps ("Filipps") served as a director of the Ready Capital Board at the time of the Merger.

21.    Defendant Meredith Marshall ("Marshall") served as a director of the Ready Capital Board at the time of the Merger.

22.     Defendant Dominique Mielle ("Mielle") served as a director of the Ready Capital Board at the time of the Merger.

23.     Defendant Gilbert E. Nathan ("Nathan") served as a director of the Ready Capital Board at the time of the Merger.

24.     Defendant Andrea Petro ("Petro") served as a director of the Ready Capital Board at the time of the Merger.

25.     Defendant J. Mitchell Reese ("Reese") served as a director of the Ready Capital Board at the time of the Merger.

26.     Defendant Todd M. Sinai ("Sinai") served as a director of the Ready Capital Board at the time of the Merger.

27.     The defendants referenced above in ¶¶9–26 are collectively referred to herein as the "Individual Defendants."

28.     Defendant Waterfall Asset Management, LLC ("Waterfall") served as the external asset manager for Ready Capital.  Defendant Waterfall also employed the executive management of Ready Capital, and thus controlled the contents of the joint proxy statement for the Merger.

29.     Each of the defendants named herein was responsible for the joint proxy used to solicit the support of Broadmark shareholders for the Merger.  As stated in Broadmark's SEC filings: "Ready Capital, [Broadmark] and their respective directors and executive officers, and certain other affiliates of Ready Capital and [Broadmark] may be deemed to be participants in the solicitation of proxies from the stockholders of Ready Capital and [Broadmark] in respect of the proposed merger."

## IV.     SUBSTANTIVE ALLEGATIONS

30.     This case arises from materially false and misleading statements made in the joint proxy statement used to solicit the support of Broadmark shareholders for the Merger, which was prepared and disseminated by defendants (the "Proxy").  On April 20, 2023, Broadmark filed with the SEC the Proxy on Form DEFM14A.  That same day, Ready Capital filed with the SEC the

Proxy on Form 424B3.  On May 23, 2023, Broadmark subsequently filed with the SEC supplements to the Proxy on Form 425.

31.    The record date for the special meeting of Broadmark shareholders was April 17, 2023.  Based on the defective Proxy (as detailed herein), Broadmark shareholders voted to approve the Merger on May 30, 2023, which closed the next day.  As a result of the Merger, each share of Broadmark common stock outstanding at the effective time of the Merger was converted into the right to receive 0.47233 shares of Ready Capital common stock.

32.    The Merger has indisputably harmed former Broadmark shareholders.  The Ready Capital shares that Broadmark shareholders voted to receive in the Merger ultimately plunged from $10.11 per share at the end of trading on the closing date of the Merger to lows of less than $4 per share.  This lawsuit alleges strict-liability and negligence claims for omissions in the Proxy, which defendants issued to Broadmark shareholders in order to effectuate the Merger between Broadmark and Ready Capital.

**Background to the Merger**

33.    Broadmark is a REIT based in Seattle, Washington.  Broadmark's typical borrowers include real estate investors, developers, and other commercial borrowers.  Broadmark generally uses loan proceeds to fund the vertical construction, horizontal development, investment, land acquisition, and refinancing of residential properties and commercial properties.  Broadmark also makes loans to fund the renovation and rehabilitation of residential and commercial properties.  Broadmark loans are generally structured with an initial advance at closing and additional loan installments disbursed to the borrower upon satisfactory completion of previously agreed stages of construction.

34.    Ready Capital is a real estate finance company that originates, acquires, and services commercial loans.  Ready Capital's core strategy is to target small-to-medium balance commercial ("SBC") loans used in the development of multifamily residential properties, which Ready Capital claims generally range in amounts of up to $40 million.  Ready Capital offers SBC

COMPLAINT
(2:25-cv-01013) - 5

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

loans to finance the full life cycle of a property, including initial construction, transitional bridge financing, and stabilized properties.

35. Ready Capital's originated SBC loans are loans it originates on its own and are generally held for investment through maturity of the loan. In contrast, Ready Capital's acquired SBC loans are purchased from third parties, and typically include performing and non-performing loans. As part of its strategy, Ready Capital purchases non-performing loans at a discount to their unpaid principal balance and seeks to extract value from such loans by engaging in certain borrower-based strategies.

36. As a REIT, Ready Capital is required under applicable provisions of the Internal Revenue Code to annually distribute at least 90% of its net taxable income through dividends. As such, the value of Ready Capital's common stock is highly dependent on the amount of Ready Capital's dividend, as well as the underlying real estate assets that support and fund the income distributions.

37. Ready Capital is externally managed and advised by defendant Waterfall. As manager, Waterfall establishes and directs Ready Capital's investment strategy and identifies loan acquisitions and originations on behalf of Ready Capital. Defendant Capasse and defendant Ross co-founded Waterfall in 2005. Pursuant to a management agreement, Waterfall provides Ready Capital with its management team, including its CEO, CFO, Chief Operating Officer, Chief Investment Officer, and Chief Credit Officer. As consideration for its services, Waterfall is paid a management fee that is calculated and payable quarterly in arrears equal to 1.5% per annum of Ready Capital's stockholders' equity up to $500 million and 1.0% per annum above $500 million.

38. Management fees paid to Waterfall materially increased in fiscal years 2022 and 2023. For example, following the completion of the Mosaic Merger (defined below) in fiscal 2022, Waterfall's management fees nearly doubled from just $11 million in fiscal 2021 to $19 million in 2022. In fiscal year 2023, following completion of the Merger, Waterfall's management fees increased to $25 million. Several of the Individual Defendants (such as defendant Capasse, defendant Ahlborn, and defendant Ross) had direct pecuniary interests in

COMPLAINT
(2:25-cv-01013) - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Waterfall at the time of the Merger and thus directly benefitted from the increase in management fees paid by Ready Capital to Waterfall as a result of the Merger. As stated in the Proxy: "Following the Merger, Ready Capital stockholders' equity will include the additional equity attributable to the acquisition of Broadmark and, thus, the amount of the management fees payable to [Waterfall] will also increase, which gives [Waterfall] (and, therefore, Ready Capital's management) an incentive, not shared by Ready Capital stockholders, to negotiate and effect the Merger, possibly on terms less favorable to Ready Capital than would otherwise have been achieved."

39.    Broadmark officers and directors likewise had interests in consummating the Merger not shared by other Broadmark shareholders. As stated in the Proxy: "Broadmark stockholders should be aware that the directors and executive officers of Broadmark have interests in the Merger that may be different from, or in addition to, the interests of Broadmark stockholders generally and that may present actual or potential conflicts of interests." These interests included millions of dollars' worth of Broadmark equity awards that became converted to Ready Capital equity in connection with the Merger, severance benefits, and so-called "golden parachute" payments to certain Broadmark officers.

40.    Ready Capital reports its earnings in part through a key financial metric it describes as "Distributable Earnings." Ready Capital states that it uses Distributable Earnings to "evaluate [its] performance and determine dividends." Ready Capital determines Distributable Earnings by excluding (among other things) any unrealized provisions for expected losses on its loan portfolio from Net Income (as defined by Generally Accepted Accounting Principles). Accordingly, increases to expected credit losses that may result from rising delinquencies and/or defaults negatively impact reported Distributable Earnings in any given period.

41.    In fiscal years 2021 and 2022, Ready Capital dramatically increased its origination of SBC loans. Speaking during a February 2022 earnings call, defendant Capasse reported that during the fourth quarter of fiscal year 2021, Ready Capital "originated a record $2.2 billion" of SBC loans, which he stated "exceeded total annual production in both 2020 and 2019." Ready

Capital's outsized origination volume continued the subsequent quarter. For example, during Ready Capital's first quarter earnings call, defendant Capasse stated that Ready Capital's lending volume within its SBC segment "remained at record levels with over $2.2 billion originated," the vast majority of which was comprised of loans collateralized by multifamily residential properties. By the end of fiscal year 2022, the combined carrying value of loans originated in 2021 and 2022 was approximately $7 billion, representing more than 70% of Ready Capital's nearly $10 billion loan portfolio.

42. On November 4, 2021, Ready Capital issued a press release announcing that it had agreed to acquire Mosaic Real Estate Credit, LLC, Mosaic Real Estate Credit TE, LLC, and MREC International Incentive Split, LP (collectively, "Mosaic") in a stock-for-stock merger valued at approximately $470 million (the "Mosaic Merger"). Ready Capital's acquisition included in principal part the purchase of Mosaic's existing loan portfolio, which Ready Capital claimed was comprised of 32 total loans with an aggregate outstanding balance of $565 million.

43. During the corresponding conference call held the following day, Ready Capital's Chief Credit Officer Adam Zausmer ("CCO Zausmer") stated that Mosaic's loan portfolio had a "strong" credit profile, "good" geographic diversity, and was concentrated in the "most liquid" markets in the country, stating in pertinent part as follows:

> So the overall credit profile of this portfolio is strong. We have a healthy basis in the loan portfolio. Moderate weighted average as is LTV is based on fresh valuations that we ordered through our due diligence process. The portfolio has a good property type and geographic diversity, approximately 95% of assets are in what we call geo tiers 1 through 3, which are the largest and most liquid assets, excuse most liquid markets across the country. Approximately 25% of the portfolio is backed by multifamily properties, which obviously is a lower volatile asset class that we're very, excuse me, bullish on. Majority of the construction projects are well into construction phase with guaranteed maximum price contracts. This mitigates rising construction costs that the market is experiencing due to materials and labor shortages and then also supply chain issues.
>
> In terms of a breakdown of the portfolio, construction represents about 60% of the assets. I'd say from a geographic perspective, about 40% of the assets are on the West Coast markets that we – like Los Angeles, et cetera. From a credit performance perspective, the performance through the pandemic has been positive with over 90% of the portfolio fully performing today. 2 assets are in default, and

there are 3 REO assets.  2 of the REOs were due to the pandemic, and there was 1 legacy REO.  3 to 4 assets have experienced a lead due to the pandemic, which is material supply shortage and our cost overruns.  But we're comfortable with the assets due to the projects being backed by reputable, well-capitalized developers and sponsors who during the pandemic contributed additional equity as needed and had executed completion interest in carry guarantees at closing of the deals.  There's 6 deals that received extensions since the onset of the pandemic, and want to highlight that 6 deals have been repaid at par since the beginning of our due diligence process, which is extremely favorable.

44.    On March 16, 2022, Ready Capital announced that the Mosaic Merger had been completed.

45.    On February 27, 2023, Broadmark and Ready Capital issued a joint press release announcing a proposed merger.  Under the terms of the merger agreement, Ready Capital would issue more than 60 million shares to Broadmark shareholders, representing an implied consideration of approximately $787 million.  Upon closing, Broadmark shareholders were expected to own roughly 36% of the combined company's stock.  In addition, Ready Capital would assume Broadmark's outstanding senior unsecured notes.

46.    A presentation deck issued in connection with the acquisition announcement highlighted the purported benefits of the Merger.  For example, the presentation deck claimed the Merger would provide "significant value creation for shareholders via both economic and operational leverage" due in part to the combined company's purportedly "Larger Equity Base." The presentation deck further represented that the Merger was "Strategically & Financially Compelling" and would provide Broadmark shareholders with a "higher and more consistent dividend," "attractive risk-adjusted yields," and "more attractive [price to tangible book value] multiples," among other things.  In addition, the presentation deck claimed that the Merger was "Highly Synergistic" and would "enhance growth and returns across macro and rate cycles," due in part to the "[c]ombined focus" on construction and bridge loans "in top markets to strong sponsors."

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

1

2

## V.    MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE PROXY

3

4

5

6

47.    The Proxy was negligently prepared and, as a result, contained untrue statements of material fact and omitted to state other facts necessary to make the statements made therein not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.  The Proxy recommended that Broadmark shareholders vote in favor of the Merger.

7

8

9

10

11

12

13

14

15

48.    The Proxy highlighted the purported benefits to Broadmark shareholders resulting from the Merger, including that the combined company would have "[a]ligned [s]trategies" that focused on construction and bridge loans in "attractive markets to strong sponsors."  The Proxy also emphasized the "value creation" for Broadmark shareholders, stating that stockholders would be able to "participate in the long-term upside of the Combined Company."  In addition, the Proxy highlighted the "Potential for Increased Multiples and Dividend" as a result of the Merger and represented that the purported "economic and operational leverage" of the combined company created an "opportunity" for a "higher and more consistent dividend" and an "improved price to tangible book value and earnings multiples."

16

17

49.    The Proxy set forth financial projections relating to Ready Capital's profits, dividend, and assets, stating in pertinent part as follows:

18

19

20

| | 2023E | 2024E | 2025E | 2026E |
|---|---|---|---|---|
| Distributable Earnings Per Share[1] | $ 1.60 | $ 1.60 | $ 1.60 | $ 1.60 |
| Dividends Per Share | $ 1.60 | $ 1.60 | $ 1.60 | $ 1.60 |
| Book Value Per Share | $15.15 | $15.10 | $15.05 | $14.99 |

21

(Footnote omitted.)

22

23

24

25

50.    In addition, the Proxy highlighted Ready Capital's purported "experience" in "underwriting and managing" commercial real estate loans and claimed Ready Capital was able to deploy funds to assets "with the most attractive risk-adjusted returns," stating in pertinent part as follows:

26

> Ready Capital's investment strategy is to opportunistically expand its market presence in its acquisition and origination segments and further grow its

COMPLAINT
(2:25-cv-01013) - 10

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

SBC securitization capabilities which serve as a source of attractively priced, match-term financing.  Capitalizing on its experience in underwriting and managing commercial real estate loans, Ready Capital has grown its SBC and SBA origination and acquisition capabilities and selectively complimented its SBC strategy with residential agency mortgage originations.  As such, Ready Capital has become a full-service real estate finance platform and Ready Capital believes that the breadth of its business allows for adaptation to changing market conditions and the deployment of capital in asset classes with the most attractive risk-adjusted returns.

51.    In addition, the Proxy represented that Ready Capital was a multi-strategy real estate finance company with a focus on SBC loans that ranged in original principal amounts of "up to $40 million," stating in pertinent part as follows:

> We are a multi-strategy real estate finance company that originates, acquires, finances, and services SBC loans, SBA loans, residential mortgage loans, construction loans, and to a lesser extent, MBS collateralized primarily by SBC loans, or other real estate-related investments.  Our loans range in original principal amounts generally up to $40 million and are used by businesses to purchase real estate used in their operations or by investors seeking to acquire multi-family, office, retail, mixed use or warehouse properties.  Our objective is to provide attractive risk-adjusted returns to our stockholders, primarily through dividends as well as through capital appreciation.  In order to achieve this objective, we continue to grow our investment portfolio and believe that the breadth of our full-service real estate finance platform will allow us to adapt to market conditions and deploy capital to asset classes and segments with the most attractive risk-adjusted returns.

52.    The Proxy further represented that Ready Capital maintained an "allowance for credit losses," to account for "losses on loans and lending commitments."  The Proxy represented that such loans and lending commitments were "reviewed quarterly" and evaluated based on "credit quality indicators, including probable and historical losses, collateral values, LTV ratio and economic conditions."  In addition, the Proxy claimed that Ready Capital's allowance for credit losses was based in part on an "expected loss model known as the Current Expected Credit Loss ('CECL') model," which estimated expected losses, "not only based on historical experience and current conditions, but also by including reasonable and supportable forecasts incorporating forward-looking information."

53.    The Proxy claimed that Ready Capital estimated CECL for its loan portfolio "at the individual loan level," based on various "key loan-specific inputs," among other things, stating in pertinent part as follows:

We implemented loan loss forecasting models for estimating expected life-time credit losses, at the individual loan level, for its loan portfolio. The CECL forecasting methods used by the Company include (i) a probability of default and loss given default method using underlying third-party CMBS/CRE loan database with historical loan losses and (ii) probability weighted expected cash flow method, depending on the type of loan and the availability of relevant historical market loan loss data. We might use other acceptable alternative approaches in the future depending on, among other factors, the type of loan, underlying collateral, and availability of relevant historical market loan loss data.

We estimate the CECL expected credit losses for our loan portfolio at the individual loan level. Significant inputs to our forecasting methods include (i) key loan-specific inputs such as LTV, vintage year, loan-term, underlying property type, occupancy, geographic location, and others, and (ii) a macro-economic forecast. These estimates may change in future periods based on available future macro-economic data and might result in a material change in our future estimates of expected credit losses for its loan portfolio.

54.    In addition, the Proxy stated that, in certain instances, Ready Capital used "relevant loan-specific qualitative factors" to estimate CECL, stating in pertinent part as follows:

In certain instances, we consider relevant loan-specific qualitative factors to certain loans to estimate its CECL expected credit losses. We consider loan investments that are both (i) expected to be substantially repaid through the operation or sale of the underlying collateral, and (ii) for which the borrower is experiencing financial difficulty, to be "collateral-dependent" loans. For such loans that we determine that foreclosure of the collateral is probable, we measure the expected losses based on the difference between the fair value of the collateral (less costs to sell the asset if repayment is expected through the sale of the collateral) and the amortized cost basis of the loan as of the measurement date. For collateral-dependent loans that we determine foreclosure is not probable, we apply a practical expedient to estimate expected losses using the difference between the collateral's fair value (less costs to sell the asset if repayment is expected through the sale of the collateral) and the amortized cost basis of the loan.

55.    The Proxy described Ready Capital's acquisition of Mosaic as the acquisition of "real estate structured finance opportunities funds, with a focus on construction lending." The Proxy claimed that the acquisition "further expanded the Company's investment portfolio and

COMPLAINT
(2:25-cv-01013) - 12

origination platform to include a diverse portfolio of construction assets with attractive portfolio yields."

56.    The Proxy similarly represented that "acquired SBC loans," which included all loans acquired in the Mosaic acquisition, had an "[unpaid principal balance] of $2.0 billion and a carrying value of $2.0 billion as of December 31, 2022."  With respect to Ready Capital "[o]riginated SBC loans," the Proxy represented that Ready Capital's portfolio had an "[unpaid principal balance] of $7.6 billion and carrying value of $7.5 billion as of December 31, 2022." The Proxy further represented that all such loans were "substantially" performing loans.

57.    The statements in ¶¶48–56 were materially false and misleading when made because they failed to disclose and/or misrepresented the following adverse facts that existed at the time:

a)    that a material portion of borrowers within Ready Capital's originated portfolio were experiencing significant financial distress due to high interest rates that had increased their borrowing costs;

b)    that an oversupply of multifamily properties in Ready Capital's markets of operation had severely limited the ability of Ready Capital borrowers to raise their rents by the amounts necessary to cover their growing debt costs;

c)    that a major development project acquired in the Mosaic Merger (a Ritz-Carlton located in Portland, Oregon), which accounted for approximately $500 million of Ready Capital's acquired loan portfolio, had experienced catastrophic setbacks since its inception, including significant cost overruns, construction delays, and funding shortfalls;

d)    that, as a result of (a)–(c) above, Ready Capital's CECL reserves and expected credit losses were materially understated; and

e)    that, as a result of (a)–(d) above, Ready Capital's financial projections regarding Ready Capital's Distributable Earnings per share, dividends per share, and book value per share had no basis in fact when made.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

58.    Furthermore, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii) ("Item 303"), required defendants to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Similarly, Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required, in the "Risk Factors," "a discussion of the material factors that make an investment in the registrant or offering speculative or risky" and required each risk factor to "adequately describe[] the risk."

59.    The failure of the Proxy to disclose that a material portion of borrowers within Ready Capital's originated portfolio were experiencing significant financial distress, and that a significant development project acquired in the Mosaic Merger had suffered catastrophic setbacks, violated Item 303, because these undisclosed facts were known to defendants and would (and did) have an unfavorable impact on Ready Capital's CECL reserves, distributable earnings, and net book value.  This failure also violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were some of the most significant facts that made an investment in Ready Capital stock speculative or risky.

60.    Indeed, the risk factors that were provided in the Proxy were themselves materially misleading because they provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described therein were already occurring.  For example, the Proxy stated that "[d]ifficult conditions in the mortgage, residential and commercial real estate markets, or in the financial markets and the economy generally, including market volatility, inflation, the outbreak of COVID-19 and the emergence and severity of variants, ***may*** cause us to experience market losses related to our holdings," yet failed to disclose that a material number of Ready Capital's borrowers were already experiencing significant financial distress and already impacting its CECL reserves and expected credit losses at the time of the Merger.

## VI.    EVENTS FOLLOWING THE ISSUANCE OF THE PROXY

61.    On May 30, 2023, Ready Capital and Broadmark shareholders approved the proposal relating to the Merger based on the defective Proxy.  The false and misleading Proxy induced stockholder action that resulted in substantial harm to plaintiffs and Broadmark's other shareholders.  Specifically, the material misrepresentations and omissions in the Proxy were an essential link in the approval of the Merger, and the Broadmark common stock held by plaintiffs and other Class members declined substantially in value subsequent and due to the approval of the Merger, causing economic loss and damages.

62.    On May 31, 2023, Ready Capital announced the close of the Merger.  As a result of the Merger, Ready Capital issued more than 60 million shares to Broadmark shareholders.  The stock issued in the Merger closed at $10.11 per share on its first day of trading (*i.e.*, May 31, 2023).  Following the close of the Merger, Ready Capital's legacy SBC loan portfolio began showing significant signs of weakness and deterioration.  For example, Ready Capital engaged in hundreds of millions of dollars' worth of loan modifications that represented a significant departure from Ready Capital's historical norms.

63.    On August 7, 2024, Ready Capital announced earnings for its second fiscal quarter of 2024.  During the earnings call held on August 8, 2024, defendant Capasse reported that 60-day plus delinquencies within Ready Capital's originated portfolio had improved sequentially to 5.2% from 7.9% in the prior quarter, which he attributed in part to Ready Capital's loan modification initiatives.  Defendant Ahlborn similarly stated that a "majority" of Ready Capital's improved delinquency rates were "driven by modifications and natural improvement in credit."  Defendant Capasse further reported that Ready Capital had extended loan modifications to 25 loans within its originated portfolio totaling $800 million, 82% of which were completed in the second quarter alone.

64.    Certain reported quarterly metrics revealed previously undisclosed distress in Ready Capital's originated portfolio.  For example, in its quarterly report filed with the SEC on Form 10-Q the following day, Ready Capital reported that in the six months ending June 30, 2024,

approximately $28.5 million of Ready Capital's interest income had been "paid-in-kind" (aka "PIK"), meaning that instead of collecting cash interest payments from certain borrowers, Ready Capital had increased the borrowers' debt by the amount of interest due and then recognized that amount as income. An increase in PIK loans in a portfolio indicates heightened stress and degraded loan quality. The quarterly report further reported that Ready Capital's quarterly Distributable Earnings had declined roughly 67% year-over-year from $51 million in the quarter immediately following the Merger to $16.6 million.

65. On September 12, 2024, *Barron's* published an article regarding Ready Capital's second quarter earnings. Citing analyst discussions with Ready Capital, the article reported that PIK interest in the second quarter was $14.7 million, revealing that nearly all of Ready Capital's $16.6 million in reported Distributable Earnings were comprised of non-cash income that had accrued from distressed borrowers.

66. On November 7, 2024, Ready Capital announced its financial results for its third fiscal quarter of 2024. During the corresponding conference call held on November 8, 2024, an analyst inquired regarding Ready Capital's third quarter PIK interest. In response, defendant Ahlborn stated that "a little over 20%" of Ready Capital's reported $226 million in interest income was PIK or accrued, implying that approximately $45 million of Ready Capital's revenues were comprised of non-cash accruals. Defendant Ahlborn further stated that roughly half of Ready Capital's PIK interest stemmed from construction assets acquired in the Mosaic Merger and that the remaining half stemmed from modified loans Ready Capital had previously provided. In addition, defendant Ahlborn stated that roughly 74% of the Mosaic assets that were generating PIK interests were "expected to be repaid at the end of year."

67. Then, on March 3, 2025, Ready Capital issued a release announcing Ready Capital's financial results for its fourth fiscal quarter and year ending December 31, 2024. The earnings release stated that Ready Capital had increased its CECL reserve during the quarter by $277 million, which reduced book value per share of common stock to $10.61 as of December 31, 2024, and caused Ready Capital to widely miss the projected book value of $15.10 per share

COMPLAINT
(2:25-cv-01013) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

stated in the Proxy. The earnings release further stated Ready Capital was reducing its quarterly cash dividend to $0.125 per share of common stock – translating to $0.50 per share of common stock on an annualized basis – in order to "align with anticipated cash earnings." The declared dividend significantly missed the projected $1.60 dividend per share for fiscal 2025 set forth in the Proxy. The earnings release also reported that Ready Capital had generated Distributable Earnings per share of common stock of just $.07 in fiscal 2024 (or just $0.97 of distributable earnings before realized losses on investments, net of tax), a tiny fraction of the $1.60 in annual Distributable Earnings per share set forth in the Proxy.

68.     The press release quoted defendant Capasse who stated that Ready Capital's multifamily-related business had been negatively impacted during the year by "'higher rates, inflationary pressures, and lower rent growth.'" Defendant Capasse further stated that Ready Capital was "'fully reserving for all our non-performing loans in our CRE portfolio,'" which in effect, reduced Ready Capital's book value, stating in pertinent part as follows:

> "Entering 2025, we have taken decisive actions to stabilize and better position our balance sheet going forward by fully reserving for all of our non-performing loans in our CRE portfolio. While this reduces our book value per share in the short term, we believe it provides a path to recovery in our net interest margin through the accelerated resolution of our non-performing loans to generate liquidity for reinvestment in higher-yielding new originations. Additionally, we have adjusted our dividend to $0.125 per share to align with anticipated cash earnings to preserve capital for reinvestment and share repurchases with potential upward bias co-incident with the recovery in earnings."

69.     During the corresponding conference call held that same day, defendant Capasse stated that Ready Capital's reserve action taken in the quarter lowered Ready Capital's basis in non-performing loans and would provide its "asset managers with more options for accelerated resolutions" of its non-performing assets. Defendant Capasse further announced that, consistent with Ready Capital's asset resolution efforts, Ready Capital was bifurcating its commercial real estate portfolio into two categories: (i) core; and (ii) non-core. Defendant Capasse explained that assets designated as "core" were loans Ready Capital intended to "hold to maturity," while "non-core" assets were comprised in large part of assets "tagged with aggressive liquidation strategies."

COMPLAINT
(2:25-cv-01013) - 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Notably, defendant Capasse stated that Ready Capital's non-core portfolio contained $1.2 billion in loans and was comprised almost entirely of Ready Capital's originated loans and a single mixed-use asset acquired in the Mosaic Merger.

70.    Regarding the originated portion of Ready Capital's non-core portfolio, CCO Zausmer stated that the loans were comprised of modified loans that had "lower yields," a "less viable path to stabilization," and a "higher probability of foreclosure" absent liquidation, stating in pertinent part as follows:

> On the non-core, this is really the bucket of more challenging loans that we've deemed this represents 17% of the portfolio.  These are where we're going to have short term holdings and the primary asset management strategy is, as Tom mentioned, really an expeditious liquidation.  These assets have lower yields, less viable path to stabilization and takeout, the multi-family specifically agency takeout, little or no fresh equity from the borrowers inside of those modifications.  And we feel that ultimately, if we don't liquidate specifically on the loan side, there'll be a higher probability of foreclosure.

71.    Adding to these remarks, defendant Capasse stated that Ready Capital had been trying to "stay alive to '25" until interests rates eased, which ultimately caused loans that were previously modified to be "split into two buckets," stating in pertinent part as follows:

> Yeah, and I want to just add to that, Doug, the – yeah, I think this is systemic to the industry, especially on the multi-family side where you look to bridge to – I'm sorry – to loans that have been made it through the rate hike period and 2025.

> There's an old saying a year ago, you stay alive to '25.  Well, rates didn't go down.  So what you're now seeing is loans that were previously modified split into two buckets.

72.    A presentation deck issued in connection with Ready Capital's earnings announcement further revealed that the originated segment of Ready Capital's non-core portfolio was ***entirely*** comprised of loans originated in fiscal years 2022 and prior (*i.e.*, before the Merger), as depicted in the following slide:



73.     Regarding the Mosaic portion of Ready Capital's non-core portfolio, defendant Capasse stated that the mixed-use asset was a Ritz-Carlton located in Portland, Oregon with hospitality, office, and residential components, consisting of a $504 million senior loan and a $62 million equity position.  Defendant Capasse further revealed that although Ready Capital's "original strategy was to refinance the construction into a bridge loan, the current appraisal and other factors favored ownership and serial asset disposition on the components."  As a result of the property's appraisal value, defendant Capasse stated Ready Capital had "reserved $130 million of [its] original exposure to mark the asset to its as is value."

74.     On March 19, 2025, Broadway EB-5 Fund, LLC, a mezzanine lender in the Ritz-Carlton development project at issue, filed a lawsuit in New York state court against BRMK Lending SPE JP, LLC and Sutherland Asset I, LLC, each indirect subsidiaries or affiliates of

Ready Capital, and various other entities. The lawsuit, among other things, sought to permanently enjoin the transfer of the property from the development entities to Ready Capital.

75. According to Ready Capital's filings submitted in that action, the Ritz-Carlton project faced drastic challenges from the outset of its construction in late 2019, which had negatively impacted its value. For example, a sworn affirmation of Alex Ovalle, a Managing Director and Head of Construction Lending and Syndications at Ready Capital, stated that the project "***faced catastrophic setbacks from the beginning***," which "***impeded the Project's development***," and had caused the project to "***cost far more to construct than originally contemplated***," stating in pertinent part as follows:

**The Project Encounters Catastrophic Setbacks From the Beginning**

. . . Construction on the Project began in late 2019 and Senior Lender began advancing funds to the Senior Borrowers consistent with the terms of the CLA.

. . . Shortly thereafter, the Project encountered numerous and substantial delays. Mr. Sher refers to these, in passing, as "certain delays and cost overruns." Sher Aff. ¶28. In fact, the Project faced catastrophic setbacks from the beginning. As construction on the Project was commencing, the COVID-19 pandemic erupted and halted progress on the construction. Certain COVID-19 restrictions remained in place for the next several years, which exacerbated construction delays and the Project's financial difficulties. Moreover, during this same time, downtown Portland, where the Project is located, was beset by significant civil unrest. Protests, demonstrations, looting, and vandalism plagued downtown, and further impeded the Project's development. In addition, a water leak caused substantial damage. As a result, the Project cost far more to construct than originally contemplated and the value, upon completion of construction, was far less than projected. In consequence, deadlines and obligations relating to both the Senior Loan and Mezzanine Loan were amended and extended to provide additional time to finance and complete the Project.

. . . These unprecedented events forced the parties to reevaluate both their original funding plan and the expected timeframes to complete the Project.

76. The affirmation further stated that "[b]y March 2023" – approximately two months before the Merger – the project had "insufficient funds to allocated to [its] construction budget" due to increased construction costs and the developer's failure to make the equity contributions necessary to cover the funding shortfall.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

77. The price of Ready Capital stock acquired by plaintiffs and other members of the Class has declined precipitously since the Merger, falling to lows of less than $4 per share. The price of Ready Capital stock has remained significantly below the Merger price at the time plaintiffs filed this complaint.

## VII.    CLASS ACTION ALLEGATIONS

78. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf all holders of record of Broadmark common stock at the close of business on April 17, 2023, the record date to vote on the Merger (the "Class"). Excluded from the Class are defendants and their families, the officers, directors, and affiliates of defendants, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

79. The members of the Class are so numerous that joinder of all members is impracticable. Broadmark common stock was actively traded on the NYSE and over 60 million Ready Capital shares were issued to former Broadmark shareholders in the Merger. While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Broadmark or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

80. Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

81. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

82. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

f)      whether defendants violated §14(a) of the Exchange Act by misrepresenting or omitting material information in the Proxy;

g)      whether Waterfall and the Individual Defendants are liable as "controlling persons" under §20(a) of the Exchange Act; and

h)      whether plaintiffs and the other members of the Class were injured as a result of defendants' misconduct.

83.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT ONE — FOR VIOLATIONS OF §14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER
### (Against All Defendants)

84.      Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

85.      This Count does not sound in fraud.  Plaintiffs do not allege that defendants had scienter or fraudulent intent as they are not elements of a §14(a) claim.

86.      SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

87.     Defendants prepared and disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of §14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

88.     By virtue of their positions within Broadmark and Ready Capital and their due diligence regarding the Merger, defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was jointly prepared, reviewed, and/or disseminated by Broadmark, Ready Capital, their respective officers and directors, and Waterfall. The Proxy misrepresented and/or omitted material facts, as detailed above.  Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

89.     As stated herein, the Proxy contained untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading in violation of §14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.  The Proxy was an essential link in the consummation of the Merger.  Defendants also failed to correct the Proxy prior to the Merger, and the failure to update and correct false statements is also a violation of §14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

90.     As a direct result of defendants' negligent preparation, review, and dissemination of the false and/or misleading Proxy, plaintiffs and the Class were precluded from exercising their right to vote on the Merger on a fully informed basis and were induced to vote their shares and accept inadequate consideration in connection with the Merger.  The false and misleading Proxy used to obtain shareholder approval of the Merger deprived plaintiffs and the Class of the full and fair value for their Broadmark shares.  At all times relevant to the dissemination of the materially false and/or misleading Proxy, defendants were aware of and/or had access to the true facts concerning the true value of Ready Capital, which was far below the assets that shareholders received.  Thus, as a direct and proximate result of the dissemination of the false and misleading Proxy defendants used to obtain shareholder approval of and thereby consummate the Merger,

COMPLAINT
(2:25-cv-01013) - 23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

plaintiffs and the Class have suffered damages and actual economic losses in an amount to be determined at trial.

91.    The omissions and false and misleading statements in the Proxy were material in that a reasonable stockholder would have considered them important in deciding how to vote on the Merger.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

92.    By reason of the foregoing, defendants have violated §14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.

## COUNT TWO — FOR VIOLATION OF §20(A) OF THE EXCHANGE ACT
### (Against Defendant Waterfall and the Individual Defendants)

93.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

94.    Section 20(a) of the Exchange Act imposes liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of" the Exchange Act or any of the rules promulgated thereunder.  Such "controlling persons" are "liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

95.    By reason of the allegations herein, defendant Waterfall and the Individual Defendants violated §14(a) of the Exchange Act by preparing, issuing, and publishing the Proxy, which contained untrue statements of material fact concerning the Merger and omitted to state material facts concerning the Merger necessary in order to make the statements made in the Proxy not misleading.

96.    Defendant Waterfall and the Individual Defendants were controlling persons of Broadmark and/or Ready Capital within the meaning of §20(a) of the Exchange Act.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

97.    The Individual Defendants, by virtue of their high-level positions as officers and/or directors of Broadmark and/or Ready Capital, participated in the operation and management of Broadmark and Ready Capital, and conducted and participated, directly and indirectly, in the conduct of their business affairs, and therefore exercised general control over the operations of Broadmark and Ready Capital.  The Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Broadmark and Ready Capital, including the identification of target companies to be acquired by Ready Capital, the evaluation of the assets to be received by Broadmark shareholders in the Merger, and the content and dissemination of the Proxy, which plaintiffs contend was false and misleading.

98.    Likewise, defendant Waterfall, as the external manager of Ready Capital and the employer of Ready Capital's executive management, and due to its influence and control over the Ready Capital Board and historical relationships with Ready Capital's management, exercised general control over the operations of Ready Capital and its business affairs.  Defendant Waterfall, either directly or indirectly through its affiliates, influenced and controlled the drafting of the Proxy, which plaintiffs contend was false and misleading.

99.    Defendant Waterfall and the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Proxy purports to describe the various issues and information that defendant Waterfall and the Individual Defendants reviewed and considered concerning the Merger.  Defendant Waterfall and the Individual Defendants, by virtue of their positions as managers, owners, officers, and/or directors of Ready Capital and/or Broadmark, had the ability to control the issuance, publication, and contents of the Proxy, prevent the dissemination of the materially misleading Proxy, or to cause the Proxy to be corrected so that it was not in violation of §14(a) of the Exchange Act.

100.    By virtue of the foregoing, defendant Waterfall and the Individual Defendants violated §20(a) of the Exchange Act, and plaintiffs are entitled to relief.

COMPLAINT
(2:25-cv-01013) - 25

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

1

## VIII.  PRAYER FOR RELIEF

2       WHEREFORE, plaintiffs pray for relief and judgment, as follows:

3       A.    Determining that this action is a proper class action, designating plaintiffs as Lead

4  Plaintiffs and certifying plaintiffs as class representatives under Rule 23 of the Federal Rules of

5  Civil Procedure and plaintiffs' counsel as Lead Counsel;

6       B.    Declaring that the Proxy distributed by defendants to shareholders was materially

7  false and misleading, in violation of Rule 14a-9 and §14(a) of the Exchange Act;

8       C.    Awarding plaintiffs and the members of the Class compensatory and/or rescissory

9  damages against defendants;

10      D.    Awarding plaintiffs and the members of the Class pre-judgment and post-judgment

11  interest, as well as reasonable attorneys' fees, expert witness fees, and other costs; and

12      E.    Awarding such other relief as this Court may deem just and **proper.**

13

## IX.    JURY DEMAND

14      Plaintiffs hereby demand a trial by jury.

15

16  Dated: May 28, 2025.                    Respectfully Submitted,

17                                          **KELLER ROHRBACK L.L.P.**

18                                          By: *s/ Juli E. Farris*
19                                          Juli E. Farris WSBA No. 17593
                                            1201 Third Avenue, Suite 3400
20                                          Seattle, Washington 98101
                                            Telephone: (206) 623-1900
21                                          jfarris@kellerrohrback.com

22                                          Keil M. Mueller (*pro hac vice* forthcoming)
                                            **KELLER ROHRBACK L.L.P.**
23                                          601 SW 2nd Avenue, Suite 1900
                                            Portland, Oregon 97204
24                                          Telephone: (971) 253-4600
                                            kmueller@kellerrohrback.com
25

26

COMPLAINT
(2:25-cv-01013) - 26

James I. Jaconette (*pro hac vice* forthcoming)
Brian E. Cochran (*pro hac vice* forthcoming)
Francisco J. Mejia (*pro hac vice* forthcoming)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, California 92101-8498
Telephone: (619) 231-1058
jamesj@rgrdlaw.com
bcochran@rgrdlaw.com
fmejia@rgrdlaw.com

Samuel H. Rudman (*pro hac vice* forthcoming)
**ROBBINS GELLER RUDMAN & DOWD LLP**
58 South Service Road, Suite 200
Melville, New York 11747
Telephone: (631) 367-7100
srudman@rgrdlaw.com

*Attorneys for Plaintiffs*

COMPLAINT
(2:25-cv-01013) - 27

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

Dr. Brian L. Grant, Individually and as Trustee of the Brian L. Grant Living Trust ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __25__ day of May, 2025.

DocuSigned by:

*Brian L. Grant*

5B6AEAA6CD8413

Dr. Brian L. Grant, Individually and as Trustee of the Brian L. Grant Living Trust

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Common Stock**

**Brian L. Grant Living Trust**

| Holders<br>Date | Amount of<br>Shares Held |
|---|---|
| 04/13/2023 | 267,317 |

**Brian L. Grant**

| Holders<br>Date | Amount of<br>Shares Held |
|---|---|
| 04/13/2023 | 44,910 |

## CERTIFICATION OF NAMED PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

MCN Holdings LLC ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this <u>27</u> day of May, 2025.


MCN HOLDINGS LLC


*Brian L. Grant*
—5B6AEAAA8CD6413—
_____
Dr. Brian L. Grant, General Manager

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Common Stock**

**MCN Holdings LLC**

| Holders<br>Date | Amount of<br>Shares Held |
|---|---|
| 04/13/2023 | 1,251,149 |