1

2

3

4

5

6

7

THE HONORABLE LAUREN KING

8            UNITED STATES DISTRICT COURT

9           WESTERN DISTRICT OF WASHINGTON

10                    AT SEATTLE

11

| | |
|---|---|
| BRIAN L. GRANT, BRIAN L. GRANT LIVING TRUST, and MCN HOLDINGS LLC Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiffs,<br><br>      vs.<br><br>BROADMARK REALTY CAPITAL INC., JEFFREY B. PYATT, JONATHAN R. HERMES, KEVIN M. LUEBBERS, DANIEL J. HIRSCH, PINKIE D. MAYFIELD, STEPHEN G. HAGGERTY, DAVID A. KARP, NORMA J. LAWRENCE, READY CAPITAL CORPORATION, THOMAS E. CAPASSE, ANDREW AHLBORN, JACK J. ROSS, FRANK P. FILIPPS, MEREDITH MARSHALL, DOMINIQUE MIELLE, GILBERT E. NATHAN, ANDREA PETRO, J. MITCHELL REESE, TODD M. SINAI, and WATERFALL ASSET MANAGEMENT, LLC,<br><br>                                    Defendants. | No. 2:25-cv-01013-LK<br><br><u>CLASS ACTION</u><br><br>AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

24

25

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE ACTION.................................................................................1

II.   JURISDICTION AND VENUE..........................................................................6

III.  PARTIES ...........................................................................................................6

IV.   BACKGROUND OF THE FACTS LEADING UP TO THE MERGER .......12

    A.    Broadmark's Management Believed the Company Was "Positioned . . . to
    Thrive" Before the Merger ....................................................................12

    B.    Driven by Self-Interest, Ready Capital Management Pursued Strategies
    Destructive to Long-Term Value Leading Up to the Merger..............................15

        1.    Ready Capital is Externally Managed by Waterfall—an
        Arrangement that Incentivizes the Ready Capital Defendants to
        Favor Short-Term Infusions of Equity Over Steady, Long-Term
        Financial Growth ...............................................................................16

        2.    The Value of Ready Capital's Stock is Highly Dependent on Its
        Dividend and Distributable Earnings .................................................17

        3.    Ready Capital Primarily Derives Its Income from Interest Accrued
        on its SBC Loans ...............................................................................17

        4.    Pursuant to GAAP, Ready Capital Is Required to Receive Detailed
        Information About the Credit Health of Its SBC Loans on at Least
        a Quarterly Basis ..............................................................................19

        5.    Leading Up to the Merger, Ready Capital Heavily Invested in SBC
        Loans Collateralized by Multi-Family Properties.............................22

        6.    In Search of a Quick Infusion of Equity, the Ready Capital
        Defendants Approved the Mosaic Acquisition and Transformed
        Ready Capital's Loan Portfolio.........................................................23

            a.    Unbeknownst to Investors, the Mosaic Portfolio was
            Almost Entirely Made Up of a Single Construction Loan............24

            b.    The Ready Capital Defendants Knew the Portland Project
            Loan Was "Catastrophic" from the Outset....................................25

            c.    Waterfall and Certain Ready Capital Individual Defendants
            Personally Benefitted from the Mosaic Acquisition Even as
            Ready Capital Was Saddled with the Toxic Portland Ritz-
            Carlton Project ..........................................................................33

V.    THE MERGER PROCESS WAS MARRED BY NEGLIGENCE .................33

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
  (**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- i -

**Page**

VI.    MATERIALLY FALSE AND MISLEADING STATEMENTS AND
       OMISSIONS IN THE PROXY .......................................................................40

       A.    Description of the Offering Documents at Issue ...................................40

       B.    Defendants Made False and Misleading Statements and Omissions
             Concerning the Mosaic Loan Portfolio................................................42

       C.    Defendants Made False and Misleading Statements Concerning Ready
             Capital's Loan Portfolio and Lending Strategy...................................46

       D.    Defendants Made False and Misleading Statements Concerning Ready
             Capital's Compliance with GAAP and Its CECL Reserves...............48

       E.    Defendants Made False and Misleading Statements Concerning Ready
             Capital's Historical and Projected Financial Results.........................53

       F.    Defendants' Additional Disclosure Violations.....................................58

VII.   READY CAPITAL'S STOCK PRICE DETERIORATED AFTER THE CLOSE
       OF THE MERGER ......................................................................................60

       A.    Late 2023 through July 2024: Ready Capital Continues to Experience
             Problems and its Stock Declines, but the Market is Unaware of the Full
             Extent of the Problems ......................................................................61

       B.    August 2024 to September 2024: Ready Capital Discloses Pressure on Its
             Multi-Family Loans and Announces a Dividend Cut ..........................64

       C.    November 2024 to December 2024: Ready Capital's Increasingly Poor
             Third Quarter Earnings Cause Continued Alarm, and Analysts Continue to
             Question Ready Capital's Accounting Practices ................................67

       D.    Late 2024 through Early 2025: With Investors Still Largely in the Dark as
             to the Portland Project, Ready Capital Prepares to Foreclose .............69

       E.    March 2025: Ready Capital Cuts Its Dividend in Half Due to a $277
             Million Increase in CECL Stemming from the Portland Project and Loans
             Collateralized by Multi-Family Properties.........................................72

       F.    May 2025 to November 2025: Ready Capital Moves the Portland Project
             to "Non-Accruing Status" and Takes Losses on Its Loans Collateralized by
             Multi-Family Properties .....................................................................77

VIII.  CLASS ACTION ALLEGATIONS................................................................80

COUNT ONE – FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT
       AND RULE 14A-9 PROMULGATED THEREUNDER (Against the Ready
       Capital Defendants and the Broadmark Defendants) .....................................82

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- ii -

Page

COUNT TWO – FOR VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
(Against Defendant Waterfall, the Ready Capital Individual Defendants, and the
Broadmark Individual Defendants) ........................................................................84

COUNT THREE – FOR VIOLATION OF SECTION 11 OF THE SECURITIES ACT
(Against the Ready Capital Defendants) .................................................................85

COUNT FOUR – FOR VIOLATION OF SECTION 12(A)(2) OF THE SECURITIES
ACT (Against the Ready Capital Defendants)........................................................87

COUNT FIVE – FOR VIOLATION OF SECTION 15 OF THE SECURITIES ACT
(Against Defendant Waterfall and the Ready Capital Individual Defendants)................88

IX.    PRAYER FOR RELIEF .........................................................................................89

X.     JURY DEMAND ....................................................................................................91

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- iii -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

Lead Plaintiffs Brian L. Grant, Brian L. Grant Living Trust, and MCN Holdings LLC (each, "Plaintiff" and, collectively, "Lead Plaintiff"), individually and on behalf of all others similarly situated, by the undersigned counsel, respectfully bring this class action for violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, and §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against Broadmark Realty Capital Inc. ("Broadmark"), its former Board of Directors (the "Broadmark Board"), and certain of its former officers; and Ready Capital Corporation ("Ready Capital"), its former Board of Directors (the "Ready Capital Board"), certain of its former officers, and its affiliated investment manager, Waterfall Asset Management, LLC ("Waterfall") (collectively, "Defendants").

Lead Plaintiff brings this federal class action against Defendants upon personal knowledge as to those allegations concerning Lead Plaintiff and Lead Plaintiff's own acts and information and belief as to all other matters based on the investigation conducted by and through Lead Plaintiff's attorneys. This investigation included, among other things, a review of SEC filings of Broadmark and Ready Capital, Broadmark's and Ready Capital's press releases, transcripts of earnings calls hosted by Ready Capital and Broadmark, filings and documents from *Broadway EB-5 Fund, LLC v. Ready Capital Corporation*, No. 651523/2025 (N.Y. Sup. Ct. Mar. 19, 2025) (hereinafter "*Broadway EB-5 v. Ready Capital*") and other litigation, analyst reports, media reports, and publicly available reports and information about Ready Capital's acquisition of all outstanding Broadmark securities. Lead Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    On May 31, 2023, Ready Capital completed its merger with Broadmark, pursuant to the terms of the Merger Agreement dated February 26, 2023 (the "Merger"), whereby Broadmark merged into RCC Merger Sub, LLC, a wholly-owned subsidiary of Ready Capital, and the merger subsidiary survived. Through the Merger, each share of Broadmark common stock

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 1 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    outstanding at the effective time of the Merger was exchanged for 0.47233 shares of Ready Capital

2    common stock. Upon closing, Broadmark shareholders were expected to own roughly 36% of the

3    combined company's stock. In aggregate, Ready Capital issued more than 60 million shares to

4    Broadmark shareholders. The Ready Capital shares that Broadmark shareholders voted to receive

5    in the Merger ultimately plunged from $10.11 per share at the end of trading on the day the Merger

6    closed to recent lows of less than $2.50 per share, indisputably harming former Broadmark

7    shareholders.

8        2.    This lawsuit alleges strict liability and negligence claims for false and misleading

9    statements and omissions in the Proxy (defined below), which Defendants issued to Broadmark

10    stockholders in order to effectuate the Merger. In the Proxy, Defendants represented that Ready

11    Capital maintained a strategy of "conservative underwriting" in "high conviction sectors" and

12    "without creating concentration issues"; had a "diverse portfolio" of "substantially . . . performing

13    loans" valued on average at less than $2 million and up to $40 million; and was a stable company

14    with a "consistent dividend." All of that was false. Recent admissions by Ready Capital, including

15    those made in filings and during hearings in *Broadway EB-5 v. Ready Capital*—a contentious

16    lawsuit between various levels of lenders quarreling over the fallout from Ready Capital's ill-fated

17    Portland Project (defined below)—have shed light on the preexisting, but undisclosed, problems

18    with Ready Capital's business. Undisclosed in the Proxy and thus unbeknownst to Broadmark

19    investors at the time, it is now clear that Ready Capital stood on the brink of catastrophic failure

20    in the months leading up to the Merger. Indeed, recent revelations show that Defendants already

21    knew that Ready Capital's dividend was unsustainable before Defendants issued the Proxy.

22        3.    First, in 2022, Ready Capital acquired Mosaic (defined below) in a stock-for-stock

23    merger valued at approximately $470 million. Ready Capital acquired Mosaic's existing loan

24    portfolio, which Ready Capital stated was comprised of 32 total loans with an aggregate

25    outstanding balance of $565 million. The Proxy touted Ready Capital's acquisition of Mosaic as a

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 2 -

"success[]" that "expanded [Ready Capital's] investment portfolio … to include a diverse portfolio of construction assets with attractive portfolio yields."

4.    The Proxy, however, did not disclose, *inter alia*, the following existing facts about Ready Capital's troubled Mosaic loan portfolio: (a) that the unpaid principal balance of Mosaic's loan portfolio was almost entirely attributable to a single, $460 million construction loan for the development and construction of a mixed-use property—including a Ritz-Carlton hotel, residential condominiums, and retail and office space—in Portland, Oregon (the "Portland Project"), and which represented the single largest loan in Ready Capital's entire portfolio before the Merger; (b) that, as Ready Capital later admitted in filings in *Broadway EB-5 v. Ready Capital*, the Portland Project "faced catastrophic setbacks from the beginning" which caused the Project to "cost far more to construct than originally contemplated"; (c) that, as Ready Capital also later admitted, "[b]y March 2023"—approximately two months before the close of the Merger—"the Project had become out-of-balance, meaning that there were insufficient funds to allocated to [its] construction budget" due to "increased costs of construction and [the developer's] failure to make the required equity contributions to properly fund the increased costs of completion for the Project"; (d) that the value of the underlying property collateralizing the Portland Project loan was materially diminished by the combination of a significantly cooler real estate market and comparatively high prices for the Ritz-Carlton condominiums units and office space; and (e) that despite the fact that the Portland Project was underwater due to cost overruns and the diminished value of the underlying collateral, Ready Capital agreed, among other things, to loan the developer an additional $47 million to complete the project.

5.    Second, as interest rates dropped in the wake of the COVID-19 pandemic in 2021 and 2022, Ready Capital increased its origination of small-to-medium balance commercial ("SBC") bridge loans—short-term, interest-only loans used to "bridge" the gap between buying a new property and selling an existing one—collateralized by multi-family properties to record levels. Specifically, Ready Capital increased the unpaid principal balance of its overall loan

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 3 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1   portfolio from $4 billion in 2020 to $10 billion in 2022 and more than tripled the unpaid principal

2   balance of its overall portfolio concentrated in loans collateralized by multi-family properties to

3   almost 70% in 2022. The Proxy touted Ready Capital's approach to underwriting as "conservative"

4   and that Ready Capital's loans were "substantially . . . performing." The Proxy, however, did not

5   disclose the following existing facts: (a) that Ready Capital and its borrowers faced a large volume

6   of commercial real estate loans that were quickly becoming due for repayment in 2023—2025, but

7   that a material portion of borrowers within Ready Capital's originated portfolio were experiencing

8   significant financial distress; (b) that Ready Capital's borrowers on loans backed by multi-family

9   properties were largely unable to secure new financing with sufficient loan amounts; and (c) that,

10  as a result, Ready Capital imminently faced significant increases in delinquency and default and/or

11  foreclosure rates for its loans collateralized by multi-family properties.

12      6.      Third, the Proxy stated that Ready Capital's financial statements and related

13  disclosures were "prepared in accordance with accounting principles generally accepted in the

14  United States of America" ("GAAP"). In particular, the Proxy asserted that Ready Capital

15  determined on a "quarterly" basis an "allowance for credit losses" to account for "losses on loans

16  and lending commitments" in accordance with the "expected loss model known as the Current

17  Expected Credit Loss ('CECL') model," pursuant to which Ready Capital estimates expected

18  losses for its loans "at the individual loan level," based on various "key loan-specific inputs and

19  "a macroeconomic forecast." The Proxy, however, did not disclose that Ready Capital was not

20  actually taking allowances for loan losses on its SBC bridge loans collateralized by multi-family

21  properties and the Portland Project loan in Portland in accordance with GAAP.

22      7.      Fourth, the Proxy contained false and misleading statements concerning Ready

23  Capital's historical and projected financial results. The Proxy represented that a "Benefit[] to

24  Broadmark Stakeholders" from the Merger included a presently-existing "higher and more

25  consistent dividend." The Proxy also included inflated financial numbers that did not account for

26  the true existing condition of Ready Capital's portfolio. As to these issues, the Proxy failed to

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                              - 4 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  disclose that: (a) that the carrying value of Ready Capital's SBC bridge loans collateralized by
2  multi-family properties and the Portland Project loan was materially overstated in the Proxy and
3  had no basis in fact; (b) Ready Capital's historical net interest income and book value as of
4  December 31, 2022 were materially overstated in the Proxy; (c) by the time Defendants issued the
5  Proxy, Ready Capital's Distributable Earnings (defined below) and dividend were already
6  unsustainable as the company's loan portfolio was already severely weakened by the rapidly
7  deteriorating Portland Project loan and its SBC bridge loans collateralized by multi-family
8  properties; and (d) Ready Capital's projected Distributable Earnings, book value, and dividend
9  were materially overstated in the Proxy and had no basis in fact.

10      8.      As a result of the misrepresentations and omissions described herein, former
11  Broadmark stockholders voted in favor of the Merger, thus permitting the Merger to close. Upon
12  the close, Broadmark stockholders received shares of Ready Capital common stock traceable to
13  the false and misleading Registration Statement (defined below) and Proxy. Lead Plaintiff and the
14  stockholder class were damaged as a result.

15      9.      Following the close of the Merger, Ready Capital's stock price began a downward
16  descent due to the significant deterioration of the Portland Project loan and Ready Capital's SBC
17  bridge loans collateralized by multi-family properties. Though Ready Capital temporarily
18  obscured its loan portfolio's decay by recognizing new forms of income in order to inflate its
19  earnings, the financial press grew suspicious of Ready Capital's dubious accounting practices and
20  the truth began to leak out. First, Ready Capital's legacy SBC loan portfolio began showing
21  significant signs of weakness. For example, Ready Capital engaged in hundreds of millions of
22  dollars' worth of loan modifications, a significant departure from the company's historical norms.
23  Second, the Portland Project loan went upside down, as it racked up hundreds of millions of dollars
24  in cost overruns and failed to attract interested buyers and renters. Independent appraisals valued
25  the underlying property at less than half of the remaining unpaid principal balance on the loan.
26  These issues ultimately came to a head on March 3, 2025, when Ready Capital cut its dividend by

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)
- 5 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1   half and reported an almost $300 million dollar increase in its allowances for loan losses. Ready

2   Capital's stock continued to drop, falling from $10.11 at the close of the Merger to recent lows of

3   well less than $2.50 per share.

4   **II.    JURISDICTION AND VENUE**

5          10.    This Court has jurisdiction over the subject matter of this action pursuant to §27 of

6   the Exchange Act, 15 U.S.C. §78aa, for violations of §§14(a) and 20(a) of the Exchange Act, SEC

7   Rule 14a-9 promulgated thereunder, §22 of the Securities Act, 15 U.S.C. §78v, for violations of

8   §§11, 12(a)(2), and 15 of the Securities Act, and 28 U.S.C. §1331.

9          11.    This Court has jurisdiction over each Defendant and venue in this case is proper in

10  this District pursuant to §27 of the Exchange Act, §22 of the Securities Act, and 28 U.S.C.

11  §1391(b) and (c). Acts giving rise to the violations of law complained of herein, including the

12  dissemination of false and misleading information to the investing public, occurred in this District.

13  Broadmark was based in this District at the time of the Merger, multiple Broadmark Board

14  meetings to consider the Merger inferably took place in this District, Lead Plaintiff resides in this

15  District (as do many other members of the Class (defined below)), multiple Defendants reside in

16  this District, evidence of the Broadmark Board's consideration of the Merger is located in this

17  District, the acts and transactions that form the subject of this complaint occurred in substantial

18  part in this District or in close proximity to this District, and Ready Capital maintains substantial

19  business operations in this District, including through its subsidiary, which now houses

20  Broadmark.

21  **III.    PARTIES**

22         12.    Plaintiff Brian L. Grant held Broadmark common stock on the record date of the

23  Merger, was entitled to vote on the Merger, and received Ready Capital stock in exchange for his

24  Broadmark stock as a result of the Merger, as evidenced by the certification attached hereto and

25  incorporated herein, and suffered damages. Plaintiff Grant also serves as the trustee of the Brian

26  L. Grant Living Trust and the managing member of MCN Holdings LLC.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
                                                    - 6 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

13.     Plaintiff Brian L. Grant Living Trust held Broadmark common stock on the record date of the Merger, was entitled to vote on the Merger, and received Ready Capital stock in exchange for its Broadmark stock as a result of the Merger, as evidenced by the certification attached hereto and incorporated herein, and suffered damages.

14.     Plaintiff MCN Holdings LLC held Broadmark common stock on the record date of the Merger, was entitled to vote on the Merger, and received Ready Capital stock in exchange for its Broadmark stock as a result of the Merger, as evidenced by the certification attached hereto and incorporated herein, and suffered damages.

15.     Defendant Broadmark is real estate investment trust ("REIT") that was based in Seattle, Washington at the time of the Merger. Prior to the Merger, Broadmark common stock was traded on the New York Stock Exchange ("NYSE") under the ticker symbol "BRMK." In connection with the Merger, Broadmark merged with and into RCC Merger Sub, LLC, a wholly owned subsidiary of Ready Capital.

16.     Defendant Jeffrey B. Pyatt served as Broadmark's Interim CEO and Chairman of the Broadmark Board at the time of the Merger. Pyatt participated in the preparation of the Proxy and participated in the solicitation of proxies in support of the Merger Agreement.

17.     Defendant Jonathan R. Hermes served as Broadmark's CFO and a director on the Broadmark Board at the time of the Merger. Hermes participated in the preparation of the Proxy and participated in the solicitation of proxies in support of the Merger Agreement.

18.     Defendant Kevin M. Luebbers served as Broadmark's Interim President and a director on the Broadmark Board at the time of the Merger and was appointed to the Ready Capital Board in connection with the Merger. Luebbers participated in the preparation of the Proxy and participated in the solicitation of proxies in support of the Merger Agreement.

19.     Defendant Daniel J. Hirsch served as a director on the Broadmark Board at the time of the Merger and was appointed to the Ready Capital Board in connection with the Merger. Hirsch

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 7 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    participated in the preparation of the Proxy and participated in the solicitation of proxies in support

2    of the Merger Agreement.

3         20.    Defendant Pinkie D. Mayfield served as a director on the Broadmark Board at the

4    time of the Merger and was appointed to the Ready Capital Board in connection with the Merger.

5    Mayfield participated in the preparation of the Proxy and participated in the solicitation of proxies

6    in support of the Merger Agreement.

7         21.    Defendant Stephen G. Haggerty served as a director on the Broadmark Board at the

8    time of the Merger. Haggerty participated in the preparation of the Proxy and participated in the

9    solicitation of proxies in support of the Merger Agreement.

10        22.    Defendant David A. Karp served as a director on the Broadmark Board at the time

11   of the Merger. Karp participated in the preparation of the Proxy and participated in the solicitation

12   of proxies in support of the Merger Agreement.

13        23.    Defendant Norma J. Lawrence served as a director on the Broadmark Board at the

14   time of the Merger. Lawrence participated in the preparation of the Proxy and participated in the

15   solicitation of proxies in support of the Merger Agreement.

16        24.    Defendants Broadmark, Pyatt, Hermes, Luebbers, Hirsch, Mayfield, Haggerty,

17   Karp, and Lawrence are collectively referred to as the "Broadmark Defendants."

18        25.    Defendants Pyatt, Hermes, Luebbers, Hirsch, Mayfield, Haggerty, Karp, and

19   Lawrence are collectively referred to as the "Broadmark Individual Defendants" and the

20   "Broadmark Board."

21        26.    Defendant Ready Capital is a REIT that originates, acquires, finances, and services

22   commercial real estate loans. Ready Capital common stock trades on the NYSE under the ticker

23   symbol "RC."

24        27.    Defendant Thomas E. Capasse served as CEO and Chief Investment Officer of

25   Ready Capital and as Chairman of the Ready Capital Board at the time of the Merger. Capasse is

26   a Manager and co-founder of Waterfall, and chairs its investment committee. Capasse participated

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                    - 8 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    in the preparation of the Proxy and participated in the solicitation of proxies in support of the

2    Merger Agreement. Capasse reviewed, approved, and signed the Registration Statement on behalf

3    of Ready Capital. Capasse signed the letter to Ready Capital investors contained in the Joint

4    Proxy/Prospectus (defined below).

5        28.    Defendant Andrew Ahlborn served as CFO of Ready Capital at the time of the

6    Merger. Ahlborn is employed by Waterfall. Ahlborn participated in the preparation of the Proxy

7    and participated in the solicitation of proxies in support of the Merger Agreement. Ahlborn

8    reviewed, approved, and signed the Registration Statement on behalf of Ready Capital. Ahlborn

9    signed the notice of the Ready Capital special meeting sent to Ready Capital investors contained

10   in the Joint Proxy/Prospectus.

11       29.    Defendant Jack J. Ross served as President and a director of the Ready Capital

12   Board at the time of the Merger. Ross is a Manager and co-founder of Waterfall, and chairs its

13   investment committee. Ross participated in the preparation of the Proxy and participated in the

14   solicitation of proxies in support of the Merger Agreement. Ross reviewed, approved, and signed

15   the Registration Statement on behalf of Ready Capital.

16       30.    Defendant Frank P. Filipps served as a director of the Ready Capital Board at the

17   time of the Merger. Filipps participated in the preparation of the Proxy and participated in the

18   solicitation of proxies in support of the Merger Agreement. Filipps reviewed, approved, and signed

19   the Registration Statement on behalf of Ready Capital.

20       31.    Defendant Meredith Marshall served as a director of the Ready Capital Board at the

21   time of the Merger. Marshall participated in the preparation of the Proxy and participated in the

22   solicitation of proxies in support of the Merger Agreement. Marshall reviewed, approved, and

23   signed the Registration Statement on behalf of Ready Capital.

24       32.    Defendant Dominique Mielle served as a director of the Ready Capital Board at the

25   time of the Merger. Mielle participated in the preparation of the Proxy and participated in the

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
                                    - 9 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    solicitation of proxies in support of the Merger Agreement. Mielle reviewed, approved, and signed

2    the Registration Statement on behalf of Ready Capital.

3        33.    Defendant Gilbert E. Nathan served as a director of the Ready Capital Board at the

4    time of the Merger. Nathan participated in the preparation of the Proxy and participated in the

5    solicitation of proxies in support of the Merger Agreement. Nathan reviewed, approved, and signed

6    the Registration Statement on behalf of Ready Capital.

7        34.    Defendant Andrea Petro served as a director of the Ready Capital Board at the time

8    of the Merger. Petro participated in the preparation of the Proxy and participated in the solicitation

9    of proxies in support of the Merger Agreement. Petro reviewed, approved, and signed the

10   Registration Statement on behalf of Ready Capital.

11       35.    Defendant J. Mitchell Reese served as a director of the Ready Capital Board at the

12   time of the Merger. Reese participated in the preparation of the Proxy and participated in the

13   solicitation of proxies in support of the Merger Agreement. Reese reviewed, approved, and signed

14   the Registration Statement on behalf of Ready Capital.

15       36.    Defendant Todd M. Sinai served as a director of the Ready Capital Board at the

16   time of the Merger. Sinai participated in the preparation of the Proxy and participated in the

17   solicitation of proxies in support of the Merger Agreement. Sinai reviewed, approved, and signed

18   the Registration Statement on behalf of Ready Capital.

19       37.    Defendants Ready Capital, Capasse, Ahlborn, Ross, Filipps, Marshall, Mielle,

20   Nathan, Petro, Reese, and Sinai are collectively referred to as the "Ready Capital Defendants."

21       38.    Defendants Capasse, Ahlborn, Ross, Filipps, Marshall, Mielle, Nathan, Petro,

22   Reese, and Sinai are collectively referred to as the "Ready Capital Individual Defendants" and the

23   "Ready Capital Board."

24       39.    Defendant Waterfall served as the external asset manager for Ready Capital.

25   Defendant Waterfall also employed the executive management of Ready Capital, and thus

26   controlled the contents of the joint proxy statement for the Merger. According to Ready Capital,

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 10 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

"[e]ach of Ready Capital's executive officers is a principal or managing director of [Waterfall]."
Pursuant to the management agreement between Ready Capital and Waterfall, Waterfall
participated in preparing Ready Capital's public filings. Specifically, under §2(b)(xx) of the
management agreement, "[t]he Manager will be responsible for the day-to-day operations of the
Company . . . and will perform (or cause to be performed) such services and activities relating to
the assets and operations of the Company . . . as may be appropriate, including . . . assisting the
Company . . . in complying with all regulatory requirements applicable to them in respect of their
business activities, including preparing or causing to be prepared all financial statements required
under applicable regulations and contractual undertakings and all reports and documents, if any,
required under the Exchange Act, the Securities Act, or by stock exchange requirements."
Additionally, under §2(k), "[t]he Manager shall prepare, or cause to be prepared, at the sole cost
and expense of the Company . . . all reports, financial or otherwise, with respect to the Company
. . . reasonably required by the Board of Directors in order for the Company . . . to comply with
their Governing Instruments or any other materials required to be filed with any governmental
body or agency, and shall prepare, or cause to be prepared, all materials and data necessary to
complete such reports and other materials including, without limitation, an annual audit of the
Company's . . . books of account by a nationally recognized registered independent public
accounting firm." Waterfall's top officers and employees, including Capasse, Ross, and Ahlborn,
signed the Registration Statement.

40.    Each of the Defendants named herein was responsible for the joint proxy used to
solicit the support of Broadmark shareholders for the Merger. As stated in the companies'
respective SEC filings: "Ready Capital, Broadmark and their respective directors and executive
officers, and certain other affiliates of Ready Capital and Broadmark may be deemed to be
'participants' in the solicitation of proxies from the stockholders of Ready Capital and Broadmark
in respect of the proposed merger."

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                    - 11 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

IV.    **BACKGROUND OF THE FACTS LEADING UP TO THE MERGER**

A.    **Broadmark's Management Believed the Company Was "Positioned
. . . to Thrive" Before the Merger**

41.    Broadmark was an internally managed commercial real estate finance company based in Seattle, Washington. Broadmark was co-founded by Pyatt in 2010 and was taken public in 2019 through a merger with Trinity Merger Corporation, a special purpose acquisition company. Since its founding, Broadmark elected to be taxed as a REIT, and was thus required under applicable provisions of the Internal Revenue Code to annually distribute at least 90% of its net taxable income through dividends. Broadmark specialized in directly underwriting, funding, servicing, and managing short-term loans—generally between 12 to 24 months to maturity— secured by first mortgage liens on real property to fund the development, construction, and/or renovation of residential and commercial properties. Broadmark's typical borrowers included real estate investors, developers, and other commercial borrowers. Broadmark generally used its loan proceeds to fund the vertical construction, horizontal development, investment, land acquisition, and refinancing of residential and commercial properties. Broadmark loans were generally structured with an initial advance at closing and additional loan installments disbursed to the borrower upon satisfactory completion of previously agreed stages of construction. As of December 31, 2022, Broadmark's portfolio was comprised of 202 active loans with approximately $1.4 billion of total commitments and $931 million unpaid principal balance.

42.    Broadmark's loan portfolio set it apart from its peers in the commercial mortgage REIT sector. Broadmark built an equity-funded portfolio of short-term construction loans, with a strategic focus on loans collateralized by properties held in non-judicial foreclosure states that have exhibited strong population growth. This portfolio put Broadmark in a more favorable position than its peers in three main respects. First, Broadmark was uniquely unlevered compared to its competitors: as of December 31, 2022, Broadmark carried the lowest debt amongst its peers at just 0.1x debt to equity. This is because, unlike its competitors, Broadmark (a) funded its loans through borrower equity, as opposed to its own capital, which means it had little outstanding debt; and

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 12 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

(b) focused on short-term construction loans, as opposed to long-term fixed-rate mortgages, which reduces its need to take on debt in the first instance. Second, Broadmark's focus on short-term loans allowed it to adjust the overall carrying value of its portfolio with relative speed compared to its mortgage-heavy peers. Third, Broadmark's geographic focus ensured both continued business in the long-term and greater assurances of accessing collateral in the event of default. As of December 31, 2022, more than 70% of Broadmark's loan portfolio was secured by properties located in states ranked in the top ten for migration for the two year period of 2021 and 2022 according to the Census Bureau. Many of these states, including Washington and Utah, are non-judicial foreclosure states, which allowed Broadmark to more efficiently and quickly access collateral should a borrower default. In all, Broadmark's loan portfolio was better insulated from risks associated with liquidity, refinancing, and interest rates, among others, compared to other highly leveraged REITs, including Ready Capital.

43.    Due to the superior character of its loan portfolio, the market viewed Broadmark favorably before the Merger, even when the company faced setbacks. On November 7, 2022, Broadmark announced its third quarter of fiscal year 2022 results.[1] Notably, the company announced that the Broadmark Board elected to lower the company's dividend by almost half to better align with its earnings and to build additional liquidity. On an earnings call that same day, Broadmark's management described the underlying strength of the company, highlighting Broadmark's unencumbered balance sheet, the short-term nature of its loans, and its diversified national footprint:

- Then-Interim CEO and Executive Chairman Pyatt told analysts: "We are disciplined underwriters, requiring significant equity from our borrowers. Our loans are generally short term in nature, allowing us to reprice our book with relative speed. Notably, we have always operated with little or no debt, significantly reducing risks associated with liquidity, refinancing, and interest rate exposure. As we look to the future, we remain confident in our cycle-tested strategy. We are diversified across the national footprint and have a deep and experienced team of

---

[1]    Broadmark's fiscal year ran from January 1 to December 31, with quarter ending on March 31, June 30, September 30, and December 31.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 13 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

ground-level real estate investment experts. As we manage our existing portfolio and the current economic and financial market turmoils subsides over time, we believe we will emerge in a strong position to take advantage of the opportunities that arise to resume growth and create value over the long term."

- Then-Interim President and Director Luebbers likewise stated: "With countervailing risks of inflation, along with the rising rates and recession fears, financial market volatility has hit levels not seen since the global financial crisis in 2008/2009. Virtually all equity and fixed income assets have been significantly impacted. Despite this environment, we believe that Broadmark is positioned ultimately to thrive as opportunities arise, as they always do from market dislocation and uncertainty, we believe over time, we will be able to capture more than our share as we move ahead. . . . With an experienced team in place and the lowest levered balance sheet in the industry, Broadmark is poised to build the business in a disciplined and thoughtful manner . . . we believe we are taking the right actions to move forward and achieve long-term success."

- CFO and Treasurer Schneider stated: "The short-term nature of our loans reduces our exposure to interest rate fluctuations. It also allows us to be nimble and pivot fairly quickly as the environment evolves. . . . [W]e currently have a debt-to-equity ratio of 8.8%, which remains the strongest in the mortgage REIT sector. Maintaining a fortress balance sheet has always been a foundational principle for Broadmark, and this provides a significant competitive advantage in the current environment that will allow us to remain opportunistic with an evolving market environment."

44. In the wake of Broadmark's third quarter of fiscal year 2022 results, analysts continued to view the company as a viable competitor in the commercial mortgage REIT market. For example, on January 4, 2023, JMP wrote: "We reiterate our Market Perform rating on shares of Broadmark . . . following the release of third-quarter results, our review of the filed Form 10-Q, and our working model update." JMP largely attributed its rating to Broadmark's loan portfolio and its virtually non-existent debt levels relative to its highly-leveraged peers: "The company tends to focus on heavier construction-related projects than most CMREIT [commercial mortgage REIT] peers, which drives higher yields without the need to add leverage . . . [Broadmark's] [l]everage remains the lowest in the Commercial MREIT peer group at just 0.1x debt to equity. In the event of a prolonged disruption in credit markets that leads to banks reducing CRE-related lending, we believe BRMK would be positioned to take advantage since it does not rely on bank financing to

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 14 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

support its lending activity." However, Broadmark's bright future would soon be extinguished upon the announcement and eventual completion of the Merger with Ready Capital.

**B.    Driven by Self-Interest, Ready Capital Management Pursued Strategies Destructive to Long-Term Value Leading Up to the Merger**

45.    Ready Capital is an externally managed commercial real estate finance company incorporated in Maryland and headquartered in New York. Ready Capital was founded in 2011 as Sutherland Asset Management Corporation, a real estate fund. The company converted to a REIT in 2013, and changed its name to Ready Capital in 2018. Like Broadmark, as a REIT, Ready Capital is required to distribute annually to its stockholders dividends equal to at least 90% of its annual REIT taxable income. Ready Capital originates, acquires, and services commercial loans. Ready Capital offers SBC loans to finance the full life cycle of a property, including initial construction, transitional bridge financing, and stabilized properties. Ready Capital's core strategy is to originate SBC bridge loans used in the development of multi-family residential properties.

46.    Unbeknownst to investors, Ready Capital had pursued a number of destructive strategies in the two years leading up to the Merger that primed its stock to crater following the close of the Merger. As alleged in detail below, the structure of Ready Capital's management fee to Waterfall incentivized senior Ready Capital management—all Waterfall executives—to pursue transactions that yielded short-term equity infusions, over the interests of Ready Capital and its investors. As a result of this self-interested strategy, Ready Capital acquired Mosaic in 2022, including the highly problematic, $460 million Portland Project loan. Around this same time, Ready Capital nearly tripled the concentration of the unpaid principal balance of its loan portfolio collateralized by multi-family properties. Ready Capital's acquisition of the Portland Project loan and its intense investment in multi-family property loans proved disastrous for the company.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 15 -

1        **1.    Ready Capital is Externally Managed by Waterfall—an**
         **Arrangement that Incentivizes the Ready Capital Defendants**
2        **to Favor Short-Term Infusions of Equity Over Steady, Long-**
         **Term Financial Growth**

3        47.    Ready Capital is externally managed and advised by Waterfall. Capasse and Ross

co-founded Waterfall in 2005. As manager, Waterfall establishes and directs Ready Capital's

investment strategy and identifies loan acquisitions and originations on behalf of Ready Capital.

Pursuant to a management agreement, Waterfall positioned its own executives to constitute the

entirety of Ready Capital's management team, including its CEO and Chief Investment Officer

(Defendant Capasse), CFO (Defendant Ahlborn), Chief Operating Officer (non-defendant Gary

Taylor), and Chief Credit Officer (non-defendant Adam Zausmer). Ready Capital pays Waterfall

a quarterly management fee that is calculated and payable in arrears equal to 1.5% per annum of

Ready Capital's stockholders' equity up to $500 million and 1.0% per annum above $500 million.

The structure of this management fee incentivizes Waterfall—and Ready Capital executives

employed by Waterfall—to pursue business combinations that yield short-term gains in Ready

Capital's equity, even if such transactions are not in the best interests of the company's outside

investors in the long run.

48.    Indeed, several of the Individual Defendants (such as Capasse, Ross, and Ahlborn)

have direct pecuniary interests in Waterfall, and have directly benefited from the increase in

management fees paid by Ready Capital to Waterfall as a result of Ready Capital's various

acquisitions. For example, following the completion of Ready Capital's acquisition of Mosaic in

March 2022, Waterfall's management fees increased from $17 million in fiscal year 2021 to $19

million in fiscal year 2022. As alleged in detail below, the Ready Capital Defendants pursued this

transaction even though diligence revealed that it would be value destroying for Ready Capital's

stockholders in the long term.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 16 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

### 2. The Value of Ready Capital's Stock is Highly Dependent on Its Dividend and Distributable Earnings

49.     Because Ready Capital is required as a REIT to annually distribute at least 90% of its net taxable income through dividends, the value of Ready Capital's common stock is highly dependent on Ready Capital's dividend, as well as the underlying real estate assets that support and fund the income distributions. Ready Capital determines its annual dividend through a non-GAAP metric that it calls "Distributable Earnings."[2] Ready Capital calculates Distributable Earnings by excluding any unrealized provisions for expected credit losses on its loans, among other things, from its GAAP net income. Ready Capital's GAAP net income is primarily derived from interest accrued on the Company's SBC loans over the lifetime of the loan

### 3. Ready Capital Primarily Derives Its Income from Interest Accrued on its SBC Loans

50.     Ready Capital has primarily derived its income from its SBC loan operating segment since at least fiscal year 2021.[3] Leading up to and following the close of the Merger, Ready Capital's business was divided into three operating segments: (a) SBC lending and acquisitions; (b) small business lending; and (c) residential mortgage banking.[4] Ready Capital primarily originates and acquires SBC bridge loans, which are short-term, interest-only loans used to "bridge" the gap between buying a new property and selling an existing one, with an initial maturity profile of two to four years. Ready Capital claims that its SBC loans "are used by businesses to purchase real estate used in their operations or by investors seeking to acquire multi-

---

[2]     Waterfall has an incentive to maintain positive Distributable Earnings, as pursuant to its management agreement with Ready Capital, it is entitled to an "incentive distribution," provided that Distributable Earnings over the prior twelve calendar quarters is greater than zero.

[3]     Ready Capital's fiscal year runs from January 1 to December 31, with quarters ending on March 31, June 30, September 30, and December 31.

[4]     Following the close of the Merger, in late 2023 and early 2024, Ready Capital divested from its residential mortgage banking segment and transitioned its strategy from focusing on SBC loans to larger "lower-to-middle market" ("LMM") loans. As a significant portion of Ready Capital's portfolio continued to be made up of SBC loans, the Amended Complaint refers to Ready Capital's primary business as SBC loans rather than LMM loans.

---

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)
- 17 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

family, office, retail, mixed use or warehouse properties." Ready Capital reported that, in fiscal year 2021, it held $7.1 billion in, or about 75% of its total, gross assets in its SBC loan segment, and earned $110 million in, or 58% of its total, net income from its SBC loan segment. By contrast, Ready Capital's small business lending and residential mortgage banking segments combined made up less than half of its net income in fiscal year 2021.

51.    Ready Capital derives the majority of its income on its SBC loans from interest earned on the loans over their lifetime: Ready Capital reported that it earned $106 million in net interest income in fiscal year 2021 on its SBC loans, representing over 96% of the company's net income earned from the segment.[5] Ready Capital's ability to collect interest on a given loan depends on whether the borrower is delinquent on their loan payments. Ready Capital asserts that, "[i]f the asset has been delinquent for the previous 90 days, the asset status will turn to non-accrual, and recognition of interest income will be suspended until the asset resumes contractual payments for three consecutive months." In other words, the migration of loans from accrual to non-accrual status negatively impacts Ready Capital's net income. Ready Capital further claims that, "[o]n at least a quarterly basis, [we] review[] and, if appropriate, make[] adjustments to the accrual status of the asset." Additionally, and as alleged below, to estimate the income it can reasonably earn from its SBC loans, Ready Capital is required to undertake regular and extensive analysis to ascertain the amount the Company is unlikely to recover on a given loan, such as due to delinquency and/or default.

---

[5]    Ready Capital's income falls into two categories: interest and non-interest. Non-interest income includes loan servicing fees, loan origination fees, and realized and unrealized gains upon the sale or disposition of loans that result in an excess of net proceeds over the net carrying value or cost basis of the loan. Interest income on loans is accrued based on the outstanding principal amount and the contractual terms of the loan.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 18 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1

2

### 4. Pursuant to GAAP, Ready Capital Is Required to Receive Detailed Information About the Credit Health of Its SBC Loans on at Least a Quarterly Basis

3      52.    The Ready Capital Defendants received or should have received detailed

4  information about the credit health of Ready Capital's loan portfolio on at least a quarterly basis.

5  To accurately report the income it can reasonably earn from its SBC loans, Ready Capital is

6  required to undertake regular and extensive analysis to ascertain expected credit losses on its loans.

7  Ready Capital purports to employ the "Current Expected Credit Loss" ("CECL") model to estimate

8  and account for credit losses on its SBC loans in line with GAAP Accounting Standard Update

9  ("ASU") 2016-13. GAAP and Ready Capital's own accounting standards require that the company

10  estimate, on at least a quarterly basis, the expected credit losses on its loans through loan loss

11  forecasting models that take into account myriad historical and current factors such as borrower

12  credit risk, collateral property value, and other economic conditions. Moreover, Ready Capital

13  claims that it considers additional loan-specific qualitative factors where a loan is likely to default.

14      53.    GAAP requires entities to estimate at each reporting date expected credit losses

15  incurred over the contractual life of financial assets based on a broad range of factors.[6] In

16  particular, entities should consider internal and external information "relating to past events,

17  current conditions, and reasonable and supportable forecasts" and "relevant qualitative and

18  quantitative factors that relate to the environment in which the entity operates and are specific to

19  the borrower(s)." While entities may use historical credit loss information for assets with similar

20  risk characteristics, entities must make adjustments to that information in light of current

21  conditions, such as changes in property values or delinquency. For example, a lender with a large

22  portfolio of loans collateralized by multi-family properties may look to historical credit loss

23  information for similar loans, but must make adjustments if current interest rates rise. Additionally,

24

25  ---

26  [6]    In particular, CECL is used to estimate expected credit losses for financial assets recorded at amortized cost. This includes loans held for investment, which are loans that an entity intends to hold maturity. Ready Capital holds the majority of its SBC loans for investment.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)
- 19 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1   entities must evaluate whether a given loan should be analyzed as part of a pool of assets that

2   exhibit similar risk characteristics, or separately. For example, a large construction loan should be

3   analyzed separately from small loans collateralized by existing structures due to its distinctive risk

4   characteristics. Additionally, renewed measurements are triggered when a loan becomes

5   "collateral dependent"—*i.e.*, where foreclosure is probable or the borrower is experiencing

6   financial difficulty.

7       54.    Ready Capital purports to adhere to these GAAP guidelines, asserting in its

8   financial statements that it has "adopted ASU No. 2016-13, Financial Instruments-Credit Losses,

9   and subsequent amendments." Moreover, "[i]n connection with the Company's adoption of ASU

10  2016-13 on January 1, 2020, the Company implemented new processes including the utilization

11  of loan loss forecasting models, updates to the Company's reserve policy documentation, changes

12  to internal reporting processes and related internal controls." Ready Capital asserts that, in

13  accordance with ASU 2016-13, it estimates expected credit loss for a loan "at the time the financial

14  asset is first added to the balance sheet and [then] quarterly thereafter." The company states that it

15  "estimate[s] expected life-time credit losses, at the individual loan level," using "loan loss

16  forecasting models" based on historical loan loss data. Ready Capital specifies that it takes into

17  account various "credit quality indicators" in its forecasts, stating in pertinent part:

18          Significant inputs to the Company's forecasting methods include (i) key
19      loan-specific inputs such as LTV [loan to value], vintage year, loan-term,
        underlying property type [and value], occupancy, geographic location, and others,
20      and (ii) a macro-economic forecast, including unemployment rates, interest rates,
        commercial real estate prices, and others.

21      55.    Ready Capital also asserts that it considers "relevant loan-specific qualitative

22  factors" for loans it deems to be collateral-dependent. More specifically, Ready Capital states that

23  it "considers loan investments that are both (i) expected to be substantially repaid through the

24  operation or sale of the underlying collateral, and (ii) for which the borrower is experiencing

25  financial difficulty, to be 'collateral-dependent.'" Ready Capital uses, among other things,

26  delinquency rates to determine whether a loan is collateral-dependent. Ready Capital claims that

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 20 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1   it breaks delinquency metrics into current, 30-59 days, 60-day plus, and bankruptcy or foreclosure.

2   Ready Capital states that "[l]oans that are 30 days or more past due, provide an indication of the

3   borrower's capacity and willingness to meet its financial obligations." Ready Capital further

4   asserts that, where foreclosure is probable, it "measures the expected losses based on the difference

5   between the fair value of the collateral (less costs to sell the asset if repayment is expected through

6   the sale of the collateral) and the amortized cost basis of the loan as of the measurement date."

7        56.    Loan losses recognized under GAAP and the CECL model directly bear on an

8   entity's net income, and thus is a critical metric of a lender's financial health and stability. When

9   an entity increases its allowance for credit losses on its balance sheet, it directly reduces its net

10   income by that same amount. Decreases in net income and in the overall carrying value of a

11   company's portfolio in turn reduces its net assets and leads to lowered liquidity, higher leverage,

12   and lower book value. The same is true for Ready Capital: an increase in Ready Capital's

13   allowance for credit losses lowers its net income and the carrying value of its loan portfolio,

14   thereby reducing its book value per share. Along with Distributable Earnings and Ready Capital's

15   dividend, books value per share greatly affects the company's stock price.[7] Given the importance

16   of CECL and reported loan losses to Ready Capital's financial results and stock price, and in light

17   of the myriad factors management is required to review on at least a quarterly basis in order to

18   estimate CECL in the first instance, the Ready Capital Defendants received or should have

19   received frequent and highly detailed reports about the credit health of Ready Capital's loan

20   portfolio leading up the Merger.

---

[7]   Investment analysts use Ready Capital's reported or projected book value per share to set their price targets. For example, JMP reported on August 31, 2022: "Our new $16.00 price target is based in part on a P/BV multiple of 1.05x on June 30 adjusted book value of $15.28." On November 8, 2022, BTIG reported: "Our $15.50 PT is based on ~1x book value and a ~11% dividend yield." On February 27, 2023, Ladenburg Thalmann reported: "We value RC shares on a price/book and dividend yield basis. Our $14.50 price target is 0.94x our 4Q23 book value per share estimate of $15.50."

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)      - 21 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

### 5.    Leading Up to the Merger, Ready Capital Heavily Invested in SBC Loans Collateralized by Multi-Family Properties

57.    In fiscal years 2021 and 2022, Ready Capital dramatically increased its origination of SBC loans. In fiscal year 2021, Ready Capital originated $5 billion in SBC loans, which exceeded total annual production in the prior two years combined: the company originated only $1 billion in loans in fiscal year 2020, and $1.7 billion in loans in fiscal year 2019. By the end of fiscal year 2022, the combined carrying value of loans originated in 2021 and 2022 was approximately $7 billion, representing more than 70% of Ready Capital's nearly $10 billion loan portfolio.

58.    The overwhelming majority of these newly-originated loans were bridge loans collateralized by multi-family properties. Relative to the prior year, by December 31, 2021, Ready Capital had more than doubled the concentration of the unpaid principal balance of its loans collateralized by multi-family properties to 54.4%. By December 31, 2022, Ready Capital further increased the concentration of the unpaid principal balance of its loans collateralized by multi-family properties to 67.0%. In just two years, Ready Capital almost tripled the balance of its loans collateralized by multi-family properties. The majority of these properties were located in California and Texas: by December 31, 2022, 11% and 20% of the unpaid principal balance of Ready Capital's loans was collateralized by properties in California and Texas, respectively.

59.    While SBC bridge loans collateralized by existing multi-family properties are generally considered to be stable investments, particularly compared to construction loans, Ready Capital's heavy investment in this area quickly soured. In late 2021 and early 2022, interest rates dropped in the wake of the COVID-19 pandemic to between 2.5% and 3%. These low interest rates drove up the value of multi-family properties to historically high levels. By late 2022, however, interest rates soared, reaching a high of 7% in October 2022. High interest rates continued into 2023. As interest rates climbed and market conditions shifted, problems began to crystallize for Ready Capital.  Ready Capital would soon face a "maturity wall," as the record number of SBC bridge loans it originated in 2021 and 2022 were quickly coming due for full repayment in late 2023 and 2024. However, interest on borrowers' variable-rate bridge loans

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 22 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    would quickly exceed their rental income as the oversupply of multi-family properties in Ready

2    Capital's key markets began to dramatically slow rent growth in 2023. Specifically, a boom in

3    multi-family construction in 2019 resulted in more completed multi-family properties, while

4    borrowers with fixed-rate loans significantly below market interest rates increasingly faced a

5    strong disincentive to sell existing properties. Exacerbating this issue, property values would drop

6    as interest rates climbed, making it difficult for borrowers to refinance their loans at the current,

7    lower property values. This unique combination of factors would lead to a dramatic increase in

8    delinquencies and potential defaults on Ready Capital's multi-family loans.

9    **6.    In Search of a Quick Infusion of Equity, the Ready Capital**
       **Defendants Approved the Mosaic Acquisition and**
10    **Transformed Ready Capital's Loan Portfolio**

11    60.    On November 4, 2021, Ready Capital issued a press release announcing that it had

12    agreed to acquire privately-held funds Mosaic Real Estate Credit, LLC, Mosaic Real Estate Credit

13    TE, LLC, and MREC International Incentive Split, LP (collectively, "Mosaic") in a stock-for-

14    stock merger valued at approximately $470 million (the "Mosaic Acquisition"). Ready Capital's

15    acquisition included in principal part the purchase of Mosaic's existing loan portfolio, which

16    Ready Capital stated was comprised of 32 total loans with an aggregate outstanding balance of

17    $565 million.

18    61.    During the corresponding conference call held the following day, and in numerous

19    presentations to investors, Ready Capital touted Mosaic's "un-levered" portfolio as a purported

20    benefit of the transaction. Ready Capital management emphasized that its statements regarding the

21    purported strength of the Mosaic portfolio were based on the "extensive diligence" undertaken by

22    Ready Capital's Chief Credit Officer Adam Zausmer and his team on Mosaic's portfolio. Zausmer

23    claimed that Mosaic's loan portfolio had a "strong" credit profile, "good property type and

24    geographic diversity," was concentrated in the "most liquid" markets in the country, and that

25    "about 60% of the assets" were construction projects "backed by reputable, well-capitalized

26    developers and sponsors." At no point in their remarks did Ready Capital's management disclose

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
- 23 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  that the carrying value of the Mosaic portfolio was primarily attributable to a single, increasingly

2  troubled, construction project for a mixed use property in Portland, Oregon.

3      62.    On March 16, 2022, Ready Capital announced that the Mosaic Acquisition had

4  been completed. Though the Mosaic Acquisition effectively pumped equity into the highly-

5  leveraged Ready Capital—its equity capital base increased from almost $1.3 billion to over $1.9

6  billion—it was a transaction that would soon prove to be a short-term balm to Ready Capital's

7  leverage ratio at the ultimate cost of catastrophic failure.

8           **a.    Unbeknownst to Investors, the Mosaic Portfolio was**
             **Almost Entirely Made Up of a Single Construction**
9            **Loan**

10     63.    In all, Mosaic's loan portfolio was comprised of 32 SBC loans with an aggregate

11  outstanding balance of $565 million and a fair value of $763 million. Unbeknownst to investors,

12  the balance of Mosaic's loan portfolio was primarily attributable to a single construction loan: a

13  $460 million, four-year loan for the construction of the Portland Project. In 2019, real estate

14  developer Walter Bowen began developing the Portland Project, a $650 million real estate project

15  located at 900-936 SW Washington. The Portland Project involved the development and

16  construction of a 35-story building consisting of a 251-room Ritz-Carlton hotel, 138 Ritz-Carlton

17  residential condominiums, and approximately 184,000 square feet of office and retail space

18  ("Block 216"). On June 28, 2019, Mosaic, through its subsidiary Mosaic Portland Hotel, LLC,

19  entered into a construction loan agreement with various subsidiaries of BDC Real Estate

20  Investments, an affiliate of Bowen's BPM Real Estate Group (collectively, "Bowen"), pursuant to

21  which Mosaic agreed to loan $460 million to Bowen for the construction of Block 216, and Bowen

22  agreed to repay the Loan plus interest on each agreed-upon payment date, with the entire principal

23  balance of the loan plus interest due on June 29, 2023 and to substantially complete construction

24  of Block 216 by December 31, 2022 (the "Portland Project Loan Agreement" or "Loan

25  Agreement"). Concurrently with the Portland Project Loan Agreement, Bowen also entered into

26  an additional loan agreement with Broadway EB-5 Fund, LLC whereby it would loan Bowen $49

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
- 24 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    million in mezzanine funding. Following the Mosaic Acquisition, the Portland Project was the

2    single largest loan in Ready Capital's loan portfolio. Yet, the Portland Project loan was highly

3    problematic from its inception—a fact Ready Capital knew, but not disclose to investors, when it

4    acquired Mosaic, and when it entered into the Merger with Broadmark.

**b.    The Ready Capital Defendants Knew the Portland
Project Loan Was "Catastrophic" from the Outset**

5    64.    Ready Capital's post-Merger legal filings reveal that the Ready Capital Defendants

6    knew, and did not disclose to investors, that it had acquired the Portland Project loan, which was

7    doomed from the start. On March 19, 2025, Broadway EB-5 Fund, LLC, a mezzanine lender in

8    the Ritz-Carlton development project at issue, filed a lawsuit in New York state court against

9    BRMK Lending SPE JP, LLC and Sutherland Asset I, LLC, each indirect subsidiaries or affiliates

10   of Ready Capital, and various other entities. The lawsuit, among other things, sought to

11   permanently enjoin the transfer of the property from the development entities to Ready Capital.

12   According to Ready Capital's filings submitted in that action, the Ritz-Carlton project faced drastic

13   challenges from the outset of its construction in late 2019. Ready Capital asserted during a

14   preliminary injunction hearing in *Broadway EB-5 v. Ready Capital* that the Project was "***deeply***

15   ***troubled . . . from the outset***" and beset with a "***huge cost overrun since inception***." Additionally,

16   a sworn affirmation of Alex Ovalle, a Managing Director and Head of Construction Lending and

17   Syndications at Ready Capital, detailed the setbacks the Project faced leading up to the Merger,

18   stating that the Project "***faced catastrophic setbacks from the beginning***," which "***impeded the***

19   ***Project's development***" and caused the project to "***cost far more to construct than originally***

20   ***contemplated***"[8]:

21

22

23

24

25

---

26   [8]    Ovalle was Managing Director and Head of Origination for Mosaic before joining Ready
Capital in connection with the Mosaic Acquisition.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 25 -

*The Project Encounters Catastrophic Setbacks From the Beginning*

Construction on the Project began ***in late 2019*** and Senior Lender began advancing funds to the Senior Borrowers consistent with the terms of the CLA [construction loan agreement].

***Shortly thereafter, the Project encountered numerous and substantial delays***. . . . ***In fact, the Project faced catastrophic setbacks from the beginning***. As construction on the Project was commencing, the COVID-19 pandemic erupted and halted progress on the construction. Certain COVID-19 restrictions remained in place for the next several years, which exacerbated construction delays and the Project's financial difficulties. Moreover, during this same time, downtown Portland, where the Project is located, was beset by significant civil unrest. Protests, demonstrations, looting, and vandalism plagued downtown, and further impeded the Project's development. In addition, a water leak caused substantial damage.

As a result, the ***Project cost far more to construct than originally contemplated and the value, upon completion of construction, was far less than projected***. In consequence, deadlines and obligations relating to both the Senior Loan and Mezzanine Loan were amended and extended to provide additional time to finance and complete the Project.

These unprecedented events forced the parties to reevaluate both their original funding plan and the expected timeframes to complete the Project.

65.    Bowen struggled to raise capital for the Portland Project from the start, as evidenced by an equity raise Bowen initiated in 2019 and numerous amendments to the Portland Project Loan Agreement entered into between Bowen and Mosaic. Section 2.6 of the Loan Agreement stated that Bowen was to "provide[] evidence reasonably satisfactory to Lender that Borrower's Equity . . . is sufficient to cover the difference between the total remaining Project Costs as set forth in the Approved Budget and the Maximum Loan Amount. . . . Within nine (9) months following the Closing Date, Borrower may elect by providing notice to Lender to decrease the maximum Loan Amount to as low as $405,000,000 based on additional Borrower's Equity raised after the Closing Date in excess of the amount set forth in the preceding sentence. . . ." On August 1, 2019, Bowen filed on Form D with the SEC a notice for an equity offering of $120 million.

66.    On January 22, 2020, Bowen and Mosaic entered into the First Amendment to Construction Loan Agreement (the "First Amendment"), which extended the deadline for Bowen

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                    - 26 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  to elect to decrease the maximum loan amount from "within nine (9) months following the Closing

2  Date" to June 30, 2020. The First Amendment stated that Bowen was "undertaking a Class A

3  offering to raise equity for the Project and anticipates raising the majority of its capital in the

4  second quarter of 2020." However, in March 2020, the City of Portland issued an emergency stay-

5  at-home order due to the onset of the COVID-19 pandemic. By April 2020, Bowen conceded that

6  "[t]he timing of the [Class A equity] raise is anticipated to be impacted by the COVID-19 pandemic

7  closures."

8      67.    On April 3, 2020, Bowen and Mosaic entered into the Second Amendment to

9  Construction Loan Agreement (the "Second Amendment"), which extended the deadline for

10  Bowen to elect to decrease the maximum loan amount from June 30, 2020 to December 31, 2020.

11      68.    On November 25, 2020, Bowen and Mosaic entered into the Third Amendment to

12  Construction Loan Agreement (the "Third Amendment"), which again extended the deadline for

13  Bowen to elect to decrease the maximum loan amount to December 31, 2021.

14      69.    On January 7, 2021, Bowen filed an amended Form D indicating that he had raised

15  on $35 million of the $120 million he sought in capital. On February 14, 2022, Bowen filed another

16  amendment to Form D indicating that he had raised $60 million in total since 2019.

17      70.    Ready Capital's investment policies and the Portland Project Loan Agreement

18  indicate that the Company was aware of these setbacks and other issues related to the Portland

19  Project's valuation before it acquired the Portland Project loan through the Mosaic Acquisition.

20  Ready Capital claims that it undertakes extensive analysis, including requesting an appraisal from

21  a local independent third-party, in order to determine the level of risk associated with a loan before

22  acquiring it. As Ready Capital stated in its Annual Report, filed on Form 10-K with the SEC, for

23  fiscal year 2022:

24          Before making an investment, we and Waterfall calculate the level of risk
            associated with the SBC loan to be acquired or originated based on several factors
25          which include the following: (i) a complete review of the seller's data files,
            including data integrity, compliance review and custodial file review; (ii) rent rolls
26          and other property operating data; (iii) personal credit reports of the borrower and

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                           - 27 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

owner and/or operator; (iv) property valuation review; (v) environmental review; and (vi) tax and title search. In making the assessment and otherwise conducting customary due diligence, we will employ standard documentation requirements and require appraisals prepared by local independent third-party appraisers.

71.     Moreover, Section 3.1 of the Portland Project Loan Agreement required as a condition of closing that Bowen provide Mosaic with various documents concerning Bowen's plans for the Portland Project, including an approved budget, a draw schedule for loan disbursements, a construction schedule, and a sales progress schedule for selling the Ritz-Carlton condominium units. In turn, Section 4.1 of the Loan Agreement required that Mosaic verify the accuracy of Bowen's budget and other plans and evaluate his financial stability prior to disbursing loan proceeds.

72.     To this end, Bowen was required to supply detailed information about the Project and his finances to Mosaic, and later to Ready Capital. First, under Section 6.5 of the Loan Agreement, "[f]rom time to time during the course of the Project, within ten (10) days following Lender's written demand therefor, Borrower shall furnish Lender with . . . reports of all Project Costs, progress schedules and contractors' cost breakdowns for the Project." Second, Section 8.4 of the Agreement required that Bowen notify Mosaic within 15 days after obtaining actual knowledge of various events affecting the Project or his financial health, including: "any circumstance that renders the Approved Budget materially inaccurate with respect to any estimate Project Cost"; "any aspect of the Project that is not in substantial conformity with the Plans"; "any Default or Event of Default"; and "any Material Adverse Change." Third, Section 8.7 of the Agreement required that Bowen "furnish to the Lender . . . financial information regarding the Borrower, its constituent partners or members, as the case may be, the Property and any guarantor of the Loan as the Lender may from time to time reasonably request." This section further provided that Bowen provide Mosaic with, among other things, detailed quarterly and annual financial statements and federal income tax returns:

(a) <u>Annual Financial Statements</u>. Borrower shall deliver to Lender, within one hundred twenty (120) days after the end of each fiscal year of Borrower ending

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 28 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

December 31 of each year (each, a "Fiscal Year"), (a) an audited balance sheet for Borrower as of the end of such Fiscal Year and an audited statement of profit and loss for Borrower and for Borrower's operations in connection with the Property for such Fiscal Year, together with all supporting schedules, and (b) the opinion of an independent certified public accountant acceptable to Lender stating that such materials (i) were prepared in accordance with GAAP applied on a consistent basis, or in accordance with such other principles or methods as are reasonably acceptable to Lender, (ii) fairly present Borrower's financial condition, (iii) show all material liabilities, direct and contingent, (iv) fairly present the results of Borrower's operations, and (v) disclose the existence of any hedge and/or off-balance sheet transactions.

      (b) <u>Quarterly Financial Statements</u>. Within thirty (30) days after the end of each fiscal quarter, an unaudited balance sheet for Borrower as of the end of such fiscal quarter and a statement of profit and loss for Borrower and for Borrower's operations in connection with the Property for such fiscal quarter, together with all supporting schedules and certified by the Borrower in writing as (i) being prepared in accordance with GAAP applied on a consistent basis, or in accordance with such other principles or methods as are reasonably acceptable to Lender, (ii) fairly presenting Borrower's financial condition, (iii) showing all material liabilities, direct and contingent, (iv) fairly presenting the results of Borrower's operations, and (v) disclosing the existence of any hedge and/or off-balance sheet transactions.

*    *    *

      (f) <u>Borrower Tax Returns</u>. Borrower shall deliver to Lender, within thirty (30) days after filing, a copy of the federal income tax return filed for Borrower for the prior calendar year, in each case prepared by a certified public accountant acceptable to Lender.

73.     Immediately following the close of the Mosaic Acquisition, Ready Capital began to experience setbacks with the Portland Project first-hand. By June 2022, just months after Ready Capital acquired the Portland Project through the Mosaic Acquisition, the Project's construction budget increased from $597 million to $657 million due to repeated construction delays. Indeed, the Portland Project blew through the December 31, 2022 substantial completion date for construction outlined in the Portland Project Loan Agreement. Bowen continued to struggle to raise equity: on February 14, 2023, Bowen filed an amended Form D with the SEC indicating that he had only raised an additional $3 million in equity in the previous year, bringing his total raise to $63 million of the $120 million in equity he initially sought.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 29 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

74.     Exacerbating the cost overruns and funding shortfalls, Bowen struggled to sell condominium units and lease office space. By December 2022, of the planned 132 condominium units, only 32 transactions were pending, and less than a third of those transactions were actually completed. Indeed, the Portland Project faced a significantly cooler market for condominiums since the onset of the COVID-19 pandemic, increasingly high interest rates, an oversupply of units, and higher prices than units in comparable buildings. The Ritz-Carlton condominiums were on the market for almost three times the median price of a condo in Portland: for example, in July 2024, the price per square foot for condos in the Pearl District was $462, less than half of the average $1,105 per square foot price of the Ritz-Carlton condos that ultimately sold in 2023 and 2024. The Ritz-Carlton condominiums were even hundreds of dollars more than comparable luxury buildings in the Portland area, which sold on average at $947 per square foot in 2022; $888 per square foot in 2023; and $653 per square foot in 2024. The Portland Project's missed sale targets were not merely the result of a sector-wide downturn. Indeed, a comparable building, the Kirkland Tower, sold all of its units within two years of opening in 2022, at an average $1,065 per square foot. Likewise, Bowen struggled to fill office spaces: as of November 2024, just 28% of the office space was leased by five tenants. Three of six floors were entirely vacant, largely because the Project's average office lease rate of $41.29 per square foot far outpaced comparable office rent prices at just $34.84 per square foot.

75.     Unbeknownst to investors, these problems continued leading up to the Merger. As Ready Capital later asserted in litigation, through Ovalle's affirmation, "*[b]y March 2023*"—approximately two months before the close of the Merger—"*the Project had become out-of-balance, meaning that there were insufficient funds to allocated to [its] construction budget*" due to "increased costs of construction and [Bowen's] failure … to make the required equity *contributions to properly fund the increased costs of completion for the Project*." Indeed, by that time, Bowen's estimated construction budget ballooned to $710 million in costs—an over $110 million, or almost 20%, increase in costs compared to the original budget of $597 million. More

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                    - 30 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

specifically, by March 2023, projected expenditures for the Portland Project for the nine months ended December 2023 were $122.5 million, increasing total Project costs to over $645 million. Further, another $65 million was projected to be needed in 2024 to complete the Project. It was unclear how Bowen was planning to cover the $110 million in increased costs: the $460 loan from Ready Capital, $49 million from the mezzanine lender, $25 million in equity from Bowen, and $63 million in additional equity left a $113 million funding shortfall, with tens of millions of dollars in interest continuing to accrue on the loan for an incomplete project.

76. The lack of actual and/or projected funding led to delayed or entirely delinquent payments to contractors, indicating the Project's financial difficulties. For example, payments to McKinstry Co. LLC (a company hired by BDC/Washington Street, LLC to build a food hall) were delayed by months (for invoices dated December 2022 through February 2023). After February 2023, over $495,000 due to McKinstry was unpaid, forcing McKinstry to file a lien in January 2024. In early August 2023, Balfour Beatty Construction filed a lien for over $6 million—indicating that Balfour and/or its subcontractors had not been paid for months prior to August 2023. In 2024, Project vendors would file additional liens claiming debts owed of almost $29 million.

77. Pursuant to Section 2.8 of the Loan Agreement, Bowen could only extend the maturity date of the Loan twice, each for a one-year period, if certain conditions were met, including, among others: "No Material Adverse Change shall have occurred as of the date notice of such extension is received by Lender"; and "Sales of the Units have met the target set forth in the Sales Progress Schedule to be met by the respective extension date; provided that, at a minimum, (x) Borrower shall have accepted non-refundable deposits under Unit Sale Agreements with respect to at least 50% of the Units in order to exercise the first option to extend." As the Project was now out-of-balance, in violation of the terms of the Loan Agreement, and Bowen had inferably failed to sell enough condominium units, Bowen himself was unable to exercise his option to extend the maturity date of the Loan.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                    - 31 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

78.     Disregarding these obvious red flags, Ready Capital quietly advanced millions in additional funds to Bowen. On May 5, 2023, less than a month before the Merger closed, Bowen and Ready Capital entered into the Fifth Amendment to Loan Agreement and Other Loan Documents (the "Fifth Amendment"). The Fifth Amendment provided that Ready Capital would advance $47 million in exchange for a preferred equity investment, extend the Loan's maturity date from June 29, 2023 to December 31, 2024, and belatedly extend the construction completion date from December 31, 2002 to September 30, 2023. In addition, the Fifth Amendment suspended Bowen's interest payments, and instead added accrued interest to the unpaid principal balance of the loan: "commencing on the Payment Date occurring on May 1, 2023, and continuing on each Payment Date thereafter for the term of the Loan . . . unpaid interest on the outstanding principal balance of the Loan . . . that otherwise would have been due and payable on each Payment Date shall accrue at the Interest Rate on each Payment Date and be compounded each month and added to the outstanding principal balance of the Loan on each Payment Date (the 'Deferred Interest Amount')."Such interest that has accrued on a given loan, but has not yet been paid is termed "paid-in-kind" ("PIK") interest. An increase in PIK loans in a portfolio indicates heightened stress and degraded loan quality. Indeed, as alleged below in greater detail, this metric would soon reveal significant distress in Ready Capital's loan portfolio.

79.     Even though the Portland Project was the single largest loan in Ready Capital's portfolio, Defendants did not disclose the Fifth Amendment, or the Portland Project itself, in the Proxy. As alleged above, Ready Capital was required to estimate CECL for its loans on at least a quarterly basis, which required review of factors such as financial difficulties facing the borrower, the value of the underlying collateral, and other economic conditions. Further, under GAAP, Ready Capital was required to evaluate loans which did not exhibit risk characteristics similar to other loans in its portfolio individually. Additionally, renewed estimates were required where the loan became collateral-dependent. By the time the Merger was announced, the Portland Project loan was not only entirely distinct from the rest of Ready Capital's loan portfolio as a construction loan

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)
- 32 -
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

that dwarfed Ready Capital's average $1.9 million multi-family loan, but it was collateral-dependent. As such, it is inferable that the Ready Capital Defendants would have had access to detailed information about the challenges facing the Portland Project in the months leading up to the announcement and close of the Merger.

**c.    Waterfall and Certain Ready Capital Individual Defendants Personally Benefitted from the Mosaic Acquisition Even as Ready Capital Was Saddled with the Toxic Portland Ritz-Carlton Project**

80.    Waterfall and certain Ready Capital Individual Defendants, including Capasse, Ross, and Ahlborn, obtained huge short-term profits from the Mosaic Acquisition due to their direct pecuniary interests in Waterfall even as they forced Ready Capital to absorb the toxic Portland Ritz-Carlton Project into its loan portfolio. As stated in the registration statement filed in connection with Ready Capital's acquisition of Mosaic: "Following the Mergers, Ready Capital stockholders' equity will include the additional equity attributable to the acquisition of Subject Companies, thus the amount of the management fees payable to [Waterfall] will also increase, which gives [Waterfall] (and, therefore, Ready Capital's management) an incentive, not shared by Ready Capital stockholders, to negotiate and effect the Transactions, possibly on terms less favorable to Ready Capital than would otherwise have been achieved." Following the completion of Mosaic Acquisition, Waterfall's management fees increased from $17 million in fiscal 2021 to $19 million in 2022.

## V.    THE MERGER PROCESS WAS MARRED BY NEGLIGENCE

81.    In September 2021, the Broadmark Board was notified that a large private real estate investment company—cryptically referred to in the Proxy only as "Party A"—had reached out to discuss a potential acquisition of Broadmark. At a board meeting the next month, the Broadmark Board decided to inform Party A that it would remain limited only to publicly available information about Broadmark when developing a formal acquisition proposal.

82.    One year later, in September 2022, another entity referenced in the Proxy only as "Party B" expressed interest in a merger with Broadmark. Broadmark soon entered into a mutual

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 33 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1   non-disclosure agreement with Party B, permitting the exchange of non-public information for

2   both companies to conduct due diligence on each other's portfolios.

3       83.    As those discussions were ongoing, on November 7, 2022, Broadmark announced

4   that its former CEO and then-current Chairman of the Board, Jeffrey Pyatt, would be returning as

5   Broadmark's CEO. Broadmark also announced that it was separating from its then-CEO Bryan

6   Ward. Pyatt was no stranger to Broadmark's leadership team. Pyatt had co-founded Broadmark

7   Management LLC in 2010 and, over the next decade, served as President of Pyatt Broadmark,

8   director of Broadmark's real estate lending companies, and managing partner of Broadmark's

9   management companies, transitioning to CEO of Broadmark Realty Capital in November 2019.

10  Pyatt had served as Broadmark's CEO as recently as March 2022. Upon announcing Pyatt's return

11  to Broadmark's executive team, Broadmark's Lead Independent Director, David Karp, stated:

12  "[H]aving a low-levered balance sheet, access to capital and Broadmark's proven lending

13  platform, our focus is to thoughtfully grow the business and efficiently address our real estate

14  portfolio and non-performing loan assets. We know that it will take time to accomplish our

15  objectives, but we are committed to doing the hard work and to making the necessary tough

16  decisions to deliver long term value for our shareholders and ensure the future success of the

17  Company."

18      84.    Burdened by its own crumbling loan portfolio, Ready Capital sensed an

19  opportunity. Broadmark, on the other hand, had a solid portfolio and little debt, but its management

20  team was in transition. The day after Broadmark announced Pyatt's return as CEO, on November

21  8, 2022, Ready Capital requested that its own financial advisor, J.P. Morgan, convey Ready

22  Capital's interest in a merger between the two companies. After that initial contact, without

23  pausing to review or consider J.P. Morgan's potential conflicts of interest, Broadmark management

24  asked J.P. Morgan to prepare a packet of publicly-available information about Broadmark for use

25  by Ready Capital—J.P. Morgan's larger and more lucrative client. J.P. Morgan's conflicts of

26  interest are alleged in greater detail below.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                    - 34 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

85.    On November 21, 2022, Party B submitted a proposal to Broadmark for an ***all-cash*** acquisition of all outstanding Broadmark common shares for ***$650 million to $675 million***, consisting of a mix of $100 million in cash and Party B stock. Party B indicated that the proposal was of course subject to the completion of due diligence. For the sake of comparison, in the Merger with Ready Capital, Broadmark shareholders received Ready Capital stock with a collective trading value at ***$673.2 million*** on the date of the close.

86.    On December 1, 2022, the Broadmark Board met. At that meeting, J.P. Morgan provided financial analysis regarding the potential transactions with both Party B and Ready Capital. J.P. Morgan's comparative analysis was problematic, given that one of those entities, Ready Capital, as noted, was J.P. Morgan's client. There is no indication that J.P. Morgan owed similar loyalties to Party B. The Broadmark Board, however, again failed to consider, assess, or evaluate J.P. Morgan's conflicts and the related impact of those conflicts on J.P. Morgan's comparative financial analysis. Based on J.P. Morgan's analysis, the Broadmark Board apparently concluded that Party B's proposal was somehow inadequate and not in the best interests of Broadmark stockholders. Yet, the Broadmark Board also determined that it would review and consider any proposal from Ready Capital (which ultimately resulted in lower consideration for Broadmark shareholders). The Broadmark Board's favoritism was unjustified, inadequately informed, and fueled by the advice of a financial advisor harboring then-undisclosed conflicts of interest.

87.    On December 6, 2022, executives from Ready Capital and Broadmark met to discuss a merger. In that meeting, Ready Capital provided publicly available materials that broadly described a stock-for-stock merger between the two companies.

88.    Two days later, on December 8, 2022, the Broadmark Board determined to provide Ready Capital with non-public due diligence regarding Broadmark. The Proxy asserts that the Broadmark Board chose to pursue the Ready Capital proposal based largely on "***Ready Capital's proven track record of successfully acquiring and integrating public companies*** . . . ." The

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 35 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1   Broadmark Board made this determination, however, without actually diligencing or analyzing the

2   underlying non-public details of Ready Capital's troubled loan portfolio—especially the loans

3   acquired through the Mosaic Acquisition—despite Ready Capital's stock constituting the full

4   consideration for Broadmark stockholders in the proposed merger structure.

5       89.    Broadmark and Ready Capital entered into a mutual non-disclosure agreement on

6   December 16, 2022. Over the next several weeks, Ready Capital conducted non-public diligence

7   on Broadmark. There is no indication that, by that point, Broadmark evaluated any non-public

8   documentation regarding Ready Capital's troubled loan portfolio.

9       90.    On January 5, 2023, Ready Capital submitted an additional non-binding proposal,

10  contemplating a stock-for-stock merger with an exchange ratio of .4610 Ready Capital shares for

11  each Broadmark share.[9] After that date, Broadmark and Ready Capital continued to negotiate,

12  including regarding the exchange ratio and the number of Broadmark board members that would

13  be appointed to the post-Merger board of directors. Ready Capital proposed that two directors

14  would continue, Broadmark insisted that three continue post-Merger.

15      91.    Ready Capital's stock-for-stock merger proposal contemplated that the per share

16  exchange ratio would be calculated pursuant to the relative adjusted tangible book value for each

17  of the companies. Thus, if Ready Capital's adjusted tangible book value was overstated (as it was),

18  the exchange ratio would be materially skewed in favor of Ready Capital stockholders and against

19  Broadmark stockholders.

20      92.    Party A again contacted Broadmark on January 11, 2023 to reiterate its interest in

21  acquiring Broadmark. There is no indication that Broadmark responded.

22      93.    Still without conducting any reverse non-public due diligence on Ready Capital or

23  its loan portfolio, just one day after Party A had reiterated its interest in an acquisition, the

24  Broadmark Board met on January 12, 2023. On that date, while willfully blind as to (a) the true

25

26  ─────────────────────
    [9]   By way of reference, the Merger ultimately involved a .47233 exchange ratio.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                    - 36 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

existence of Ready Capital's deteriorating loan portfolio, and (b) the full extent of Party A's acquisition interest, the Broadmark Board inexplicably determined that Ready Capital's proposal was the best alternative available to Broadmark, authorized an exclusivity agreement with Ready Capital, and authorized Broadmark management to pursue and finalize a merger with Ready Capital on the then-current proposal. As a result, Broadmark and Ready Capital executed an exclusivity agreement on January 17, 2023. The exclusivity agreement would prohibit Broadmark from negotiating a transaction with either Party A or Party B or otherwise contacting to those entities for the next 30 days, with automatic 15-day extensions.

94.     With that, deal negotiations between Broadmark and Ready Capital—or any other interested party—were effectively over. The Broadmark Board had bound itself to pursuing a merger with Ready Capital, to the exclusion of all other potential merger or acquisition partners, without conducting any non-public due diligence on Ready Capital's troubled loan portfolio. A prudent board of directors would have conducted non-public diligence before agreeing to exclusivity on a multi-hundred-million dollar corporate merger.

95.     Later on January 17, 2023—the same day that Broadmark bound itself to exclusivity with Ready Capital—Party A yet again reached out to express interest in acquiring Broadmark. The Broadmark Board, however, could not respond in light of its exclusivity agreement with Ready Capital. Party A continued to reach out to Broadmark to express interest in an acquisition thereafter.

96.     Broadmark and Ready Capital finally conducted their first (and, according to the Proxy, their only) in-person mutual due diligence session on January 19, 2023. The parties then exchanged non-public due diligence from that date until the signing of the Merger Agreement on February 26, 2023. At Broadmark Board meetings on February 9 and February 16, 2023, the Broadmark management team discussed the due diligence findings with the Broadmark Board. The latter meeting included a review of due diligence findings from both PricewaterhouseCoopers LLP and Sidley Austin LLP. Through this multi-week mutual diligence process, Broadmark and

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 37 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    the Broadmark Board were or should have been provided and had access to the non-public material

2    alleged herein evidencing significant and material undisclosed problems underlying Ready

3    Capital's existing loan portfolio. But it was too late. The Broadmark Board had already walled

4    itself off from competing proposals and, from that point, deal momentum with Ready Capital

5    carried the merger process to conclusion.

6        97.    Party A remained interested. On February 17, 2023, **Party A delivered a proposal**

7    **for an all-cash acquisition of Broadmark for $700 million**. Party A's offer arrived with customary

8    support for its financing. As noted above, by way of comparison, the trading value of the Ready

9    Capital stock that Broadmark shareholders received on the close of the Merger amounted to a total

10   **$637.2 million**. And even that nominal value continued to plummet thereafter. Yet, the Broadmark

11   Board declined to pursue this higher offer from a viable third party bidder without assessing the

12   viability of Party A's bid or its supporting financing source.

13       98.    On February 26, 2023, the Ready Capital Board and the Broadmark Board

14   separately met and approved the Merger. At the Broadmark Board meeting, Broadmark received

15   financial analysis from J.P. Morgan, its conflicted financial advisor with significant ties to Ready

16   Capital. In a stock-for-stock merger, the exchange of confidential multi-year financial projections

17   *for both companies* is of paramount importance and, as a result, exchanging such projections is

18   now standard procedure. But it does not appear that Broadmark actually received Ready Capital's

19   internal, confidential multi-year projections before the Broadmark Board voted to approve the

20   Merger. The Broadmark Board also did not engage in substantive negotiations with Party A and

21   Party B, both of which were offering far higher consideration for a merger than what Broadmark

22   ultimately accepted from Ready Capital.

23       99.    J.P. Morgan provided a fairness opinion in support of the Merger, but its advice

24   was conflicted and uninformed. Ready Capital and Waterfall had repeatedly hired J.P. Morgan as

25   their go-to banker on multiple transactions. For those services over the past two years alone, J.P.

26   Morgan was paid $*17.5 million in fees by Waterfall* and *$2.3 million in fees by Ready Capital* (in

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 38 -

1   contrast to a mere $700,000 in fees from Broadmark over the same time period). More specifically,

2   Ready Capital repeatedly hired J.P. Morgan to serve as the sole structuring agent for billions of

3   dollars in commercial mortgage collateralized loan obligations ("CRE CLOs") including the

4   following J.P. Morgan-led transactions announced by Ready Capital: September 2, 2021, closing

5   a $652.5 million CRE CLO; April 1, 2021, closing a $629 million CRE CLO; November 15, 2021,

6   pricing a $927.2 million CRE CLO; November 15, 2021, pricing a $927.2 million CRE CLO;

7   March 10, 2022, closing a $1.135 billion CRE CLO; and June 12, 2023, pricing a $648.6 million

8   CRE CLO.

9        100.   On top of J.P. Morgan's divided loyalties, the Broadmark Board further

10  incentivized J.P. Morgan simply to complete a deal by agreeing to pay J.P. Morgan $13 million

11  for a merger, all of which was contingent upon issuing a fairness opinion and then closing an

12  acquisition. If J.P. Morgan had declared that the agreed-upon Merger ratio was unfair (as it was),

13  J.P. Morgan would have lost out on $13 million in immediate payments and far more in lost future

14  business from Ready Capital and Waterfall.

15       101.   Following approval by both boards of directors, Ready Capital and Broadmark

16  executed the Merger Agreement and publicly announced the Merger on February 27, 2023. In the

17  Proxy, the Broadmark Board repeatedly stated that each of its members "unanimously

18  recommends that the Broadmark stockholders vote '**FOR**' the Broadmark Merger Proposal. . . ."

19  (emphasis in original).

20       102.   The parties' negotiations around the exchange ratio had centered around both

21  companies' respective book value based on preliminary 2022 financial statements. Because Ready

22  Capital's adjusted tangible book value was materially overstated at the time, the exchange ratio

23  was heavily skewed in favor of Ready Capital—Broadmark shareholders received less shares than

24  they would have otherwise received from an exchange ratio based on Ready Capital's real

25  numbers. As a result, in addition to the post-merger decline in Ready Capital stock price,

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 39 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

Broadmark stockholders were harmed based on an artificially skewed exchange ratio that was influenced by Ready Capital's inaccurate adjusted book value (as described in detail herein).

## VI.  MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE PROXY

### A.  Description of the Offering Documents at Issue

103.    On February 27, 2023, Ready Capital and Broadmark announced the Merger. That same day, Ready Capital filed with the SEC on Form 425 an investor presentation in connection with the announcement of the Merger (the "Investor Presentation").[10] On March 27, 2023, Ready Capital filed with the SEC on Form S-4 a registration statement to register 62,229,623 shares of Ready Capital common stock in connection with the Merger, amended on April 19, 2023, and declared effective on April 20, 2023 (the "Registration Statement").[11] On April 20, 2023, Ready Capital filed with the SEC under Rule 424(B)(3) a "joint proxy statement/prospectus," dated April 20, 2023, and mailed the same to Ready Capital and Broadmark stockholders on April 21, 2023 (the "Joint Proxy/Prospectus").[12] The Joint Proxy/Prospectus incorporated and formed a part of the Registration Statement. The Joint Proxy/Prospectus incorporated by reference Ready Capital's Annual Report for fiscal year 2022, filed with the SEC on Form 10-K on February 28, 2022 ("Ready Capital 2022 Annual Report"); and "additional documents that [Ready Capital] may file with the SEC under Sections 13(a), 13(c), 14, or 15(d) of the Exchange Act after the date of this joint proxy statement/prospectus and prior to the dates of the Ready Capital special meeting [on

---

[10]    Materially false and misleading statements and omissions contained in the Investor Presentation were identified in the Complaint for Violations of the Federal Securities Laws filed on May 28, 2025 (the "Initial Complaint") in ¶48.

[11]    Materially false and misleading statements and omissions contained in the Registration Statement were identified in the Initial Complaint in ¶¶48-50.

[12]    Materially false and misleading statements and omissions contained in the Joint Proxy/Prospectus were identified in the Initial Complaint in ¶¶48-50.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 40 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

May 30, 2023].”[13] The Joint Proxy/Prospectus also constituted a joint proxy statement for both Broadmark and Ready Capital under the Exchange Act. On April 20, 2023, Broadmark filed the Joint Proxy/Prospectus with the SEC on Schedule 14A as a Proxy Statement pursuant to §14(a) of the Exchange Act (the “Broadmark Proxy”).[14] The Proxy, which the Broadmark Defendants jointly issued with the Joint Proxy/Prospectus, stated that it was “solicited on behalf of the Board of Directors [of Broadmark Realty Capital Inc.].” The Investor Presentation, Registration Statement, Joint Proxy/Prospectus, Ready Capital 2022 Annual Report, and the Broadmark Proxy are collectively referred to herein as the “Proxy.”

104.    The Proxy discouraged investors from looking elsewhere for information about Ready Capital, Broadmark, or the Merger and provided that “[n]o one has been authorized to provide you with information that is different from that contained in, or incorporated by reference into, this joint proxy statement/prospectus.”

105.    The Proxy was negligently prepared and, as a result, contained untrue statements of material fact and omitted to state other facts necessary to make the statements made therein not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

106.    This lawsuit alleges strict liability and negligence claims for omissions in the Proxy in order to effectuate the Merger between Ready Capital and Broadmark. To be clear, the claims asserted herein are based solely on strict liability and negligence, and are not based on any intentionally reckless or intentionally fraudulent conduct by or on behalf of the Defendants—*i.e.*, these claims do not allege, arise from, or sound in, fraud. Except where knowledge is alleged herein

---

[13]    Materially false and misleading statements and omissions contained in the Ready Capital 2022 Annual Report were identified in the Initial Complaint in ¶¶51-56.

[14]    Materially false and misleading statements and omissions contained in the Broadmark Proxy were identified in the Initial Complaint in ¶¶48-50.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                    - 41 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

as required under applicable standards, Lead Plaintiff specifically disclaims any allegation of fraud, fraud-based scienter, or recklessness in these non-fraud claims.

**B.    Defendants Made False and Misleading Statements and Omissions Concerning the Mosaic Loan Portfolio**

107.    As alleged above, by the time Defendants issued the Proxy, the Portland Project had already "faced catastrophic setbacks," including construction delays, missed sale targets, and funding shortfalls, which caused the Project to "cost far more to construct than originally contemplated" and materially diminished the value of Block 216. The Ready Capital Defendants received or should have received detailed information about the credit health of the Portland Project Loan on at least a quarterly basis—under both the terms of the Portland Project Loan Agreement and Ready Capital's standards for accounting for CECL—that showed that the Project was underwater. Mere weeks before the Merger closed, Ready Capital agreed, among other things, to loan an additional $47 million to complete the Project and to suspend interest payments in favor of permitting PIK interest to accrue on the loan and be recognized as income.

108.    Yet, the Proxy made no mention of the $460 million Portland Project Loan in its descriptions of the Mosaic Acquisition or of Ready Capital's loan portfolio. Rather, the Proxy represented—no less than six times—that Ready Capital's "loans generally range in original principal amounts ***up to $40 million***," including on the first page of the Proxy:

> Ready Capital is a multi-strategy real estate finance company that originates, acquires, finances and services small to medium balance commercial ("SBC") loans, Small Business Administration ("SBA") loans, residential mortgage loans, and to a lesser extent, mortgage backed securities ("MBS") collateralized primarily by SBC loans, or other real estate-related investments. ***Ready Capital's loans generally range in original principal amounts up to $40 million*** and are used by businesses to purchase real estate used in their operations or by investors seeking to acquire small multi-family, office, retail, mixed use or warehouse properties. Ready Capital's acquisition and origination platforms consist of three operating segments: SBC lending and acquisitions, SBA originations, acquisitions and servicing, and residential mortgage banking.

109.    The Proxy also contained numerous false and misleading statements regarding Ready Capital's acquisition track record. For example, Investor Presentation represented that

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
- 42 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

Ready Capital's "***proven acquisition track record***," including the Mosaic Acquisition, "***provides long-term upside to shareholders***." The Presentation went on to state that Ready Capital had a "***[p]roven acquisition and integration track record***," including the Mosaic Acquisition. It additionally represented that the Merger "provides additional scale, capital, and capabilities to continue the execution of Ready Capital's commercial real estate lending strategy ***that has been successfully built in large part due to successful acquisitions***." The Joint Proxy/Prospectus stated that "***the Broadmark Board considered that Ready Capital and [Waterfall] have a history of successfully integrating and scaling acquisitions***."

110. Further, the Proxy contained false and misleading statements concerning the carrying value and credit health of the loans acquired in the Mosaic Acquisition, which included the Portland Project. Ready Capital's 2022 Annual Report stated that the Mosaic Acquisition "include[d] a ***diverse portfolio*** of construction assets with ***attractive portfolio yields***." The Annual Report represented that Ready Capital's "acquired SBC loans," which included all loans acquired in the Mosaic Acquisition, had an "[unpaid principal balance] of $2.0 billion and ***a carrying value of $2.0 billion*** as of December 31, 2022." More specifically, the Annual Report represented that "***the Mosaic [Acquisition] added $763 million of assets***." The Annual Report went on to provide the following false and misleading breakdown of the assets Ready Capital acquired in the Mosaic Acquisition:

| (in thousands) | Preliminary Purchase Price Allocation | | Measurement Period Adjustments | | Updated Purchase Price Allocation |
|---|---|---|---|---|---|
| **Assets** | | | | | |
| Cash and cash equivalents | $ | 100,236 | $ | — | 100,236 |
| Restricted cash | | 23,330 | | — | 23,330 |
| Loans, net | | 432,779 | | (20,034) | 412,745 |
| Investments held to maturity | | 165,302 | | (3,735) | 161,567 |
| Real estate owned, held for sale | | 78,693 | | (33,945) | 44,748 |
| Other assets | | 25,761 | | (5,097) | 20,664 |
| **Total assets acquired** | $ | 826,101 | $ | (62,811) | $ 763,290 |
| **Liabilities** | | | | | |
| Secured borrowings | $ | 66,202 | $ | — | $ 66,202 |
| Loan participations sold | | 73,656 | | — | 73,656 |
| Due to third parties | | 24,634 | | (333) | 24,301 |
| Accounts payable and other accrued liabilities | | 38,182 | | 599 | 38,781 |
| **Total liabilities assumed** | $ | 202,674 | $ | 266 | $ 202,940 |
| **Net assets acquired** | $ | 623,427 | $ | (63,077) | $ 560,350 |
| Non-controlling interests | | (82,257) | | (267) | (82,524) |
| **Net assets acquired, net of non-controlling interests** | $ | 541,170 | $ | (63,344) | $ 477,826 |

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 43 -

111.    Additionally, the risk factors that were provided in the Proxy related to the Mosaic Acquisition—and, by extension, the Portland Project Loan—were themselves materially misleading because they provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described were already occurring. For example, the Ready Capital 2022 Annual Report represented that "[t]he ongoing COVID-19 pandemic … *may* continue to have an adverse impact on [Ready Capital's] performance, financial condition and results of operations." The Annual Report additionally represented that Ready Capital's "acquisitions . . . *could* adversely affect our financial condition or results of operations" and "*may* not have the anticipated positive results" because "we *may* discover unexpected costs, . . . delays, . . . or incurrence of other significant charges such as impairment of goodwill or other intangible assets and asset devaluation. With regard to the Mosaic Acquisition specifically, the Ready Capital 2022 Annual Report merely stated that "[c]onstruction budgets *may* be unrealistic or unforeseen variables *may* arise, prolonging the development and increasing the costs of the construction project, which *may* delay the borrower's ability to sell or rent the finished property, which would be the source of funds for repayment of the loan." The Annual Report further stated that "[n]et operating income of an income-producing property *can* be adversely affected by" "success of tenant businesses"; "property location"; "competition from comparable types of properties"; "changes in national, regional or local economic conditions and/or specific industry segments"; and "declines in regional or local real estate values." Yet these so-called "risk factors" failed to disclose that the Portland Project was already experiencing "catastrophic setbacks," including construction delays, cost overruns, and borrower financial distress at the time of the Merger.

112.    The bold, italicized statements in ¶¶108-111 were materially false and misleading when made because they failed to disclose the following adverse facts:

(a)    that the $565 million unpaid principal balance and $736 million carrying value of the loan portfolio acquired in the Mosaic Acquisition was almost entirely attributable to the $460 million Portland Project Loan;

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 44 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1          (b)      that, upon completion of the Mosaic Acquisition, the Portland Project Loan

2   was the single largest loan in Ready Capital's entire portfolio;

3          (c)      that the Portland Project had already experienced "catastrophic setbacks"

4   since its inception, including:

5          (i)      that construction was repeatedly delayed as the Project blew through

6   its substantial completion deadline for construction of the property in December 2022, and then

7   the substantial completion deadline was belatedly delayed by nine months to September 2023 in

8   May 2023;

9          (ii)      that the Project incurred over $110 million in cost overruns as the

10  construction budget ballooned from $597 million to $710 million by March 2023;

11          (iii)      that the Project experienced significant funding shortfalls as the

12  developer managed to raise only approximately $63 million of his proposed $120 million equity

13  raise by February 2022 and required Ready Capital to loan an additional $47 million in May 2023

14  in exchange for equity to ensure completion of the Project;

15          (iv)      that the Project missed sale targets for the Ritz-Carlton residential

16  condominium units, as fewer than seven of the Portland Project's 132 condominium units (*i.e.*,

17  less than 8%) were sold by the close of the Merger;

18          (v)      that the Project struggled to lease office space, as less than 28% of

19  the space was leased by the close of the Merger; and

20          (vi)      that the Project developer was experiencing substantial financial

21  difficulties, as contractors were not paid on time or at all in the months leading up to the Merger

22  and the Portland Project Loan was amended in May 2023 to extend the maturity date by 18 months

23  and suspend interest payments in favor of permitting PIK interest to accrue on the loan;

24          (d)      that the value of Block 216, the underlying property collateralizing the

25  Portland Project Loan, was materially diminished;

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 45 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

(e)     that, as Ready Capital later admitted, "[b]y March 2023"—approximately two months before the close of the Merger—"the Project had become out-of-balance, meaning that there were insufficient funds to allocated to [its] construction budget" due to "increased costs of construction and [Bowen's] failure to make the required equity contributions to properly fund the increased costs of completion for the Project";

(f)     that key figures contained in the regular and detailed reports concerning the financial health of the developer of the Portland Project and the status of the Portland Project, which were required to be provided to Ready Capital under the Portland Project Loan Agreement and in accordance with GAAP and Ready Capital's own standards for accounting for expected credit losses on its loans, evidenced undisclosed problems with the Portland Project; and

(g)     that, as a result of (c)-(f) above, the value of the loans acquired in the Mosaic Acquisition was materially overstated in the Proxy and had no basis in fact when made.

## C.    Defendants Made False and Misleading Statements Concerning Ready Capital's Loan Portfolio and Lending Strategy

113.    By the time Defendants issued the Proxy, soaring interest rates had already increased Ready Capital's borrowers' bridge loan costs. Furthermore, an oversupply of multi-family properties in markets Ready Capital heavily invested in had already materially diminished its borrowers' rent growth and thus their ability to cover increased borrowing costs. Property valuations had dropped, making it difficult for Ready Capital's borrowers to refinance their loans. As a result, Ready Capital's delinquency and default rates were set to exponentially increase once a large volume of its bridge loans came due for repayment or refinancing beginning in late 2023.

114.    The Proxy falsely represented that Ready Capital's approach to underwriting was "***value-driven***" and that Ready Capital was able to "***adapt to market conditions*** and deploy capital in our asset classes with the most attractive risk-adjusted returns." The Investor Presentation represented that the combined company would "focus on construction and bridge loans in ***top markets*** to ***strong sponsors***." The Investor Presentation further represented that Ready Capital's "[m]ultifaceted investment strategy generates ***attractive risk-adjusted yields and diversifies risk***."

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
- 46 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

Numerous slides in the Investor Presentation highlighted Ready Capital's "***conservative underwriting***" as a benefit to Broadmark investors. One slide represented that the "[c]ombined company will seek to optimize balance sheet through ***prudent and conservative leverage***." Another slide represented that the "***[c]ombined entity is focused on lending to high convection sectors***" and highlighted Ready Capital's and Broadmark's "alignment of credit mentality with a ***focus on conservative underwriting*** for [first] lien assets located in major markets."

115.    The Proxy additionally misrepresented Ready Capital's loan portfolio by stating that its "originated SBC loans" had an "[unpaid principal balance] of $7.6 billion and ***carrying value of $7.5 billion*** as of December 31, 2022." The Proxy further represented that all such loans were "***substantially . . . performing***." The Proxy represented that the Combined Company would "have a more ***diversified portfolio***" and "would bolster multifamily exposure and have a complementary geographic footprint ***without creating concentration issues***."

116.    Additionally, the risk factors that were provided in the Proxy related to the Mosaic Acquisition were themselves materially misleading because they provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described there were already occurring. For example, the Proxy stated that "[d]ifficult conditions in the mortgage, residential and commercial real estate markets, or in the financial markets and the economy generally . . . ***may*** cause us to experience market losses related to our holdings." The Proxy likewise represented that "deterioration of economic conditions in states for which [Ready Capital has] a significant concentration of borrowers ***could*** have a material and adverse effect on our business by . . . limiting the ability of customers to repay existing loans and impairing the value of our real estate collateral" which "***may*** result in defaults on a number of our assets within a short time period, which ***may*** reduce our net income and the value of our common stock and accordingly reduce our ability to pay dividends to our stockholders." Similarly, the Proxy represented that "[i]ncreases in interest rates ***could*** adversely affect . . . the value of our SBC loans and ABS assets and the availability of our target assets, and they ***could*** cause our interest expense to increase,

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 47 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

which **could** result in reduced earnings or losses and negatively affect our profitability as well as the cash available for distribution to our stockholders." Yet these so-called "risk factors" failed to disclose that a material number of Ready Capital's borrowers were already experiencing significant financial distress at the time of the Merger.

117.    The bold, italicized statements in ¶¶114-116 were materially false and misleading when made because they failed to disclose the following adverse facts:

(a)    that key figures contained in the quarterly and detailed reports concerning the credit health of Ready Capital's SBC bridge loans collateralized by multi-family properties, which were required to be provided to Ready Capital in accordance with GAAP and Ready Capital's own standards for accounting for expected credit losses on its loans, evidenced significant problems with Ready Capital's multi-family loans;

(b)    that Ready Capital and its borrowers faced a large volume of commercial real estate loans that were quickly becoming due for repayment in 2023-2025, but that a material portion of borrowers within Ready Capital's originated portfolio were experiencing significant financial distress;

(c)    that Ready Capital's borrowers on its loans collateralized by multi-family properties were unable to secure new financing with sufficient loan amounts; and

(d)    that Ready Capital imminently faced significant increases in delinquency and default and/or foreclosure rates for its loans collateralized by multi-family properties.

**D.    Defendants Made False and Misleading Statements Concerning Ready Capital's Compliance with GAAP and Its CECL Reserves**

118.    As alleged above, pursuant to GAAP and Ready Capital's own accounting standards for anticipated credit losses on its loans, the Ready Capital Defendants received or should have received detailed information about the credit health of Ready Capital's loan portfolio on at least a quarterly basis. As such, by the time Defendants issued the Proxy, the Ready Capital Defendants knew that the Portland Project Loan was collateral-dependent and the borrower was facing financial difficulties, and that Ready Capital's SBC bridge loans collateralized by multi-

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 48 -

family properties were severely troubled. The Proxy, however, did not disclose that Ready Capital was not actually taking allowances for loan losses on its SBC multi-family loans or on the Portland Project Loan in accordance with GAAP. In particular, Ready Capital failed to report updated estimates in its quarterly financial reports or, in the alternative, failed to make updated estimates in the first instance.

119.    The Proxy falsely represented that Ready Capital estimated and reported CECL for its loan portfolio in accordance with GAAP. More specifically, the Proxy falsely represented that Ready Capital estimated and reported an "allowance for credit losses" to account for "losses on loans and lending commitments" pursuant to ASC 326 and ASU 2016-13:

> ***The allowance for credit losses consists of the allowance for losses on loans and lending commitments accounted for at amortized cost. Such loans and lending commitments are reviewed quarterly considering credit quality indicators, including probable and historical losses, collateral values, LTV ratio and economic conditions***. The allowance for credit losses increases through provisions charged to earnings and reduced by charge-offs, net of recoveries.

> ASC 326, Financial Instruments-Credit Losses ("ASC 326"), became effective for us on January 1, 2020 and replaced the "incurred loss" methodology previously required by GAAP with an expected loss model known as the Current Expected Credit Loss ("CECL") model. CECL amends the previous credit loss model to reflect a reporting entity's current estimate of all expected credit losses, not only based on historical experience and current conditions, but also by including reasonable and supportable forecasts incorporating forward-looking information. The measurement of expected credit losses under CECL is applicable to financial assets measured at amortized cost. The allowance for credit losses required under ASC 326 is deducted from the respective loans' amortized cost basis on our consolidated balance sheets. The related Accounting Standards Update No. 2016-13 ("ASU 2016-13") also requires a cumulative-effect adjustment to retained earnings as of the beginning of the reporting period of adoption.

> In connection with ASU 2016-13, we implemented new processes including the utilization of loan loss forecasting models, updates to our reserve policy documentation, changes to internal reporting processes and related internal controls.

120.    The Proxy stated that Ready Capital estimated and reported CECL for its loan portfolio "quarterly," based on estimates "at the individual loan level" and various "key loan-specific inputs" and "a macroeconomic forecast," stating in pertinent part as follows:

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 49 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

*We implemented loan loss forecasting models for estimating expected life-time credit losses, at the individual loan level, for its loan portfolio. The CECL forecasting methods used by the Company include (i) a probability of default and loss given default method using underlying third-party CMBS/CRE loan database with historical loan losses and (ii) probability weighted expected cash flow method, depending on the type of loan and the availability of relevant historical market loan loss data.*

\*        \*        \*

*We estimate the CECL expected credit losses for our loan portfolio at the individual loan level. Significant inputs to our forecasting methods include (i) key loan-specific inputs such as LTV, vintage year, loan-term, underlying property type, occupancy, geographic location, and others, and (ii) a macro-economic forecast.*

121.    In addition, the Proxy stated that, where loans become collateral-dependent, Ready Capital estimated and reported CECL based on additional "relevant loan-specific qualitative factors," stating in pertinent part as follows:

*In certain instances, we consider relevant loan-specific qualitative factors to certain loans to estimate its CECL expected credit losses*. We consider loan investments that are both (i) expected to be substantially repaid through the operation or sale of the underlying collateral, and (ii) for which the borrower is experiencing financial difficulty, to be "collateral-dependent" loans. *For such loans that we determine that foreclosure of the collateral is probable, we measure the expected losses based on the difference between the fair value of the collateral (less costs to sell the asset if repayment is expected through the sale of the collateral) and the amortized cost basis of the loan as of the measurement date*.

122.    The Proxy further falsely reported Ready Capital's CECL and allowances for loan losses for fiscal year 2022. In particular, the Proxy falsely reported *$49.9 million* in allowances for loan losses on Ready Capital's bridge loans; *$17.3 million* in allowances for loan losses on Ready Capital's construction loans; and *$90.5 million* in total allowances for loan losses on Ready Capital's loan portfolio:

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 50 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

*Allowance for credit losses*

The allowance for credit losses consists of the allowance for losses on loans and lending commitments accounted for at amortized cost. Such loans and lending commitments are reviewed quarterly considering credit quality indicators, including probable and historical losses, collateral values, LTV ratios, and economic conditions.

The table below presents the allowance for loan losses by loan product and impairment methodology.

| (in thousands) | Bridge | Fixed Rate | Construction | SBA - 7(a) | Residential | Other | Total Allowance for loan losses |
|---|---|---|---|---|---|---|---|
| December 31, 2022 | | | | | | | |
| General | $ 42,979 | $ 2,397 | $ 325 | $ 10,801 | $ — | $ 1,208 | $ 57,710 |
| Specific | 6,926 | 4,134 | 1,037 | 3,498 | — | 1,242 | 16,837 |
| PCD | — | — | 15,972 | — | — | | 15,972 |
| Ending balance | $ 49,905 | $ 6,531 | $ 17,334 | $ 14,299 | $ — | $ 2,450 | $ 90,519 |

123.    Additionally, the risk factors that were provided in the Proxy were themselves materially misleading with respect to Ready Capital's CECL reserves. For example, the Proxy stated that Ready Capital's "***provision for loan losses is evaluated on a quarterly basis . . . based on a number of factors, including (1) whether cash from operations is sufficient to cover the debt service requirements currently and into the future, (2) the ability of the borrower to refinance the loan and (3) the property's liquidation value***." The "risk factor" went on to represent that:

> ***Under the CECL model, we are required to present certain financial assets carried at amortized cost, such as loans held for investment, at the net amount expected to be collected. The measurement of expected credit losses is to be based on past events including historical experience, current conditions, and reasonable and supportable forecasts that affect the collectability of the reported amount. This measurement will take place at the time the financial asset is first added to the balance sheet and updated quarterly thereafter***.

This so-called "risk factor" failed to disclose that a material number of Ready Capital's borrowers, including both its multi-family borrowers and the Portland Project borrowers, were already experiencing significant financial distress, and that Ready Capital was not actually taking allowances for loan losses on these loans in accordance with GAAP. Rather, Ready Capital failed to report updated estimates in its quarterly financial reports or, in the alternative, failed to make updated estimates in the first instance.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 51 -

124.    The bold, italicized statements in ¶¶119-123 were materially false and misleading when made because they failed to disclose the following adverse facts:

(a)    that key figures contained in the quarterly and detailed reports concerning the credit health of Ready Capital's Portland Project Loan and SBC bridge loans collateralized by multi-family properties, which were required to be provided to Ready Capital in accordance with GAAP and Ready Capital's own standards for accounting for expected credit losses on its loans, evidenced undisclosed problems with the Portland Project Loan and Ready Capital's multi-family loans;

(b)    that the detail information Ready Capital was required to receive on at least a quarterly basis, pursuant to GAAP and Ready Capital's accounting standards for expected credit losses on its loan portfolio, indicated that Ready Capital's expected credit loss estimates for its SBC bridge loans collateralized by multi-family properties and the Portland Project Loan necessitated revision in light of the material deterioration of the value of the underlying collateral and/or borrower financial difficulties;

(c)    that Ready Capital's financial reporting did not include the actual anticipated credit losses on its Portland Project Loan or SBC bridge loans collateralized by multi-family properties under the CECL model in accordance with GAAP and Ready Capital's own accounting standards, including:

(i)    that Ready Capital's financial reporting did not include actual estimates of expected credit loss for its loans upon the origination or acquisition of each loan, and thereafter on at least a quarter basis;

(ii)    that Ready Capital's financial reporting did not include actual estimates of expected credit loss, at the individual loan level for its loan portfolio using loan loss forecasting models based on historical loan loss data;

(iii)    that Ready Capital's financial reporting did not include actual estimates of expected credit loss based on various credit quality indicators, including a

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 52 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    macroeconomic forecast, including unemployment rates, interest rates, commercial real estate

2    prices, among others; and key loan-specific inputs, such loan-to-value, vintage year, loan-term,

3    underlying property type and value, occupancy, geographic location, and others; and

4                    (iv)    that Ready Capital's financial reporting did not include actual

5    revised estimates of expected credit loss based on additional relevant loan-specific qualitative

6    factors for collateral-dependent loans; and

7                    (d)    that, as a result of (a)-(c) above, Ready Capital's expected credit losses and

8    CECL reserves were materially understated in the Proxy at the time of the Merger and had no basis

9    in fact.

10        **E.    Defendants Made False and Misleading Statements Concerning
          Ready Capital's Historical and Projected Financial Results**

11

12        125.    By the time Defendants issued the Proxy, Ready Capital's Distributable Earnings

13    and dividend were already unsustainable as the company's loan portfolio was already severely

14    weakened by the rapidly deteriorating Portland Project Loan and its SBC loans collateralized by

15    multi-family properties.

16        126.    Yet, the Investor Presentation falsely represented that a "Benefit[] to Broadmark

17    Stakeholders" from the Merger included a presently-existing "***Benefit from a higher and more***

18    ***consistent dividend***." In addition, the Joint Proxy/Prospectus highlighted the "***Potential for***

19    ***Increased Multiples and Dividend***" as a result of the Merger and represented that the purported

20    "economic and operational leverage" of the combined company created a "***higher and more***

21    ***consistent dividend***" and an "***improved price to tangible book value and earnings multiples***."

22        127.    The Joint Proxy/Prospectus likewise stated: "***The Broadmark Board also***

23    ***considered the fact that, given the stock-for-stock structure of the transaction, Broadmark's***

24    ***stockholders would be able to participate in the long-term upside of the Combined Company***

25    ***through their ownership***." The Investor Presentation additionally represented that Ready Capital's

26    ***book value per share was $15.20*** and its ***dividend yield was 12.8%*** as of December 31, 2022.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
                                                - 53 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

128.     Additionally, the Proxy falsely and misleadingly reported Ready Capital's financial results for fiscal year 2022. In particular, Ready Capital's 2022 Annual Report falsely represented that Ready Capital earned *$235.9 million* in net interest income after provision for loan losses, *$168.9 million* in net income from its SBC loan operating segment, and *$232.8 million* in net income before tax. These false and misleading figures are reproduced below, in context, in Ready Capital's income statement:

### *Income Statement Analysis and Metrics*

| (in thousands) | For the Year Ended December 31, | | |
| --- | --- | --- | --- |
| | 2022 | 2021 | 2020 |
| **Interest income** | | | |
| SBC lending and acquisitions | $ 565,128 | $ 278,455 | $ 211,525 |
| Small business lending | 98,089 | 116,741 | 39,430 |
| Residential mortgage banking | 7,953 | 8,300 | 7,681 |
| **Total interest income** | $ 671,170 | $ 403,496 | $ 258,636 |
| **Interest expense** | | | |
| SBC lending and acquisitions | (364,343) | (164,797) | (138,444) |
| Small business lending | (27,382) | (36,872) | (27,472) |
| Residential mortgage banking | (8,414) | (9,193) | (8,294) |
| Corporate - other | (635) | (2,699) | (1,271) |
| **Total interest expense** | $ (400,774) | $ (213,561) | $ (175,481) |
| **Net interest income before provision for loan losses** | $ 270,396 | $ 189,935 | $ 83,155 |
| **Provision for loan losses** | | | |
| SBC lending and acquisitions | (31,471) | (7,387) | (26,932) |
| Small business lending | (2,971) | (662) | (7,794) |
| **Total provision for loan losses** | $ (34,442) | $ (8,049) | $ (34,726) |
| **Net interest income after provision for loan losses** | $ 235,954 | $ 181,886 | $ 48,429 |
| **Non-interest income** | | | |
| SBC lending and acquisitions | 90,923 | 67,301 | 16,455 |
| Small business lending | 63,197 | 65,603 | 77,235 |
| Residential mortgage banking | 104,571 | 186,763 | 240,878 |
| Corporate - other | 830 | 85 | 189 |
| **Total non-interest income** | $ 259,521 | $ 319,752 | $ 334,757 |
| **Non-interest expense** | | | |
| SBC lending and acquisitions | (91,270) | (63,526) | (50,266) |
| Small business lending | (64,390) | (64,054) | (55,047) |
| Residential mortgage banking | (46,239) | (128,972) | (186,146) |
| Corporate - other | (60,680) | (56,029) | (37,274) |
| **Total non-interest expense** | $ (262,579) | $ (312,581) | $ (328,733) |
| **Net income (loss) before provision for income taxes** | | | |
| SBC lending and acquisitions | 168,967 | 110,046 | 12,338 |
| Small business lending | 66,543 | 80,756 | 26,352 |
| Residential mortgage banking | 57,871 | 56,898 | 54,119 |
| Corporate - other | (60,485) | (58,643) | (38,356) |
| **Total net income before provision for income taxes** | $ 232,896 | $ 189,057 | $ 54,453 |

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 54 -

1       129.    Ready Capital's 2022 Annual Report further falsely represented Ready Capital's

2 Distributable Earnings Based on false and misleading statements regarding Ready Capital's net

3 income ($203.1 million) and impact of CECL on accrual loans ($33.0 million), Ready Capital

4 represented that the company earned *$218.7 million in Distributable Earnings* and *$1.87 in*

5 *Distributable Earnings per share* for fiscal year 2022:

| (in thousands) | Year Ended December 31, | | | | | |
|---|---|---|---|---|---|---|
| | | 2022 | | 2021 | | 2020 |
| **Net Income** | $ | 203,163 | $ | 159,974 | $ | 46,069 |
| Reconciling items: | | | | | | |
|   Unrealized (gain) loss on MSR | | (46,065) | | (16,923) | | 37,258 |
|   Impact of CECL on accrual loans | | 33,055 | | 3,522 | | 19,527 |
|   Non-recurring REO impairment (recovery) | | 2,267 | | (941) | | 3,406 |
|   Non-cash compensation | | 4,769 | | 3,833 | | 3,833 |
|   Merger transaction costs and other non-recurring expenses | | 15,233 | | 16,922 | | 710 |
|   Unrealized loss on MBS | | — | | — | | 185 |
|   Unrealized loss on de-designated cash flow hedges | | — | | — | | 2,118 |
| **Total reconciling items** | $ | 9,259 | $ | 6,413 | $ | 67,037 |
| Income tax adjustments | | 6,310 | | 1,649 | | (11,727) |
| **Distributable earnings** | $ | 218,732 | $ | 168,036 | $ | 101,379 |
| Less: Distributable earnings attributable to non-controlling interests | | 8,884 | | 2,324 | | 2,351 |
| Less: Income attributable to participating shares | | 9,561 | | 9,093 | | 1,392 |
| **Distributable earnings attributable to common stockholders** | $ | 200,287 | $ | 156,619 | $ | 97,636 |
| **Distributable earnings per common share - basic** | $ | 1.87 | $ | 2.29 | $ | 1.82 |
| **Distributable earnings per common share - diluted** | $ | 1.79 | $ | 2.29 | $ | 1.82 |

20       130.    Ready Capital's 2022 Annual Report additionally falsely represented Ready

21 Capital's Distributable Earnings per share and book value per share. In addition to repeating false

22 and misleading statements concerning Ready Capital's net income, Distributable Earnings, and

23 Distributable Earnings per share for fiscal year 2022, the 2022 Annual Report further falsely stated

24 that Ready Capital's book value per share for fourth quarter and fiscal year 2022 was $15.20:

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
    - 55 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

| ($ in thousands, except share data) | Three Months Ended December 31, 2022 | Year Ended December 31, 2022 | 2021 | 2020 |
|---|---|---|---|---|
| Net Income | $ 13,682 | $ 203,163 | $ 159,974 | $ 46,069 |
| Earnings per common share - basic | $ 0.08 | $ 1.73 | $ 2.17 | $ 0.81 |
| Earnings per common share - diluted | $ 0.09 | $ 1.66 | $ 2.17 | $ 0.81 |
| Distributable earnings | $ 51,581 | $ 218,732 | $ 168,036 | $ 101,379 |
| Distributable earnings per common share - basic | $ 0.42 | $ 1.87 | $ 2.29 | $ 1.82 |
| Distributable earnings per common share - diluted | $ 0.40 | $ 1.79 | $ 2.29 | $ 1.82 |
| Dividends declared per common share | $ 0.40 | $ 1.66 | $ 1.66 | $ 1.30 |
| Dividend yield | 14.4 % | 12.3 % | 11.2 % | 10.4 % |
| Return on equity | 2.7 % | 11.9 % | 14.6 % | 5.6 % |
| Distributable return on equity | 11.4 % | 12.8 % | 15.4 % | 12.3 % |
| Book value per common share | $ 15.20 | $ 15.20 | $ 15.36 | $ 15.00 |
| Adjusted net book value per common share | $ 15.20 | $ 15.20 | $ 15.35 | $ 14.98 |

131. Based on Ready Capital's false and misleading statements of its financial results as of December 31, 2022, the Proxy set forth financial projections relating to Ready Capital's profits, dividend, and assets, stating in pertinent part as follows:

| | 2023E | 2024E | 2025E | 2026E |
|---|---|---|---|---|
| Distributable Earnings Per Share[1] | $ 1.60 | $ 1.60 | $ 1.60 | $ 1.60 |
| Dividends Per Share | $ 1.60 | $ 1.60 | $ 1.60 | $ 1.60 |
| Book Value Per Share | $15.15 | $15.10 | $15.05 | $14.99 |

(Footnote omitted.)

132. Regarding those financial projections, the Proxy stated that such information, "*in the view of Ready Capital's management, was prepared on a reasonable basis, reflects the best currently available estimates and judgments, and presents, to the best of management's knowledge and belief, the expected course of action and the expected future financial performance of Ready Capital.*" Those statements were false when made because Ready Capital's financial projections, at the time, were not in fact "prepared on a reasonable basis" and did not in fact "reflect[] the best currently available estimates and judgments" of Ready Capital management, in light of the multitude of existing issues described herein.

133. The Proxy further stated that "the Merger Agreement permits Ready Capital to continue to pay regular quarterly dividends with respect to the Ready Capital Common Stock *consistent with past practice at a rate not to exceed $0.40 per share*. . . . *Following the Closing,*

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)
- 56 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    *Ready Capital expects that the Combined Company will continue Ready Capital's current*

2    *dividend policy for stockholders*." As a result, the Proxy also falsely stated that the Merger was

3    the "***best available alternative***" for Broadmark, stating that the Broadmark Board determined "that

4    the Merger represented ***the most attractive alternative for Broadmark to pursue***, including

5    relative to remaining an independent public company, a sale of Broadmark for cash, add-on

6    acquisitions and other potential alternatives."

7        134.    Additionally, the risk factors provided in the Proxy were themselves materially

8    misleading with respect to Ready Capital's financial results and projections because they provided

9    generic statements of potential or contingent risk, yet failed to disclose that the potential future

10    adverse impacts described there were already occurring. For example, the Proxy represented that

11    "[t]he market value of the shares of Ready Capital Common Stock received by Broadmark

12    stockholders ***will fluctuate*** based on the trading price of Ready Capital Common Stock"; that

13    "[f]ollowing the Merger, the Combined Company ***may*** not pay dividends at or above the rate

14    currently paid by Ready Capital or Broadmark," including because "the Combined Company ***may***

15    not have enough cash to pay such dividends due to changes in its cash requirements, capital

16    spending plans, cash flow or financial position"; and that Ready Capital's historical financial

17    results disclosed in the Proxy "***is not necessarily*** indicative . . . of the future operating results or

18    financial position of the Combined Company following the Merger" and "does not reflect future

19    events that ***may*** occur after the Merger." These so-called "risk factors" failed to disclose, among

20    other things, that Ready Capital's financial results and projections were materially overstated as

21    Ready Capital had concurrently failed to properly and timely account for CECL reserves and loan

22    losses, particularly with respect to the Portland Project Loan and its SBC loans collateralized by

23    multi-family properties.

24        135.    The bold, italicized statements in ¶¶126-134 were materially false and misleading

25    when made because they failed to disclose the following adverse facts:

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
- 57 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

(a)    that, as a result of ¶¶112, 117, the carrying value of Ready Capital's SBC loans collateralized by multi-family properties and the Portland Project Loan was materially overstated in the Proxy and had no basis in fact;

(b)    that, as a result of ¶124 and (a) above, Ready Capital's historical net income as of December 31, 2022 and March 31, 2023 was materially overstated in the Proxy and had no basis in fact;

(c)    that, as a result of (a)-(b) above, Ready Capital's historical book value per share as of December 31, 2022 was materially overstated in the Proxy and had no basis in fact;

(d)    that, as a result of (a)-(c) above, Ready Capital's historical Distributable Earnings and dividend policy of $0.40 per quarter as of December 31, 2022 was already unsustainable; and

(e)    that, as a result of (a)-(d) above, the five-year projections regarding Ready Capital's Distributable Earnings per share, dividends per share, and book value per share in the Proxy had no basis in fact.

### F.    Defendants' Additional Disclosure Violations

136.    Item 11 of Form S-1 required the Registration Statement to furnish the information called for under Item 303 of Regulation S-K (17 C.F.R. §229.303), Management's Discussion and Analysis of Financial Condition and Results of Operations ("MD&A"). As set forth in the December 29, 2003 interpretative release to Item 303 of Regulation S-K issued by the SEC (the "2003 Interpretive Release"), the purpose of MD&A is to provide investors with information necessary to an understanding of a company's results of operations, including the identification and disclosure of known trends, events, demands, commitments and uncertainties that are reasonably likely to have a material effect on a company's operating performance.

137.    The instructions to Item 303(a) of Regulation S-K required that the Registration Statement provide disclosure about and "focus specifically" on material events and uncertainties that would cause Ready Capital's reported financial information not to be necessarily indicative

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 58 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

of future operating results, including "matters that would have an impact on future operations and [matters that] have not had an impact in the past" stating, in pertinent part, as follows:

> The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition. This would include descriptions and amounts of (A) matters that would have an impact on future operations and have not had an impact in the past, and (B) matters that have had an impact on reported operations and are not expected to have an impact upon future operations.

138.    The 2003 Interpretive Release also provides that the Registration Statement was required to provide disclosure about known demands, events or uncertainties, except for those that management determined: (i) were not reasonably likely to occur; or (ii) would not have a material effect on Ready Capital's operating results. The 2003 Interpretive Release states, in pertinent part, as follows:

> As we have explained in prior guidance, disclosure of a trend, demand, commitment, event or uncertainty is required unless a company is able to conclude either that it is not reasonably likely that the trend, uncertainty or other event will occur or come to fruition, or that a material effect on the company's liquidity, capital resources or results of operations is not reasonably likely to occur.

139.    As alleged in detail above, the facts listed in ¶¶112, 117, 124, 135 were not disclosed in the Joint Proxy, and thus the Registration Statement, as required under Item 303. Similarly, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503, requires, in the "Risk Factor" section of registration statements and prospectuses, "a discussion of the most significant factors that make the offering speculative or risky" and requires each risk factor to "adequately describe[] the risk." The failure of the Registration Statement to disclose the issues described above violated Item 503 because these specific risks were not adequately disclosed, or disclosed at all, even though they were some of the most significant factors that made an investment in shares of Ready Capital common stock speculative or risky.

140.    As alleged above, although the Proxy included generic warnings that are applicable to any company with a dividend in the commercial mortgage sector, these conditional and

AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 59 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

speculative representations were themselves misleading because they failed to disclose material adverse facts that already existed or were reasonably likely to occur and the specific risks and the magnitude of the risks that resulted in the massive losses described herein. The boilerplate warnings were insufficient to negate the misleading impression created by the misrepresentations in the Proxy alleged herein. The failure of the Proxy to disclose that a material portion of borrowers within Ready Capital's originated portfolio were experiencing significant financial distress, and that the Portland Project had suffered catastrophic setbacks, violated Item 303, because these undisclosed facts were known to Defendants and would (and did) have an unfavorable impact on Ready Capital's CECL reserves, Distributable Earnings, and book value. This failure also violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were some of the most significant facts that made an investment in Ready Capital stock speculative or risky.

## VII.    READY CAPITAL'S STOCK PRICE DETERIORATED AFTER THE CLOSE OF THE MERGER

141.    Following the close of the Merger, Ready Capital began a downward descent that culminated in a massive dividend cut in its first fiscal quarter of 2025 due to the catastrophic deterioration of the Portland Project loan and its loans collateralized by multi-family properties. Ready Capital's legacy SBC loan portfolio—primarily collateralized by multi-family properties— began showing significant signs of weakness. For example, Ready Capital engaged in hundreds of millions of dollars' worth of loan modifications that represented a significant departure from Ready Capital's historical norms. Additionally, Ready Capital's efforts to keep the Portland Project on life support proved entirely ineffectual as its hotel, condominiums, and office space unilaterally failed to attract interested consumers, buyers, and renters. The Portland Project loan turned upside down: appraisals valued the Project at less than half of the remaining unpaid principal balance on the Loan. Though Ready Capital sought to conceal its portfolio's near-fatal decay from investors through new accounting methods and assurances that "the worst was over," these issues ultimately came to a head. Ready Capital reported an almost $300 million increase in

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 60 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

its CECL reserves and cut its dividend by half to an all-time historical low, resulting in a precipitous decline in its stock price. Ready Capital's stock price has since continued to drop, falling to lows of less than $3 per share, as illustrated by the following chart:



**A.** **Late 2023 through July 2024: Ready Capital Continues to Experience Problems and its Stock Declines, but the Market is Unaware of the Full Extent of the Problems**

142.    Ready Capital's stock closed at $10.11 at the end of trading on May 31, 2023 the day the Merger closed. In the year following the Merger, problems continued to brew under Ready Capital's surface. Ready Capital's weakening performance had a negative impact on its stock price as analysts grew suspicious, but Ready Capital continued to obscure the full truth behind the troubled Portland Project, as well as the full impact of Ready Capital's over-exposure to loans backed by multi-family properties.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 61 -

143.     In particular, Ready Capital did not disclose in the year following the Merger that the Portland Project continued to deteriorate. Though construction on the Project was finally completed after repeated delays in the fall of 2023, the Project's hotel, residential condominium, and office space sales all grossly underperformed. The hotel fell far short of its competitors: in 2024, its average revenue per available room ("RevPar") was $188, compared to $299, the average RevPar for comparable luxury hotels in Portland and other surrounding West Coast cities. The Portland Ritz-Carlton's RevPar was driven down in large part by low occupancy rates: while comparable hotels in Portland and Seattle maintained occupancy rates between 55% and 70%, the Portland Ritz-Carlton maintained only a 32% occupancy rate in 2023, and a 41% occupancy rate in 2024. As a result, competitors that charged even just half of the Portland Ritz-Carlton's average room rate earned comparatively more in revenue. The Portland Project's condominium sales continued to perform poorly. As of November 2024, Bowen had sold just 8% of the 132 condominium units. As alleged above, by December 2022, there were 32 pending transactions; however, as of November 2023, only 7 transactions had actually been completed, two of which were insider sales of penthouse units to Bowen and another developer behind the Portland Project. Additionally, Bowen struggled to fill office spaces: as of November 2024, just 28% of the office space was leased by five tenants. Three of six floors were entirely vacant, largely because the Project's average office lease rate of $41.29 per square foot far outpaced comparable office rent prices at just $34.84 per square foot.

144.     Following the completion of construction on Block 216, Ready Capital sought an appraisal of at least the office portion of Block 216, which valued the office portion of Block 216 at a mere $27.5 million as of December 1, 2023.

145.     On February 28, 2024, Ready Capital filed its Annual Report for fiscal year 2023 on Form 10-K with the SEC. Buried in the company's 168-page report in its consolidated statement of cash flows, a single line entry under "non-cash investments" revealed that, unbeknownst to investors, the Portland Project Loan had quietly accrued over *$42 million in PIK interest* in 2023.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 62 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    Even as the problems facing the Project continued to snowball, investors were, for the most part,

2    left in the dark.

3        146.    During this same time, Ready Capital also modified hundreds of millions of dollars

4    in loans collateralized by multi-family properties and began reporting PIK interest on these loans

5    as income. Ready Capital's over-exposure to the multi-family market caused its financial

6    performance following the close of the Merger to deteriorate—but the company did not disclose

7    the true extent to which its loan portfolio was uniquely exposed to these negative trends compared

8    to the rest of the industry. As alleged above, Ready Capital's record originations of loans

9    collateralized by multi-family properties located in Texas and California in 2021 and 2022 created

10   a loan portfolio highly susceptible to rising interest rates in 2023 and 2024. By September 30,

11   2023, 61% of Ready Capital's unpaid principal loan balance was concentrated in loans

12   collateralized by multi-family properties primarily located in Texas and California, and the

13   majority of which faced maturity dates in 2024 and 2025. Despite this, Ready Capital continued

14   to report financial results that did not raise immediate alarm.

15       147.    In early 2024, Ready Capital began publicly discussing modifications to its multi-

16   family loans, primarily in the form of extensions, but otherwise did not disclose the true impact

17   the current economic conditions were having on its portfolio.[15] Analysts had questions. On a Ready

18   Capital earnings call on February 28, 2024, analysts questioned Ready Capital's interest income

19   reporting and the extent to which it included PIK interest. An analyst asked: "Can you talk about

20   the quality of interest income? How much [was] cash interest received? How much [was] accrued

21   or maybe some type of PIK income, if there's any?" Ready Capital deflected the issue: "There is

22   a small segment of loans that are accruing . . . but it is a very small portion of the book." Ready

23   Capital's stock closed at $8.49 on February 28, 2024.

24

25

26

[15]   Ready Capital reported in an earnings call on February 28, 2024 concerning its fourth quarter
of fiscal year 2023 earnings results that it had liquidated 23% of Broadmark's portfolio since the
Merger in the previous quarter. Ready Capital, February 28, 2024 earnings call transcript at 4.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                - 63 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

B.    <u>August 2024 to September 2024</u>: Ready Capital Discloses Pressure on Its Multi-Family Loans and Announces a Dividend Cut

148.    During an earnings call on August 8, 2024 to discuss its second quarter of fiscal year 2024 results, Ready Capital disclosed that it was experiencing severe pressure on its multi-family loans. Specifically, Ready Capital revealed that it had made hundreds of millions of dollars' worth of modifications to loans in its portfolio. Capasse, Ready Capital's CEO, reported that 60-day plus delinquencies within Ready Capital's originated portfolio had improved sequentially to 5.2% from 7.9% in the prior quarter—but this improvement was only due to Ready Capital's loan modification initiatives: "60-day-plus delinquencies improved 270 basis points to 5.2% as of June 30. . . . The quarterly improvement in credit metrics was a result of two active asset management strategies on our part. Through June 30, we have modified 25 loans totaling *$801 million* in our originated CRE bridge portfolio *with 82% completed in the second quarter*." In response to an analyst's question inquiring about "how delinquency rates . . . are calculated, because we noticed some differences between the reported rates and the implied rates based on interest payments received in the remittance reports," Ahlborn similarly stated that the "majority" of Ready Capital's improved delinquency rates was "***driven by modifications*** and natural improvement in credit."

149.    Ready Capital and its executives also presented an illusory picture of Ready Capital's earnings from interest income on the August 8, 2024 earnings call. Ahlborn stated that growth in Ready Capital's interest income drove that quarter's increased revenue: "[R]evenue from net interest income, servicing income, and gain on sale increased $6.2 million or 9% quarter-over-quarter to $73.7 million. The change was driven by $2.4 million of growth in net interest income . . . ." But in its earnings report filed the following day, on August 9, 2024, Ready Capital reported that a significant portion of its interest income for the quarter had been PIK. In other words, ***Ready Capital had changed its accounting policies to recognize PIK interest as interest income***, inferably in order to prop up its primary source of income. Ready Capital reported that in the six months ending June 30, 2024, approximately ***$28.5 million of Ready Capital's interest income had been paid-in-kind***. Ready Capital's stock closed at $8.73 on August 9, 2024.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 64 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

150.     Ready Capital's financial engineering to mask loan losses and prop up its income caused analysts and the financial media to raise significant alarm. On September 12, 2024, *Barron's* published an article by senior financial investigative senior writer Bill Alpert about Ready Capital entitled, "***This REIT With a 15% Yield May Have a Dividend Problem. Here's Why***."[16] The Barron's article confirmed that Ready Capital's PIK interest in the second quarter was $14.7 million, and that ***nearly all of Ready Capital's reported $16.6 million in Distributable Earnings was comprised of non-cash income that had accrued from distressed borrowers***:

> In July, the Blackstone REIT cut its dividend by 24%.

> Things are worse at Ready Capital. As a mortgage REIT, it makes small loans to owners of modestly priced multifamily apartment buildings. The loans haven't done well lately.

> *                *                *

> [W]hen [Ready Capital] reported the June quarter's results last month, it said it was positioned to improve earnings. After selling underperforming loans, credit measures had improved across the company's portfolio, said chief executive Thomas Capasse on the quarter's conference call.

> "The worst is certainly behind us on the multifamily side," said Chief Financial Officer Andrew Ahlborn.

> [B]y the REIT measure of distributable earnings, RC [Ready Capital] said it had cleared $37 million, or 19 cents a share.

> Two days after announcing the encouraging results, RC filed the quarter's 10-Q report. It had a detail that RC had never disclosed before. A big chunk of RC's interest income had been "paid in kind." That means that instead of collecting cash interest from a borrower, Ready Capital increased the borrower's debt by the interest due. Effectively, it was counting an IOU as interest income. It had counted the PIK amount in both its quarterly income statement and its distributable income.

> For the six months ended June, the 10-Q revealed that $28.5 million of what RC reported as interest income had really been paid in kind. In answer to questions

---

[16]  Alpert's bio at barrons.com states: "Bill Alpert has been a senior writer at Barron's since 1984. His investigations have inspired stock-fraud prosecutions and reforms in such areas as 'backdoor' stock-exchange listings, for-profit colleges, and the Magnitsky Act that sanctions international human-rights violators."

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
- 65 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

from analysts, RC said that the June quarter piece of that PIK interest was $14.7 million.

\*        \*        \*

As it turned out, of the $37 million reported as its June quarter distributable income, $14.7 million was paid in kind, not cash. And after subtracting other noncash items, the quarter's operating cash flow was just $1.06 million.

\*        \*        \*

The company's next dividend declaration is expected on Friday, Sept. 13. Barron's asked Ready Capital how it could cover the $50 million needed for a 30-cent-a-share dividend, after just $1 million in June quarter operating cash flow.

\*        \*        \*

"The Company has not yet announced its 3rd quarter dividend," said the company. It declined to comment further.

Dividends matter to mortgage REIT investors. Shares of Apollo Commercial Real Estate Finance slid 9% on Thursday, after the firm cut its quarterly dividend from 35 cents a share, to 25 cents.

Even with PIK interest padding its net income, Ready Capital's quarterly Distributable Earnings had still declined roughly 67% year-over-year from $51 million in the quarter immediately following the Merger to $16.6 million. Ready Capital's stock closed at $7.63 on September 12, 2024.

151.    Alpert's article was prescient. The day after its publication, on September 13, 2024, Ready Capital cut its dividend by declaring a quarterly dividend of $0.25 per share of common stock for its third quarter 2024. Leading up to the Merger, Ready Capital had maintained a dividend of $0.40 to $0.42 per share of common stock per quarter in 2021 and 2022. As such, Ready Capital's third quarter 2024 dividend was $0.15 to $0.17 less than its dividends prior to the Mosaic Acquisition and its heavy investment in loans collateralized by multi-family properties. Ready Capital's stock closed at $7.71 on September 13, 2024.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 66 -

1

2

**C.** **November 2024 to December 2024: Ready Capital's Increasingly Poor Third Quarter Earnings Cause Continued Alarm, and Analysts Continue to Question Ready Capital's Accounting Practices**

3        152.    The truth continued to emerge. On November 7, 2024, Ready Capital announced

4   its earnings for the third fiscal quarter of 2024. Ready Capital's financial results for the quarter

5   reported increased 60-day plus delinquency rates, additional loan modifications, increased PIK

6   interest income, increased CECL, and a lower book value per share. During the corresponding

7   conference call held on November 8, 2024, Capasse reported that 60-day plus delinquencies within

8   Ready Capital's originated portfolio had increased from 5.2% in the prior quarter to 6.2%, and

9   noted that, "[w]ithin our originated portfolio, 21% has been modified with term extensions through

10  the third quarter of 2025 being the primary modification. These modified loans are predominantly

11  multi-family at 76%." Zausmer additionally disclosed that "the originated [portfolio] has

12  delinquency of about $400 million—just north of $400 million. And then on the acquired portfolio,

13  the M&A piece . . . is $150 million." Zausmer elaborated: "So the modifications on the bridge

14  book were about $250 million in the quarter. Previous quarter, it was approximately $700 million.

15  ***So across the entire bridge portfolio, the modifications are roughly $1 billion dollars across 32***

16  ***assets*** and the vast majority of those sit within CLOs. . . . ***a good chunk of that is coming from***

17  ***those construction loans acquired in the Mosaic transaction***."

18        153.    Additionally, Ahlborn disclosed that almost a third of Ready Capital's quarterly

19  interest income was accrued or paid-in-kind: "***Quarterly interest income was 73% cash and 27%***

20  ***accrued or paid in kind***." An analyst inquired regarding Ready Capital's third quarter PIK interest:

21  "[J]ust in the third quarter, can you disclose how much . . . interest income was from PIK and just

22  expectations from PIK over the next few quarters?" In response, Ahlborn stated that "a little over

23  20%" of Ready Capital's reported $226 million in interest income was PIK or accrued, implying

24  that ***approximately $45 million of Ready Capital's revenues were comprised of non-cash***

25  ***accruals***. Ahlborn further stated that ***50% of Ready Capital's PIK interest income stemmed from***

26  ***construction assets acquired in the Mosaic Acquisition***. As one analyst commented: "[t]he 20%

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)                                   - 67 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    PIK is a really high number. It implies $45 million of PIK interest in the quarter, which I think

2    was up from, you said, last quarter $21 million. So it basically doubled."

3        154.    Though Ready Capital still would not disclose the existence of the Portland Project,

4    management did report that its M&A assets—including "some multi"—drove an increase in CECL

5    which lowered the company's book value per share. Ready Capital reported a $12.59 per share

6    book value, down from $12.97 the previous quarter. Ahlborn attributed Ready Capital's reduced

7    book value primarily to increased CECL: "The change is primarily due to declines of $0.31 per

8    share related to CECL . . . ." That quarter, Ready Capital reported an $83 million allowance for

9    loan losses, *a $52 million increase in its CECL reserve*. Ready Capital recorded allowances for

10   loan losses of ***$22 million for bridge loans***, $6 million for fixed rate loans, and ***almost $50 million***

11   ***for construction loans***. Of that $50 million in CECL for construction loans, $45 million was

12   attributed to specific construction loans. On the earnings call, Ahlborn stated that "[t]he $53.2

13   million increase in CECL reserves was due to a $4.6 million decrease in the general allowance

14   plus $57.8 million of specific reserves on several assets." Ahlborn and Zausmer went on to state

15   that Ready Capital's "the movements this quarter [in CECL], ***that $50 million, it's almost entirely***

16   ***in the M&A portfolio*** across a broad range of property types, office, industrial. And there's some

17   multi in there."

18       155.    Notably, in its earnings report filed several days later on November 12, 2024, Ready

19   Capital came clean and disclosed for the first time that it had altered its definition of interest

20   income to include PIK interest:

21           ***Paid-In-Kind ("PIK") Interest***. PIK interest is computed at the contractual
             rate specified in each loan agreement and added to the principal balance of the loan,
22           and is recorded as interest income over the life of the loan on the consolidated
             statement of operations. The Company will generally cease accruing PIK interest
23           if there is insufficient value to support the accrual or management does not expect
             the borrower to be able to pay all principal and interest due. To maintain the
24           Company's status as a REIT, this non-cash source of income is included within the
25           90% of its taxable income required to be distributed to shareholders.

26                                          *      *      *

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)
- 68 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

*Interest income*. Interest income on loans, held-for-investment, loans, held at fair value, loans, held for sale, and MBS, at fair value is accrued based on the outstanding principal amount and contractual terms of the instrument, ***including loans with contractual PIK interest for which the Company has not yet collected cash***. Discounts or premiums associated with the loans and investment securities are amortized or accreted into interest income as a yield adjustment on the effective interest method, based on contractual cash flows through the maturity date of the investment.

Ready Capital's stock closed at $7.19 on November 12, 2024.

156.    On December 11, 2024, *Seeking Alpha* published an article titled, "***Ready Capital: Accounting Policy Changes Mask Negative Adjusted Operating Cash Flows and Unsupported Dividend***." Questioning Ready Capital's accounting practices, the article stated that Ready Capital "appears to be the polar opposite of a blue-chip REIT" in light of its "extremely complex and rapidly changing business model and a dividend that has already been cut three times in the last couple of years." The article went to comment on Ready Capital's changes to its accounting of its interest income, writing that "the only reason Distributable Earnings . . . appear to support the dividend is recent changes in accounting policy." In the same article, the *Seeking Alpha* author additionally noted that Ready Capital "ha[s] not taken proper reserves for their troubled loans . . . it appears that they are under-reserved for troubled loans relative to the rest of the publicly traded mortgage REITs. My math indicates that if [Ready Capital]'s valuation allowance was adjusted to reflect the average loss severity of resolved CMBS [commercial mortgage-back security] loans . . . ***[Ready Capital]'s tangible book value per share would drop to $3.39," from $12.59 reported earlier that quarter***.

### D.    Late 2024 through Early 2025: With Investors Still Largely in the Dark as to the Portland Project, Ready Capital Prepares to Foreclose

157.    In the months leading up to the December 31, 2024 maturity date of the Portland Project Loan—of which Ready Capital investors remained not so blissfully unaware—Ready Capital communicated in writing to the mezzanine lender that a further forbearance and extension of the Portland Project Loan was necessary to permit completion of the Project. Then, sometime before November 14, 2024, Ready Capital requested appraisals of the hotel and residential

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 69 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  condominium portions of the Portland Project from HVS Consulting & Valuation, and of the office

2  portion of the Portland Project from Cushman & Wakefield Valuation & Advisory. The appraisals

3  together valued the Portland Project at $257 million, less than half of the $510 million outstanding

4  balance on the Portland Project Loan.[17] As Alex Ovalle, a Managing Director and Head of

5  Construction Lending and Syndications at Ready Capital, stated in the Ovalle Affirmation filed in

6  *Broadway EB-5 v. Ready Capital*, "the Project [wa]s underwater."

7      158.    The 215-page valuation performed by HVS Consulting & Valuation was delivered

8  to Ready Capital on January 2, 2025, and valued the Project's hotel and residential condominiums

9  at $223 million as of November 20, 2024. HVS noted that "[t]he 'as is' market value opinion of

10  the hotel component in this appraisal is roughly 17.0% lower than the allocated development cost.

11  This difference is attributed to the slower than anticipated improved in market conditions for the

12  city, which has resulted in a slow ramp up for the hotel. . . . The net sellout value for the remaining

13  residences is also below the provided cost, which is attributed to a notably slow[er] than expected

14  sale pace, which is resulting in price discounting."

15      159.    The 179-page valuation performed by Cushman & Wakefield was delivered to

16  Ready Capital on January 9, 2025, and valued the Project's office space at $34 million as of

17  November 26, 2024. The valuation reported attributed the valuation to, among other things, the

18  fact that "[p]ortions of the building are still in shell condition" and that the "Portland office market

19  [was] still in the midst of a downturn." Commenting on the Portland Project's high office space

20  rates, Cushman & Wakefield wrote: "When a property has an average rent that is above market,

21  there is increased risk of default, slow payment or lack of payment by those tenants in that

22  category. Also, at some point, the above market leases will expire, at which time the spaces will

23  be re-leased at market levels. When this occurs, there is a decline in rental revenue for the property,

24  which many times leads to a declining net income stream."

25

26  _____
[17]  The appraisals did not value Block 216's retail space or furnishings or fixtures, among other
things.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)                    - 70 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

160.     Upon receiving these substantially lower valuations, as Ready Capital stated through the Ovalle Affirmation, the company determined that "the value of the Project was substantially less than the value of [Ready Capital's] security such that it did not make financial sense for [Ready Capital] to pursue any further financial restructuring, including by making any refinancing or other loans to [Bowen] or to forbear further." Ready Capital, through Ovalle, conceded that "the continued uncertainty as to the financial viability of the owners of the Project has caused substantial loss of revenue and value for the Project. . . . [T]he hotel has lost significant bookings both of event space and hotel rooms because guests are unwilling to book a vacation stay, wedding reception or conference with a hotel whose ability to provide services is uncertain. Likewise, the sale of condominium units and the least of office space has been depressed by the Project's uncertain financial situation." Ready Capital additionally asserted during a preliminary injunction hearing in *Broadway EB-5 v. Ready Capital* that the Project was "completely underwater," and that "[t]here is no money to repay anyone." Sometime before February 7, 2025, Ready Capital and Bowen agreed that Bowen would transfer a deed-in-lieu of foreclosure. These valuations simply confirmed the facts largely in existence before the Merger.

161.     As alleged in detail above, the data upon which the HVS and Cushman & Wakefield appraisals were based and much of the information in the Ovalle Affirmation were known to the Ready Capital Defendants in the months leading up to the Merger and should have been uncovered by the Broadmark Defendants in due diligence for the Merger. Based on Ready Capital's own professed accounting standards and its own claims about the due diligence it conducted in connection with its acquisition of Mosaic, Ready Capital was certainly provided with and reviewed detailed information regarding Bowen's failure to sell the Ritz-Carlton condominiums prior to the Broadmark Merger, both during its due diligence leading up to the Mosaic Acquisition and as the eventual lender on the Portland Project.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 71 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1

2

**E.    March 2025: Ready Capital Cuts Its Dividend in Half Due to a $277 Million Increase in CECL Stemming from the Portland Project and Loans Collateralized by Multi-Family Properties**

3      162.    The problems with the Portland Project and Ready Capital's loans collateralized by

4   multi-family properties came to a head in early 2025. On March 3, 2025, Ready Capital issued a

5   press release announcing Ready Capital's financial results for its fourth fiscal quarter and year

6   ending December 31, 2024. The earnings release stated that ***Ready Capital had increased its***

7   ***CECL reserve during the quarter by $277 million***, ***which reduced book value per share of***

8   ***common stock to $10.61 as of December 31, 2024***, and caused Ready Capital to widely miss the

9   projected book value of $15.10 per share for fiscal year 2024 as stated in the Proxy. The earnings

10  release further stated ***Ready Capital was reducing its quarterly cash dividend to $0.125 per share***

11  ***of common stock for the first fiscal quarter of 2025***—translating to $0.50 per share of common

12  stock on an annualized basis. The declared dividend significantly missed the projected $1.60

13  dividend per share for fiscal year 2025 set forth in the Proxy. The earnings release also reported

14  that Ready Capital had generated ***Distributable Earnings per share of common stock of just $0.07***

15  ***in fiscal year 2024*** (or just $0.97 of distributable earnings before realized losses on investments,

16  net of tax), a tiny fraction of the $1.60 in annual Distributable Earnings per share for fiscal year

17  2024 as set forth in the Proxy. The press release quoted Capasse, who stated that Ready Capital's

18  multi-family business had been negatively impacted during the year by "higher rates, inflationary

19  pressures, and lower rent growth."

20     163.    Based on those partial revelations, the following chart compares Ready Capital's

21  purportedly expected performance as set forth in the Proxy with its actual performance:

22

|  | **Proxy Numbers** | **Actual Numbers** |
|---|---|---|
| **2024 Distributable Earnings Per Share** | $1.60 | $0.07 |
| **2025 Dividends Per Share** | $1.60 | $0.50 |
| **2024 Book Value Per Share** | $15.10 | $10.61 |

23

24

25

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
**(2:25-cv-01013-LK)**

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 72 -

164.    During the corresponding conference call held that same day, Capasse announced that Ready Capital was bifurcating its commercial real estate portfolio into two categories: (a) core and (b) non-core. Capasse explained that assets designated as "core" were loans Ready Capital intended to "hold to maturity," while "non-core" assets were comprised of assets "tagged with aggressive liquidation strategies." Notably, Capasse stated that Ready Capital's non-core portfolio contained $1.2 billion in loans and was comprised almost entirely of Ready Capital's originated loans and a single mixed-use asset acquired in the Mosaic Acquisition: "Our non-core $1.2 billion dollar portfolio is split into 59% [Ready Capital-]originated loans, 8% M&A loans, and 33% in a high-quality Portland, Oregon mixed-use asset." Ahlborn disclosed that "[t]he additional $242.7 million in CECL reserves was primarily due to an increase of reserves on [these] non-core assets." In turn, "[t]he book value change was due to an increase in the combined CECL and valuation allowance and a $0.43 shortfall on dividend coverage from earnings . . . ."

165.    Regarding the originated portion of Ready Capital's non-core portfolio, Zausmer stated that the loans were comprised of modified loans that had "lower yields," a "less viable path to stabilization," and a "higher probability of foreclosure" absent liquidation. A presentation issued in connection with Ready Capital's earnings announcement further revealed that the originated segment of Ready Capital's non-core portfolio was **_entirely_** comprised of loans originated in fiscal years 2022 and prior (*i.e*., before the Merger), as depicted in the following slide:

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 73 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

CRE Portfolio Review — READY CAPITAL.

166.    Regarding the Mosaic portion of Ready Capital's non-core portfolio, Capasse disclosed—***for the first time***—that the mixed-use asset was a Ritz-Carlton located in Portland, Oregon with hospitality, office, and residential components, consisting of a $504 million senior loan and a $62 million equity position:

> The Portland mixed-use asset is a $600 million construction project acquired in the 2022 Mosaic transaction where RC holds a $503 million senior loan and a $62 million preferred equity position. . . . [C]onstruction was completed on the mixed-use property in the fourth quarter with the Ritz-Carlton Hotel opening in October 2023. The property features the premier hospitality, retail office, and residential offerings in Portland, with each component now moving to stabilization. Currently, the hospitality RevPar [revenue per available room] is $188. The office and retail are leased 23% and 100%, respectively, and 8% of the condos are sold.

167.    The presentation deck released in connection with the earnings report stated that, by March 2022, Ready Capital acquired the Loan through the Mosaic Acquisition, "which became

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 74 -

distressed due to the pandemic impact on the Portland economy and [Bowen's] inability to fund cost overruns":



## Portland OR, Mixed-Use







- *2019:* Mosaic Real Estate Credit (Mosaic) originated a $460MM senior mortgage for the construction of The Ritz-Carlton, Portland
- *March 2022:* RC acquires loan through its merger with Mosaic which became distressed due to the pandemic impact on the Portland economy and Sponsor's inability to fund cost overruns
- *3Q24:* Construction is 100% complete and all components of the property have been delivered; hotel opened in October 2023
- *12/31/24:* Loan matured; RC is expeditiously working on an amicable solution with the Borrower:
  - Ownership is best net present value outcome for RC
- *3/31/25:* Current senior UPB is $516MM
- The 35-story mixed-use tower consists of three components:
  - Hotel: 251-key Ritz-Carlton (current RevPAR of $209 in Q1'25)
  - Resi Condo: 132-unit Ritz-Carlton (8% of inventory sold at average $1,076/SF)
  - Commercial:
    - 159k square feet of class-A office (23% leased)
    - 11k square feet of retail (100% occupied)
- RC's Asset Management strategy – sequentially exit the 3 components once stabilized:
  - Commercial: 2 years
  - Hotel: 2 years
  - Resi Condo: 3-year linear sell-out period




168.    As a result of Block 216's appraisal value, Capasse stated Ready Capital had "reserved ***$130 million*** of [its] original exposure to mark the asset to its as is value." Capasse went on to state that "[t]he immediate impact to earnings is a quarterly reduction of $0.11 per share . . . on ROE [return on equity]." Ahlborn further stated that "the first quarter [of fiscal year 2025] is definitely going to be the lowest quarter of the year [in terms of earnings], primarily impacted by the fact that the majority of the non-core bucket will go on non-accrual and be booked on a cash basis . . . ." Capasse stated that the Portland Project was an outlier in Ready Capital's loan portfolio, and had a disproportionate impact compared to other loans.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
- 75 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

169. Notably, an analyst questioned Ready Capital's motivations for its recent and prospective mergers: "On the [prospective] UDF IV merger, is the rationale that you see compelling value in the assets an upside to the basis at which you're acquiring the assets? Or alternatively, you looking to replenish the unencumbered asset pool that the company has in order to maintain unsecured access? I mean that really would explain the logic behind the Broadmark and Mosaic Acquisitions because those unencumbered assets allow you to issue debt." In response, Capasse and Ahlborn could not deny that Ready Capital had entered into those transactions to issue more debt.

170. Analysts expressed surprise at just how poorly Ready Capital had performed that quarter:

- On March 3, 2025, Citizens lowered its rating, stating: "Before the market open on March 3, the company reported a GAAP loss of $1.80 per share and a distributable loss of $0.03 per share, *below consensus of $0.21 from nine analysts and our lower estimate of $0.16. GAAP earnings were negatively impacted by a $285M, or $1.69 per share, increase to CECL loan loss reserves* and a $29.8M, or $0.18 per share, impairment of real estate assets. Distributable earnings were negatively impacted by $44.2M, or $0.26 per share, of realized loan losses. The quarterly dividend was reduced by 50% to $0.125 from $0.25 per share in order to preserve liquidity. 4Q24 distributable earnings did not cover the new dividend of $0.125 per share . . . *Adjusted book value was $10.61, a significant decrease of about 16% from $12.59 at September 30, primarily due to the increase in CECL reserves*. Distributable ROE prior to the realized loss was 7.1% for the fourth quarter . . . ."

- On March 3, 2025, Piper Sandler slashed its price target for Ready Capital from $8.00 to $5.50 as *Ready Capital "cuts dividend and records meaningful allowances; uncertainty remains into 2025"*: "Shares were down 25%+ following RC's results and 50% dividend cut. The company continued to take significant actions including *loan sales which generated $52M in realized losses and $276M in CECL and valuation allowances. 2024 was an extremely challenging year and we continue to expect a tough backdrop as rates remain elevated and RC works through its non-core assets*. . . . Ready Capital cut its dividend to $0.125 from $0.25 and this reduction marks the fourth cut since 3Q23. . . ."

- On March 3, 2025, Ladenburg Thalmann noted that "[i]t was another *very noisy and messy quarter* for [Ready Capital]": "The loss stems from RC's commercial real estate (CRE business) with *the major drivers for the quarterly loss being a $285M loan loss provision* (vs. $53M provision in 3Q24) which fully reserved 100% of RC's non-performing CRE loans."

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 76 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- On March 3, 2025, UBS reported that "***book value [was] weaker than expected, dividend reduced***": RC reported fourth quarter DE (distributable EPS) of -$0.03, versus UBSe (+$0.20/sh) and Factset consensus (+$0.19/sh) Excluding the realized loss DE was $0.23/sh, $0.02/sh higher than UBSe. GAAP EPS from continuing operations were -$1.80 and included an increase in valuation allowance & CECL reserves of $276 million (-$1.56/sh) and realized and unrealized losses (-$0.17/sh). RC's book value was down $1.98 (-16%) Q/Q to $10.61 vs our estimate of down 0.9%. RC announced a 1Q dividend of $0.125/quarter, down from $0.25.

171.    Ready Capital's stock price dropped from $6.93 at close of trading on February 28, 2025 to $5.07 on March 3, 2025.

F.    <u>**May 2025 to November 2025**</u>: **Ready Capital Moves the Portland Project to "Non-Accruing Status" and Takes Losses on Its Loans Collateralized by Multi-Family Properties**

172.    Ready Capital's financial results and stock price continued to deteriorate in the wake of its disclosure of the previously-concealed problems with the Portland Project and the continued negative effects of its multi-family investments. On May 9, 2025, Ready Capital announced its first fiscal quarter of 2025 financial results. Book value per share remained at just $10.61. Book value would have dropped further, but, as Capasse explained on the earnings call that same day, this metric was propped up by Ready Capital's acquisition of United Development Funding IV on March 13, 2025. Ready Capital continued to feel the effects of its multi-family loan investments as 60-day-plus delinquencies remained at around 4%, representing a $117 million quarter-over-quarter increase. Additionally, Capasse noted that, "[i]n the core portfolio, we modified five loans totaling $312 million, increasing the percentage of modified loans to 18%."

173.    The Portland Project continued to drag down earnings. Ahlborn stated that the company's net interest income declined due to the movement of the non-core assets to non-accrual status: On the call, he stated: "net interest income declined to $14.6 million in the quarter. The reduction was primarily due to the movement of non-core assets to not accrual status, which generated a cash yield of 1.3%." Ready Capital reported a loss in distributable earnings of $0.09 per share. Capasse added that Ready Capital's $1.2 billion non-core loan portfolio was "largely comprised of assets where the net present value of sale exceeds on balance sheet management

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)
- 77 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1   strategies" and divided into two segments: $740 million of low-yield, distressed credit bridge loans

2   and the $425 million Portland Project. Capasse finally disclosed that, though "Ready Capital had

3   held a $516 million senior loan. . . . In the fourth quarter, the position was marked down to $426

4   million and we are currently working to obtain title." Ready Capital ultimately took ownership of

5   Block 216 on July 22, 2025.

6       174.    The Portland Project's hotel, condominium sales, and office leases showed little

7   improvement from the previous quarter: "In the quarter, RevPAR and the hotel improved 11% to

8   $209, leasing of the combined office and retail remained at 28%, and additional two condos were

9   sold." Capasse also stated that "[t]he financial effect of the asset moving from performing

10  construction loan to non-accrual was a quarter-over-quarter $0.13 per share reduction in earnings

11  with the current carry expense in the quarter of $0.05 per share. We expect to sequentially exit the

12  three components as they stabilize and remain fully committed to support the project both

13  financially and operationally." An analyst inquired about the cost to exit the Portland Project:

14  "[H]ow much dollars are needed and over what time period are we looking [to exit the Project]? I

15  mean, there were two condo sales in the quarter. I'm assuming this is all going to take years, we're

16  talking." Zausmer responded: "[I]t'll take—to reach stabilization, certainly, the office and the

17  hospitality will be stabilization first with the condos taking, I think, to fully sell those condo units

18  where we're pegging anywhere from two to three years." Ready Capital's stock closed at $4.13 on

19  May 9, 2025.

20      175.    Ready Capital's poor financial results continued in its second fiscal quarter of 2025.

21  On August 8, 2025, Ready Capital announced its earnings for that quarter. Ready Capital reported

22  a loss in distributable earnings per share of $0.14 and that book value to dropped $0.17 per share

23  from the previous quarter to $10.44. Capasse stated that the Portland Project continued to

24  underperform and negatively weigh on Ready Capital's earnings: "From a performance standpoint,

25  in the second quarter, RevPAR at the hotel was $192. The retail component is 100% occupied.

26  The office is 23% leased, and to date. 11 of the 132 residences were sold at an average price of

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                              - 78 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  $1,123 per square foot. The negative carry from the asset was $5.3 million or $0.03 per share for

2  the quarter." Ahlborn further stated that the $5.3 million, or $0.03 per share negative carry, was

3  included in the company's Distributable Earnings and noted that this contributed to a two or three

4  quarter delay before Ready Capital expected its earnings could cover its dividend of $0.125.

5       176.   Additionally, Ready Capital continued to experience losses on its loans

6  collateralized by multi-family properties. Capasse stated that Ready Capital had modified a further

7  14 loans totaling $250 million. Additionally, he disclosed that Ready Capital "completed our first

8  bulk sale earlier this week, selling $494 million of legacy multifamily bridge assets, generating net

9  proceeds of $85 million. . . . The pool included 73% non-core, 27% core, 40% were delinquent,

10 33% risk rated 4 or 5, and 92% non-accrual. . . . This transaction is strategically significant,

11 eliminating 100% of 2021 vintage syndicated loans, while allowing potential upside through

12 retention of a preferred return if certain performance targets are met by the buyer." This trade

13 resulted in a $48 million quarter-over-quarter increase in Ready Capital's combined provision for

14 loan loss and valuation allowance.

15      177.   An analyst again inquired about the rationale for Ready Capital's M&A strategy in

16 light of the problems with Mosaic's portfolio: "[L]ooking back on all the fast and furious mergers

17 that you guys did over the past years. And many of them seem, at least to the outsider, more as a

18 financing vehicle. Going forward, what's your M&A strategy? Has it changed when you come

19 back to that? Or is it still looking to capitalize on cheap underlevered balance sheets?" Capasse

20 responded to confirm that Ready Capital would now be pursuing fewer M&A transactions. Ready

21 Capital's stock closed at $4.07 on August 8, 2025.

22      178.   On November 7, 2025, Ready Capital's financial results hit new lows as the

23 company reported its third quarter of fiscal year 2025 earnings. Distributable Losses increased

24 sequentially to $0.94 per share from $0.14 per share—a further $0.80 drop in Distributable

25 Earnings. Book value per share declined again to $10.28. On the earnings call that same day,

26 analysts questioned the viability of a dividend at all in light of Ready Capital's dire financial straits:

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                          - 79 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  "The dividend cost as you know, around, I think, $80 million a year seems unjustifiable to continue

2  paying it. . . . it just doesn't seem justifiable to continue to pay [a] dividend . . . ." In response,

3  Capasse stated that "we're going to evaluate obviously the dividend in December to determine the

4  appropriate policy in that context," signally to investors and analysts that another dividend cut is

5  coming. Ready Capital's stock price continued to deteriorate, closing at $2.49 on November 24,

6  2025.

7      179.    The price of Ready Capital stock has remained significantly below the Merger price

8  at the time Lead Plaintiff filed this Amended Complaint.

9  **VIII.   CLASS ACTION ALLEGATIONS**

10     180.    Lead Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

11  Procedure. The claims under the Securities Act are brought on behalf of Lead Plaintiff and all other

12  persons or entities, except for Defendants, who acquired Ready Capital common stock in exchange

13  for their shares of Broadmark in connection with the close of the Merger, while the Exchange Act

14  claims are brought on behalf of all persons or entities, except for Defendants, who held Broadmark

15  common stock on the record date for the Merger and acquired Ready Capital common stock in

16  exchange for their shares of Broadmark in connection with the close of the Merger (the "Class").

17  Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of

18  Defendants, at all relevant times, members of their immediate families, and their legal

19  representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a

20  controlling interest.

21     181.    The members of the Class are so numerous that joinder of all members is

22  impracticable. Broadmark common stock was actively traded on the NYSE and over 60 million

23  Ready Capital shares were issued to former Broadmark shareholders in the Merger. While the

24  exact number of Class members is unknown to Lead Plaintiff at this time and can only be

25  ascertained through appropriate discovery, Lead Plaintiff believes that there are hundreds of

26  members in the proposed Class. Record owners and other members of the Class may be identified

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)                     - 80 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  from records maintained by Broadmark or its transfer agent and Ready Capital or its transfer agent

2  and may be notified of the pendency of this action by mail, using the form of notice similar to that

3  customarily used in securities class actions.

4          182.    Lead Plaintiff's claims are typical of the claims of the members of the Class, as all

5  members of the Class are similarly affected by Defendants' wrongful conduct in violation of

6  federal law that is complained of herein.

7          183.    Lead Plaintiff will fairly and adequately protect the interests of the members of the

8  Class and have retained counsel competent and experienced in class and securities litigation.

9          184.    Common questions of law and fact exist as to all members of the Class and

10  predominate over any questions solely affecting individual members of the Class. Among the

11  questions of law and fact common to the Class are:

12                 (a)    whether the Ready Capital Defendants and the Broadmark Defendants

13  violated §14(a) of the Exchange Act by misrepresenting or omitting material information in the

14  Proxy;

15                 (b)    whether Waterfall, the Ready Capital Individual Defendants, and the

16  Broadmark Individual Defendants are liable as "controlling persons" under §20(a) of the Exchange

17  Act; and

18                 (c)    whether the Ready Capital Defendants violated §§11 and/or 12(a)(2) of the

19  Securities Act;

20                 (d)    whether Waterfall and the Ready Capital Individual Defendants are liable

21  as "controlling persons" under §15 of the Securities Act; and

22                 (e)    whether Lead Plaintiff and the other members of the Class were injured as

23  a result of Defendants' misconduct.

24          185.    A class action is superior to all other available methods for the fair and efficient

25  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

26  damages suffered by individual Class members may be relatively small, the expense and burden

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                                   - 81 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  of individual litigation make it impossible for members of the Class to individually redress the

2  wrongs done to them. There will be no difficulty in the management of this action as a class action.

3  **COUNT ONE – FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT
   AND RULE 14A-9 PROMULGATED THEREUNDER**

4  **(Against the Ready Capital Defendants and the Broadmark Defendants)**

5  186.    Lead Plaintiff incorporates by reference and reallege each and every allegation

6  contained above as though fully set forth herein.

7  187.    This Count does not sound in fraud. Lead Plaintiff does not allege that Defendants

8  had fraud-based scienter or fraudulent intent as they are not elements of a §14(a) claim.

9  188.    SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to §14(a) of the

10  Exchange Act, provides:

11      No solicitation subject to this regulation shall be made by means of any proxy
        statement, form of proxy, notice of meeting or other communication, written or
12      oral, containing any statement which, at the time and in the light of the
        circumstances under which it is made, is false or misleading with respect to any
13      material fact, or which omits to state any material fact necessary in order to make
        the statements therein not false or misleading or necessary to correct any statement
14      in any earlier communication with respect to the solicitation of a proxy for the same
        meeting or subject matter which has become false or misleading.
15

16  189.    Defendants prepared and disseminated the false and misleading Proxy specified

17  above, which failed to disclose material facts necessary in order to make the statements made, in

18  light of the circumstances under which they were made, not misleading in violation of §14(a) of

19  the Exchange Act and Rule 14a-9 promulgated thereunder.

20  190.    By virtue of their positions within Broadmark and Ready Capital and their due

21  diligence regarding the Merger, Defendants were aware of this information and of their duty to

22  disclose this information in the Proxy. The Proxy was jointly prepared, reviewed, and/or

23  disseminated by Broadmark, Ready Capital, their respective officers and directors, and Waterfall.

24  The Proxy misrepresented and/or omitted material facts, as detailed above. Defendants were at

25  least negligent in filing the Proxy with these materially false and misleading statements.

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

- 82 -

191.    As stated herein, the Proxy contained untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading in violation of §14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder. The Proxy was an essential link in the consummation of the Merger. Defendants also failed to correct the Proxy prior to the Merger, and the failure to update and correct false statements is also a violation of §14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

192.    As a direct result of Defendants' negligent preparation, review, and dissemination of the false and/or misleading Proxy, Lead Plaintiff and the Class were precluded from exercising their right to vote on the Merger on a fully informed basis and were induced to vote their shares and accept inadequate consideration in connection with the Merger. The false and misleading Proxy used to obtain shareholder approval of the Merger deprived Lead Plaintiff and the Class of the full and fair value for their Broadmark shares. At all times relevant to the dissemination of the materially false and/or misleading Proxy, Defendants were aware of and/or had access to the true facts concerning the true value of Ready Capital, which was far below the assets that shareholders received in the Merger. Thus, as a direct and proximate result of the dissemination of the false and misleading Proxy, Defendants used to obtain shareholder approval of and thereby consummate the Merger, plaintiffs and the Class have suffered damages and actual economic losses in an amount to be determined at trial.

193.    The omissions and false and misleading statements in the Proxy were material in that a reasonable stockholder would have considered them important in deciding how to vote on the Merger. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

194.    By reason of the foregoing, Defendants have violated §14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 83 -

**COUNT TWO – FOR VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT**
**(Against Defendant Waterfall, the Ready Capital Individual Defendants, and the**
**Broadmark Individual Defendants)**

195.    Lead Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

196.    Section 20(a) of the Exchange Act imposes liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of" the Exchange Act or any of the rules promulgated thereunder. Such "controlling persons" are "liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

197.    By reason of the allegations herein, Defendant Waterfall and the Individual Defendants violated §14(a) of the Exchange Act by preparing, issuing, and publishing the Proxy, which contained untrue statements of material fact concerning the Merger and omitted to state material facts concerning the Merger necessary in order to make the statements made in the Proxy not misleading.

198.    Defendant Waterfall and the Individual Defendants were controlling persons of Broadmark and/or Ready Capital within the meaning of §20(a) of the Exchange Act.

199.    The Individual Defendants, by virtue of their high-level positions as officers and/or directors of Broadmark and/or Ready Capital, participated in the operation and management of Broadmark and Ready Capital, and conducted and participated, directly and indirectly, in the conduct of their business affairs, and therefore exercised general control over the operations of Broadmark and Ready Capital. The Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Broadmark and Ready Capital, including the identification of target companies to be acquired by Ready Capital, the evaluation of the assets to be received by Broadmark shareholders in the Merger, and the content and dissemination of the Proxy, which plaintiffs contend was false and misleading.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)
- 84 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

200.    Likewise, Defendant Waterfall, as the external manager of Ready Capital and the employer of Ready Capital's executive management, and due to its influence and control over the Ready Capital Board and historical relationships with Ready Capital's management, exercised general control over the operations of Ready Capital and its business affairs. Additionally, pursuant to the management agreement between Ready Capital and Waterfall, Waterfall was responsible for the content of Ready Capital's public filings. Defendant Waterfall, either directly or indirectly through its affiliates, influenced and controlled the drafting of the Proxy, which Lead Plaintiff contends was false and misleading.

201.    Defendant Waterfall and the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that Defendant Waterfall and the Individual Defendants reviewed and considered concerning the Merger. Defendant Waterfall and the Individual Defendants, by virtue of their positions as managers, owners, officers, and/or directors of Ready Capital and/or Broadmark, had the ability to control the issuance, publication, and contents of the Proxy, prevent the dissemination of the materially misleading Proxy, or to cause the Proxy to be corrected so that it was not in violation of §14(a) of the Exchange Act.

202.    By virtue of the foregoing, Defendant Waterfall and the Individual Defendants violated §20(a) of the Exchange Act, and plaintiffs are entitled to relief.

**COUNT THREE – FOR VIOLATION OF SECTION 11 OF THE SECURITIES ACT**
**(Against the Ready Capital Defendants)**

203.    Lead Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

204.    This count is brought by Lead Plaintiff on behalf of himself and all other Class members who received shares of Ready Capital common stock traceable to the Registration Statement.

205.    Lead Plaintiff asserts solely strict liability and negligence claims in this count.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)                                    - 85 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

206.    The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state facts necessary to make the statements made no misleading, as alleged herein.

207.    Ready Capital was the issuer of the common stock registered by the Joint Proxy/Prospectus and the Registration Statement. As the issuer of the common stock, Ready Capital is strictly liable to the members of the Class who received Ready Capital common stock pursuant to the Registration Statement.

208.    The Ready Capital Individual Defendants each signed the Registration Statement, were responsible for the contents and dissemination of the Registration Statement, and/or failed to make a reasonable investigation and did not possess reasonable grounds for the belief that the statements contained in the Registration Statement were true and/or did not contain untrue statements of material facts. The Ready Capital Individual Defendants are therefore liable to the members of the Class who received shares of Ready Capital common stock pursuant to the Registration Statement.

209.    Lead Plaintiff and other members of the Class received Ready Capital common stock traceable to the Registration Statement, and did not know, or in the exercise of reasonable diligence could not have known, of the untrue statements and omissions of material fact contained therein.

210.    Lead Plaintiff and the members of the Class who purchased or acquired Ready Capital common stock traceable to the Registration Statement suffered substantial damage as a direct and proximate result of the untrue statements of material facts and/or omissions described in this count.

211.    This claim is brought within the applicable statute of limitations because, as of Lead Plaintiff's filing of the Initial Complaint, less than one year had elapsed from the time that Lead Plaintiff and the other members of the Class discovered or reasonably could have discovered the facts upon which this count is based. Less than three years have elapsed from the time that Lead

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)
- 86 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1  Plaintiff and other Class members received the shares of Ready Capital common stock pursuant to

2  the Registration Statement.

3      212.    By reason of the foregoing, the Defendants named in this count have violated §11

4  of the Securities Act.

5              **COUNT FOUR – FOR VIOLATION OF SECTION**
               **12(A)(2) OF THE SECURITIES ACT**
6              **(Against the Ready Capital Defendants)**

7      213.    Lead Plaintiff incorporates by reference and realleges each and every allegation

8  contained above, as though fully set forth herein.

9      214.    This count is brought by Lead Plaintiff on behalf of himself and all other Class

10 members who received shares of Ready Capital common stock in the Merger and pursuant to the

11 Joint Proxy/Prospectus.

12     215.    This count is brought against Ready Capital and the Ready Capital Individual

13 Defendants.

14     216.    Lead Plaintiff asserts solely strict liability and negligence claims in this count.

15     217.    The Defendants named in this count were statutory sellers who sold and

16 participated in the sale of Ready Capital common stock to Lead Plaintiff and other members of the

17 Class by means of the Joint Proxy/Prospectus for their own benefit and the benefit of Ready

18 Capital.

19     218.    The Ready Capital Individual Defendants reviewed, approved, and signed the

20 Registration Statement.

21     219.    Defendant Capasse signed the letter to Ready Capital investors contained in the

22 Joint Proxy/Prospectus.

23     220.    Defendant Ahlborn signed the notice of the Ready Capital special meeting sent to

24 Ready Capital investors contained in the Joint Proxy/Prospectus.

25

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)                    - 87 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

221.    Lead Plaintiff received Ready Capital common stock pursuant to the Joint Proxy/Prospectus, and did not know, or in the exercise of reasonable diligence could not have known, of the untrue statements and omissions of material fact contained therein.

222.    As a direct and proximate result of such violations, Lead Plaintiff and the other members of the Class who purchased or acquired Ready Capital common stock pursuant to the Joint Proxy/Prospectus sustained substantial damages in connection with their receipt of the stock. Accordingly, Lead Plaintiff or the other members of the Class who may hold the common stock issued pursuant to the Joint Proxy/Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to the defendants sued in this count. Class members who have sold their common stock seek damages to the extent permitted by law.

223.    This claim is brought within the applicable statute of limitations because, as of Lead Plaintiff's filing of the Initial Complaint, less than one year had elapsed from the time that Lead Plaintiff and the other members of the Class discovered or reasonably could have discovered the facts upon which this count is based. Less than three years had elapsed from the time that Lead Plaintiff and other Class members received the shares of Ready Capital common stock pursuant to the Joint Proxy/Prospectus.

224.    By reason of the conduct alleged herein, the Defendants named in this count violated §12(a)(2) of the Securities Act.

**COUNT FIVE – FOR VIOLATION OF SECTION 15 OF THE SECURITIES ACT**
**(Against Defendant Waterfall and the Ready Capital Individual Defendants)**

225.    Lead Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

226.    This count is brought by Lead Plaintiff on behalf of himself and all other Class members who received shares of Ready Capital common stock traceable to the Offering Documents.

227.    Lead Plaintiff asserts solely strict liability and negligence claims in this count.

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)                                    - 88 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    228.    Defendant Waterfall and the Ready Capital Individual Defendants were controlling

2    persons of Broadmark and/or Ready Capital within the meaning of §15 of the Securities Act.

3    229.    The Ready Capital Individual Defendants, by virtue of their high-level positions as

4    officers and/or directors of Ready Capital, participated in the operation and management of Ready

5    Capital, and conducted and participated, directly and indirectly, in the conduct of their business

6    affairs, and therefore exercised general control over the operations of Ready Capital. The Ready

7    Capital Individual Defendants had the power to influence and control and did influence and

8    control, directly or indirectly, the decision-making of Ready Capital, including the identification

9    of target companies to be acquired by Ready Capital, the evaluation of the assets to be received by

10   Broadmark shareholders in the Merger, and the content and dissemination of the Proxy, which

11   Lead Plaintiff contends was false and misleading.

12   230.    Likewise, Defendant Waterfall, as the external manager of Ready Capital and the

13   employer of Ready Capital's executive management, and due to its influence and control over the

14   Ready Capital Board and historical relationships with Ready Capital's management, exercised

15   general control over the operations of Ready Capital and its business affairs. Additionally, pursuant

16   to the management agreement between Ready Capital and Waterfall, Waterfall was responsible

17   for the content of Ready Capital's public filings. Defendant Waterfall, either directly or indirectly

18   through its affiliates, influenced and controlled the drafting of the Proxy, which Lead Plaintiff

19   contends was false and misleading.

20   231.    By reason of the foregoing, the Defendants named in this count violated §15 of the

21   Securities Act.

22   **IX.    PRAYER FOR RELIEF**

23   WHEREFORE, Lead Plaintiff prays for relief and judgment, as follows:

24   A.    Determining that this action is a proper class action and certifying Lead Plaintiff as

25   class representative under Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiff's

26   counsel as Class counsel;

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(2:25-cv-01013-LK)

- 89 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

1    B.    Declaring that the Ready Capital Defendants and the Broadmark Defendants

2 violated Rule 14a-9 and §14(a) of the Exchange Act by disseminating the materially false and/or

3 misleading Proxy and/or Joint Proxy/Prospectus;

4    C.    Declaring that Waterfall, the Ready Capital Individual Defendants, and the

5 Broadmark Individual Defendants violated §20(a) of the Exchange Act by acting as controlling

6 persons of a person or persons who violated Rule 14a-9 and §14(a) of the Exchange Act;

7    D.    Declaring that the Ready Capital Defendants violated §11 of the Securities Act by

8 issuing the common stock registered by the Joint Proxy/Prospectus and the Registration Statement,

9 and being otherwise responsible for the materially false and/or misleading statements and

10 omissions therein;

11    E.    Declaring that the Ready Capital Defendants violated §12(a)(2) of the Securities

12 act by selling and participating in the sale of Ready Capital common stock to Lead Plaintiff and

13 other members of the Class by means of the Registration Statement;

14    F.    Declaring that Waterfall and the Ready Capital Individual Defendants violated §15

15 of the Exchange Act by acting as controlling persons of a person or persons who violated §§11

16 and/or 12(a)(2) of the Exchange Act;

17    G.    Awarding compensatory damages in favor of Lead Plaintiff and the Class against

18 all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

19 wrongdoing, in an amount to be proven at trial, including interest thereon;

20    H.    Awarding Lead Plaintiff and the other Class members rescission on their §12(a)(2)

21 claims;

22    I.    Awarding Lead Plaintiff and the members of the Class pre-judgment and post-

23 judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs; and

24    J.    Awarding such other relief as this Court may deem just and proper.

25

26

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

- 90 -

1    **X.    JURY DEMAND**

2         Lead Plaintiff hereby demands a trial by jury.

3     DATED: November 25, 2025            KELLER ROHRBACK L.L.P.

4

5

6                                         JULI E. FARRIS (WSBA # 17593)
7                                         1201 Third Avenue, Suite 3400
                                          Seattle, WA 98101-3052
8                                         Telephone: 206/623-1900
                                          jfarris@kellerrohrback.com
9
                                          KELLER ROHRBACK L.L.P.
10                                        KEIL M. MUELLER (*pro hac vice* forthcoming)
11                                        601 SW Second Avenue, Suite 1900
                                          Portland, OR 97204
12                                        Telephone: 971/253-4600
                                          kmueller@kellerrohrback.com
13
                                          *Liaison Counsel*
14
15                                        ROBBINS GELLER RUDMAN & DOWD LLP
                                          JAMES I. JACONETTE (admitted *pro hac vice*)
16                                        DAVID A. KNOTTS (admitted *pro hac vice* )
                                          BRIAN E. COCHRAN (admitted *pro hac vice*)
17                                        MICHAELA PARK (admitted *pro hac vice*)
                                          655 West Broadway, Suite 1900
18                                        San Diego, CA 92101-8498
                                          Telephone: 619/231-1058
19                                        jamesj@rgrdlaw.com
                                          dknotts@rgrdlaw.com
20                                        bcochran@rgrdlaw.com
                                          mpark@rgrdlaw.com
21
22                                        ROBBINS GELLER RUDMAN & DOWD LLP
                                          SAMUEL H. RUDMAN (admitted *pro hac vice*)
23                                        58 South Service Road, Suite 200
                                          Melville, NY 11747
24                                        Telephone: 631/367-7100
                                          srudman@rgrdlaw.com
25
26                                        *Lead Counsel for Lead Plaintiffs*

AMENDED COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS
(**2:25-cv-01013-LK**)                - 91 -

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: 206/623-1900 • Fax: 206/623-3384

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Dr. Brian L. Grant, Individually and as Trustee of the Brian L. Grant Living Trust (combined, "Plaintiff") declares:

1.    Plaintiff has reviewed an amended complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Brian L. Grant Living Trust held 267,317 shares of Broadmark Realty Capital Inc. as of April 17, 2023 and received 126,261 shares of Ready Capital Corporation pursuant to the close of the Merger.

5.    Brian L. Grant held 44,910 shares of Broadmark Realty Capital Inc. as of April 17, 2023 and received 21,212 shares of Ready Capital Corporation pursuant to the close of the Merger.

6.    Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

READY CAPITAL

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21 day of November, 2025.

*Brian L. Grant*
DocuSigned by:
5B6AEAAA6CD6413...

Dr. Brian L. Grant, Individually and as Trustee of the Brian L. Grant Living Trust

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

MCN Holdings LLC ("Plaintiff") declares:

1.    Plaintiff has reviewed an amended complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff held 1,251,149 shares of Broadmark Realty Capital Inc. as of April 17, 2023 and received 590,955 shares of Ready Capital Corporation pursuant to the close of the Merger.

5.    Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ____ 21 day of November, 2025.


MCN HOLDINGS LLC

DocuSigned by:

*Brian L. Grant*

5B6AEAAA6CD6413...

Dr. Brian L. Grant, General Manager


READYCAPITAL